1  ARTHUR A. HARTINGER (SBN 121521)
   ahartinger@meyersnave.com
2  JESSE J. LAD (SBN 229389)
   jlad@meyersnave.com
3  MEYERS, NAVE, RIBACK, SILVER & WILSON
4  555 12th Street, Suite 1500
   Oakland, California 94607
5  Telephone: (510) 808-2000
   Facsimile: (510) 444-1108
6

7  Attorneys for Defendant City and County
   of San Francisco
8

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12  WILLIAM SETZLER,                    ) Case No. 07-CV-05792-EMC
                                        )
13              Plaintiff,              ) **REQUEST FOR JUDICIAL NOTICE IN**
                                        ) **SUPPORT OF DEFENDANT'S NOTICE**
14       v.                             ) **OF MOTION AND TO DISMISS;**
                                        ) **NOTICE OF MOTION AND MOTION**
15  CITY AND COUNTY OF SAN              ) **TO STRIKE**
    FRANCISCO, a municipal corporation and )
16  DOES ONE through TEN, inclusive     )
                                        )
17              Defendants.             )
                                        )
18

19       TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20       Pursuant to Federal Rules of Evidence 201, Defendant City and County of San Francisco

21  ("CCSF") requests that this Court take judicial notice of the following documents as set forth

22  below.  The Court may properly consider matters of public record, including reports, legislative

23  actions and reports of administrative bodies. *Mack v. South Bay Beer Distributors, Inc.,* 789

24  F.2d 1270, 1283 (9th Cir. 1986).  Moreover, the Court may take notice of judicial proceedings in

25  other courts if they have a direct relation to the matters at issue in the proceeding. *United States*

26  *v. Robinson Rancheria Citizens Council,* 971 F.2d 244, 248 (9th Cir. 1992).  Accordingly,

27  judicial notice is requested of the following:

28       1.    Exhibit A: Statement of Decision Denying Plaintiff's Motion to Grant Writ
              Petition;

1    2.    Exhibit B:  Judgment Denying Plaintiff's Writ Petition;

2    3.    Exhibit C:  Notice of Entry of Judgment Denying Plaintiff's Writ Petition;

3    4.    Exhibit D:  Memorandum of Understanding Between CCSF and the Deputy

4    Sheriffs' Association dated July 1, 2005 to June 30, 2009; and

5    5.    Exhibit E:  CCSF Civil Service Commission Rule 117.

6    DATED: January 28, 2008                MEYERS, NAVE, RIBACK, SILVER & WILSON

7

8    By: _____

9    Arthur A. Hartinger
     Attorneys for Defendant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Request for Judicial Notice                                Contra Costa Superior Court
                                                           Case No. C 07 00408

# EXHIBIT A

1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  ELIZABETH S. SALVESON, State Bar #83788
   Chief Labor Attorney
3  ANTHONY GRUMBACH, State Bar #195107
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, 5th Floor
5  San Francisco, California 94102-5408
   Telephone:    (415) 554-3947
6  Facsimile:    (415) 554-4248
7
8  Attorneys for Respondents
   CITY AND COUNTY OF SAN FRANCISCO AND
9  MICHAEL HENNESSEY

ENDORSED
F I L E D
San Francisco County Superior Court

MAR 0 2 2006

GORDON PARK-LI, Clerk
BY:____ CAROLYN BALISTRERI
Deputy Clerk

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF SAN FRANCISCO

12                     UNLIMITED CIVIL JURISDICTION

13  WILLIAM SETZLER,                     Case No. 313725

14          Petitioner,              **NOTICE OF ENTRY OF STATEMENT OF
                                     DECISION DENYING MOTION TO GRANT
15      vs.                          WRIT PETITION**

16  MICHAEL HENNESSEY, and CITY      Hearing Date:     July 18 and Dec. 8, 2005
    AND COUNTY OF SAN FRANCISCO,     Hearing Judge:    Hon. James. L. Warren
17                                   Time:             9:30 a.m.
          Respondents.              Place:            Dept. 301
18
19                                   Date Action Filed:   July 19, 2000
                                     Trial Date:          n/a
20
21
22
23
24
25
26
27
28

                                     1

1
2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that on March 1, 2006, the Court entered its Statement of

4    Decision Denying Motion to Grant Writ Petition.  A true and correct copy of the decision is

5    attached as Exhibit A.

6                                            Respectfully submitted,

7

8    Dated: *March 1, 2006*

9                                            DENNIS J. HERRERA
10                                           City Attorney
                                             ELIZABETH S. SALVESON
11                                           Chief Labor Attorney
                                             ANTHONY GRUMBACH
12                                           Deputy City Attorney

13
                                        By: _____
14                                           ANTHONY GRUMBACH

15                                           Attorneys for Defendant
16                                           CITY & COUNTY OF SAN FRANCISCO
                                             AND SHERIFF MICHAEL HENNESSEY

17

18

19

20

21

22

23

24

25

26

27

28

                                            2

DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH S. SALVESON, State Bar #83788
Chief Labor Attorney
ANTHONY GRUMBACH, State Bar #195107
Deputy City Attorney
Fox Plaza
1390 Market Street, 5th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3947
Facsimile:    (415) 554-4248

42

Ex. A

San Fra~

~000

GORDON PARK-LI, Clerk
BY: ____CYNTHIA S. HERBERT
                        Deputy Clerk

Attorneys for Respondents
CITY AND COUNTY OF SAN FRANCISCO AND
MICHAEL HENNESSEY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL JURISDICTION

WILLIAM SETZLER,

        Petitioner,

    vs.

MICHAEL HENNESSEY, and CITY
AND COUNTY OF SAN FRANCISCO,

      Respondents.

Case No. 313725

[REVISED PROPOSED] STATEMENT OF
DECISION DENYING MOTION TO
GRANT WRIT PETITION

Hearing Dates:      July 18 & Dec. 8, 2005
Hearing Judge:      Hon. James. L. Warren
Time:               9:30 a.m.
Place:              Dept. 301

Date Action Filed:  July 19, 2000
Trial Date:         n/a

1    This matter came on for hearing on Monday, July 18 and December 8, 2005, before the

2   Honorable Judge James L. Warren in Department 301 of the above-entitled Court, with appearances

3   by counsel as follows:  City Attorney Dennis J. Herrera, through Deputy City Attorney Anthony

4   Grumbach, appeared for Respondents Sheriff Michael Hennessey and City and County of San

5   Francisco (collectively, the "City"); Edward L. Faunce, J.D., of Faunce, Singer & Oatman, a

6   Professional Corporation, appeared for Petitioner William Setzler.

7    On June 3, 2005, Setzler filed a motion requesting the Court to grant the petition for a

8   traditional writ of mandate that he filed on July 19, 2000 (the "Petition").  Setzler contends that the

9   City violated Government Code section 21153, a provision of the Public Employees' Retirement

10   Law (the "PERL"), Government Code sections 20000-21703.  Section 21153 provides that if an

11   employee is eligible for a disability retirement under the PERL, the employer may not separate the

12   employee because of the disability.  Setzler contends that the City had a ministerial duty under

13   section 21153 to reinstate him when his disability retirement application was denied and that the

14   City violated this duty.

15    The Court has reviewed and considered the pleadings, evidence, and oral arguments

16   submitted by the parties.  This matter having been fully argued and considered, and proof being

17   made to the satisfaction of the Court,

18    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

19    The Petition is DENIED in its entirety.  The City shall recover its costs.

20    The Court's decision is based solely on admissible and relevant evidence.  The City filed

21   written objections to Setzler's evidence and preserved the objections by asking the Court to rule on

22   them during oral argument.  *Biljak Ass'n v. First Interstate Bank* (1st Dist. 1990) 218 Cal.App.3d

23   1410, 1419-1420, superseded by statute on other grounds as stated in *Scheiding v. Dinwiddie*

24   *Constr. Co.* (1st Dist. 1999) 69 Cal.App.4th 64, 72.

25    The Court bases its decision on the following grounds:  (1) Setzler has not shown that the

26   City has a clear, ministerial duty under section 21153 to reinstate him; (2) Setzler cannot show that

27   the City separated him in violation of section 21153 because:  (a) the doctrines of issue and claim

28   preclusion bar Setzler from relitigating his previously rejected argument that the City refused to

1

1    return him to work, and (b) even if the Petition is not precluded, it lacks merit; (3) Setzler comes to

2    the Court with unclean hands; and (4) the Petition fails on procedural grounds because Setzler:

3    (a) waited five years before bringing the Petition to hearing, and (b) failed to exhaust his

4    administrative remedies.

## FINDINGS OF FACT

I.    FACTUAL BACKGROUND

Setzler joined the City's Sheriff's Department as a probationary deputy sheriff in May 1989.
(Benjamin Decl. ¶ 6, Ex. B at 33:19-22.)  After training, Setzler was assigned to the County Jail.
(*Id.* at 37:15-17.)  He admits that did not want to work at the jail because he felt the working
conditions were "intolerable." (*Id.* at 54:14-25, 55:1-19.)

On January 2, 1990, seven months into his probationary period, Setzler encountered a gate at
the jail that would not open. (*Id.* at 45:21-25, 46:1-8.)  Setzler kicked the gate with his left foot.
(*Id.* at 46:3-8; 47:19-23.)  The gate opened, and Setzler went on with his duties. (*Id.* at 48:5-10.)
Later during Setzler's shift, he reported that his foot hurt. (*Id.* ¶ 6, Ex. G.)

Since leaving work at the end of his January 2, 1990 shift, Setzler has not returned to work.
(*Id.* ¶ 6, Ex. B. 50:22-25.)  Claiming to have injured his foot so severely that he could not work as a
deputy sheriff, Setzler sought to retire with a full disability pension. (*Id.* ¶¶ 4-7.)  Even after the
Retirement Board denied his disability retirement application in 1996, Setzler did not return to
work. (Harrigan Decl. ¶¶ 3-12; see also below at 3-6 (discussing procedural history of Setzler's
disability retirement application)).

But at all times since January 2, 1990, Setzler has remained a City employee, staying on
leave for over 15 years. (Harrigan Decl. ¶¶ 3-12; Grumbach Decl. Ex. F ("Setzler Depo.") at 83.)
He received full disability pay under Labor Code section 4850 between January 1990 and January
1991, and maintained his full pay through a combination of workers' compensation benefits, sick
leave, vacation pay, and vocational rehabilitation allowances until at least March 1996. (Benjamin
Decl. Ex. EE at 10.)  And during Setzler's entire 15-year leave of absence, he has continued to
receive his employee benefits, such as his City-paid health insurance benefits. (Setzler Depo.
at 756:11-16.)

2

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1    Although the City does not have permanent modified duty positions for deputy sheriffs, the

2  City has repeatedly offered Setzler three ways to return to work:  (1) return to full duty as a deputy

3  sheriff if he was medically capable of performing the job's essential functions; (2) return to full duty

4  as a deputy sheriff with reasonable accommodations that would allow him to perform the job's

5  essential functions;[1] or (3) transfer to another position under the City's disability transfer program.

6  (Harrigan Decl. ¶¶ 5-12, Ex's A-D.)

7    But Setzler has not returned to work.  (Setzler Depo. at 382:2-10, 397:22-398:3, 505:15-

8  506:15.)  While consistently maintaining that he cannot return to full duty as a deputy sheriff,

9  Setzler has also declined to participate in the City's disability accommodation process, under which

10  he could return to work as a deputy sheriff with reasonable accommodations or obtain a disability

11  transfer to a new position.  (Harrigan Decl. ¶¶ 5-12, Ex. D at 1, 3; Setzler Depo. at 30:21-23, 35:8-

12  20-21, 36:21-37:2, 151:20-152:17.)

13    The City also provided Setzler with vocational rehabilitation to become a computer

14  technician through the City's worker's compensation system.  (Setzler Depo. at 744-746.)  But

15  Setzler has not worked as a computer technician, either for the City or other employers.  (*Id.* at 756-

16  758.)

17  **II.    PROCEDURAL HISTORY**

18    A.    **The Retirement Board Denies Setzler's Disability Retirement Application**

19    As early as September 1990, Setzler began contemplating a disability retirement.  (Benjamin

20  Decl. ¶ 6, Ex. B 72:24-25, 73:1-15.)  Although he had worked only seven months for the City

21  before his alleged injury, and had not even completed his probationary period, Setzler had already

22  researched what his disability retirement benefits would be under the Public Employees Retirement

23  System ("PERS").  (*Id.* at 73:7-15.)

24

25    [1] Working in a full duty assignment with an accommodation is different than working in a

26  modified or light duty assignment.  In full duty assignments with accommodations, employees
  receive accommodations—for example, being allowed to stretch at regular intervals—but still

27  perform their jobs' essential functions.  In modified or light duty assignments, employees do not
  perform all of their jobs' essential functions.  (Harrigan Decl. ¶¶ 13-14.)

28

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

On December 30, 1991, Setzler applied for a disability retirement, claiming that he suffered a disabling foot injury when he kicked the gate at the jail. (*Id.* ¶ 4.) According to Setzler, this injury caused him to limp, required him to walk with a cane, and upset his sense of balance so severely that he had trouble walking on stairs or even just carrying a cup of coffee. (*Id.* ¶ 7, Ex. B at 59:9-24, 62:18-23, 63:2-17, 65:21-25, 66:1-11.)

In 1994, a state administrative law judge ("ALJ") conducted a hearing on Setzler's application. (*Id.* Ex. E.) The ALJ denied Setzler's application. (*Id.*) The evidence supporting the ALJ's decision included:

- the lack of objective medical evidence that Setzler was disabled, coupled with medical reports from doctors who concluded that he was not disabled (*id.* Ex's E, I, J);

- testimony from a witness who saw Setzler walking without a limp in City Hall—until Setzler turned to walk into the Sheriff's office, when he began limping (*id.* Ex. C 15:8-25, 16:1-14);

- videotape of Setzler walking normally without a cane, including shots of him ascending and descending stairs and carrying luggage in both hands without a limp or balance problems (*id.* Ex. D at 10); and

- evidence that Setzler had taken three, lengthy vacations in Europe since allegedly injuring his foot (*id.* Ex. B at 93-97).

Adopting the ALJ's decision, the Retirement Board denied Setzler's application in May 1996 and denied his petition for reconsideration in July 1996. (*Id.* ¶¶ 5, 9, Ex. F.)

**B.    The First Petition**

    **1.    The Court decides that Setzler failed to make a good faith effort to return to work**

On July 11, 1996, Setzler filed his First Petition, an administrative mandate action under California Code of Civil Procedure section 1094.5. In the First Petition, Setzler asked the Court to overturn the Retirement Board's denial of his disability retirement application. (Benjamin Decl. Ex. K.) Setzler repeatedly argued that the City had refused to return him to work. (*Id.* ¶¶ 10-12, Ex. J at 8:16-19, Ex's M-O.)

4

1    Following a three-day trial before Judge William Cahill, the Court denied the First Petition

2  on February 25, 1997. (*Id.* ¶ 13, Ex. L.) Setzler appealed. (*Id.* Ex. R.)

3    Before the appeal was heard, the parties found that a videotape that a deputy city attorney

4  had lodged with the Court was not an accurate copy of the videotape entered into evidence in the

5  administrative hearing. (*Id.* ¶¶ 15-18.) The matter was remanded to the ALJ and the Retirement

6  Board to authenticate the actual videotape and reconsider Setzler's disability retirement application.

7  (*Id.*) On remand, the ALJ authenticated the videotape, and the Retirement Board affirmed its denial

8  of Setzler's application. (*Id.*)

9    The proceedings on the First Petition returned to the Court, with Judge Raymond D.

10  Williamson presiding. (*Id.* ¶ 19, Ex. W.) Setzler again argued that the City had refused to return

11  him to work. (*Id.* Ex's X, Y at 4-5.)

12    In an August 25, 1998 decision, the Court again denied the First Petition. (*Id.* Ex. W.) In

13  the decision, the Court considered and rejected Setzler's "contention that he is entitled to a disability

14  pension on the ground that the City has refused to return him to work. *The evidence fails to*

15  *establish that petitioner has made a good faith effort to return to work.*" (*Id.* at 2 (emphasis

16  added).) The Court also found that Setzler's claims about his alleged disability were not credible.

17  (*Id.*)

18       2.    **Denying Setzler's motion for a new trial, the Court concludes that**
              **Setzler is a "malingerer" who "has not done what was necessary to get**
19              **himself reinstated"**

20    Setzler then moved for a new trial. (*Id.* ¶¶ 25-29; Ex's CC1-CC4.) He argued that the Court

21  had erred in ruling that Setzler had failed to make a good faith effort to return to work. (*Id.* Ex's

22  CC-2 at 3-5, CC-3 at 7:20-11:26.)

23    The Honorable David A. Garcia heard the new trial motion. (*Id.* Ex's CC-3, CC-4.)

24  Denying the motion, the Court concluded that Setzler was a "malingerer" who had not made a good

25  faith effort to return to work. (*Id.*) Judge Garcia explained that:

26           [i]f the weight of the evidence supports the decision that he's not disabled,
             then categorically the weight of the evidence supports the decision that he's
27           malingering. And that he has not done what was necessary to get himself
             reinstated to the job. Okay?

28

5

1     *Because this is what this is about, isn't it? He's either disabled or he's a*
*malingerer.* And as cold and as cruel [as] that may sound, that's what it's
2     about. And that's where my analysis is. And that's where it's going to rest.
(*Id.* Ex. CC-3 14:4-12 (emphasis added).)

3     **3.**    Upholding the denial of the First Petition, the court of appeal affirms
4     that Setzler did not make a good faith effort to return to work

5     Setzler appealed. (*Id.* ¶ 30, Ex. DD.) He again argued that the Court should have granted

his First Petition because the City had refused to return him to work. (*Id.* Ex. EE at 17-19.)
6

7     In an unpublished April 11, 2000 decision, the court of appeal upheld the denial of Setzler's

First Petition. (*Id.* Ex. FF.) In reaching this decision, the court of appeal specifically affirmed the
8

9     Court's findings that: (1) Setzler's claims about his alleged disability were not credible, and

(2) Setzler had not made a good faith effort to return to work. (*Id.* Ex. FF 6-8.)
10

11     When the court of appeal remitted its opinion to the Court on June 13, 2000, the judgment

on the First Petition became final. (*Id.* Ex. GG.)
12

    **C.**    **The Second Petition**

13     On April 28, 1999, while Setzler's appeal in the First Petition proceeding was pending, he

14     filed another petition (the "Second Petition") seeking a traditional writ of mandate (Code of Civ.

15     Proc. § 1085). (Grumbach Decl. Ex. C.) In the Second Petition, Setzler again argued that the City

16     had refused to return him to work and sought an order "reinstating" him to a position as a deputy

17     sheriff. (*Id.*) On December 13, 1999, the Court, with the Honorable Judge Ronald E. Quidachay

18     presiding, sustained the City's demurrer without leave to amend on the grounds that the Second

19     Petition was not ripe because the First Petition was still pending. (*Id.* Ex's D, E.)

20     **D.**    **The Petition**

21     On July 19, 2000, the month after the judgment denying the First Petition became final,

22     (Benjamin Decl. Ex. GG), Setzler filed the Petition. (Grumbach Decl. Ex. A.) In the Petition, he

23     seeks a traditional writ of mandate under Code of Civil Procedure section 1085 ordering the City to

24     return him to work as a deputy Sheriff with back pay and other monetary relief dating to 1991. (*Id.*)

25     On September 5, 2000, the City filed its response to the petition. (*Id.* Ex. B.) On June 3, 2005—

26     almost five years after the Petition was filed—Setzler filed a motion asking the Court to grant the

27     Petition. (Setzler Motion at 1-2.) As before, he argues that he is entitled to writ relief because the

City allegedly refused to return him to work. (Setzler Brief at 1.) He seeks a writ of mandate

1  ordering the City to "reinstate" him with full back pay and benefits from one of three alternative

2  dates in 1991, 1996 and 2000 when Setzler alleges that the City refused to return him to work. (*Id.*

3  at 8-10.)

LEGAL ANALYSIS

I.     STANDARD OF REVIEW FOR SECTION 1085 WRIT PETITIONS

Code of Civil Procedure section 1085(a) provides that traditional mandate may issue "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled. . . ."

Traditional mandate under section 1085 will lie "to compel performance of a clear, present and usually ministerial duty in cases where a petitioner has a clear, present and beneficial right to performance of that duty." *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 972. . Where the respondent has not violated a purely ministerial duty, writ relief is generally unavailable under section 1085 unless the respondent's "decision was arbitrary, capricious, or entirely lacking in evidentiary support." *DeCuir v. County of Los Angeles* (1998) 64 Cal.App.4th 75, 81.

The petitioner bears the burden of establishing both that the respondent has a duty to perform an act and that the petitioner has a substantial right to the performance of that act. *San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 771.

II.     THE PERTINENT LAWS ARE THE PERL AND THE CITY'S PERSONNEL POLICES

Although the City has its own retirement system that covers most of its employees, the City has contracted with the PERS to provide retirement benefits to the City's deputy sheriffs. See San Francisco Charter § A8.506. Therefore, the PERL applies to the City's deputy sheriffs. *Duff v. City of Gardena* (1980) 108 Cal.App.3d 930, 933-934 (applying the PERL to local safety officer whose employer had contracted with the PERS to provide retirement benefits).

---

[REVISED PROPOSED] STATEMENT OF DECISION     CASE NO. 313725     n:\labor\li2005\010137\00356116.doc

But while the PERL governs Setzler's retirement benefits, the personnel policies of a charter city remain municipal affairs. *Gourley v. City of Napa* (1st Dist. 1975) 48 Cal.App.3d 156, 163-164. The City, therefore, retains its authority to administer its own Civil Service Rules and personnel policies, which continue to govern Setzler's employment with the City as long as they are not inconsistent with the PERL. *Id.; Duff*, 108 Cal.App.3d at 936-937 (PERL did not limit a city's right to terminate a probationary employee for reasons unrelated to the employee's alleged disability); *Campbell v. City of Monrovia* (1978) 84 Cal.App.3d 341, 350 (holding that while the PERL controls "the requirements for PERS member retirements, [it does] not define the nature or extant of factors, like the right to sick leave, which are peripheral thereto and which are properly within the control of a contracting agency").

Largely ignoring the PERL and the City's personnel policies, Setzler relies on two laws that do not apply to him or the City. First, he relies on a law that is irrelevant because it governs only county employees' retirement benefits: the County Employees' Retirement Law Act of 1937 (the "CERL"), Government Code sections 31450-31898. The CERL and the PERL are distinct statutory schemes, with different provisions. *Pennington v. Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 55, 58-60. As explained in *Pennington*, the Legislature "created two distinct kinds of retirement systems, each of which may include deputy sheriffs among its members:" the CERL and the PERL. *Id.* at 58. Because, "[t]he acts of the Legislature have treated PERS members differently from CERL members," courts "must assume it intended the distinctions." *Id.* at 60.[2]

---

[2] Citing *McGriff v. County of Los Angeles* (1973) 33 Cal.App.3d 394, Setzler appears to argue the PERL entirely preempts the City's civil service rules and personnel policies. This argument is misguided. First, *McGriff* concerned a county employee whose retirement benefits were governed by the CERL, which, as explained above, does not apply to the City or Setzler. Second, at least three courts of appeal have held that the PERL does not entirely preempt charter cities' authority in personnel matters. *Gourley*, 48 Cal.App.3d at 163-164; *Duff*, 108 Cal.App.3d at 936-937; *Campbell*, 84 Cal.App.3d at 350. Third, in *McGriff* the county, unlike the City, had adopted the entire CERL as a local ordinance, which caused the court to conclude that the later adopted CERL provisions were controlling rather than the general civil services rules that the county had previously enacted. 33 Cal.App.3d at 399 ("It is well established that [w]here the terms of a later specific statute apply to a situation covered by an earlier general one, the later specific statute controls." *Id.*, internal quotations omitted.)

8

1    Second, Setzler relies on Government Code section 19253.5, a provision of the State Civil

2    Service Act (Gov't Code §§ 18500-19799). This act, however, applies only to state employees, not

3    the City's employees. Gov't Code § 18526 (under State Civil Service Act, an "'employee' means a

4    person legally holding a position in the State civil service").

5    These distinction between the PERL and the City's personnel policies on the one hand, and

6    the CERL and the State Civil Service Act on the other, are significant. Setzler relies exclusively on

7    cases and administrative authorities involving statutes that do not apply to him or the City. He cites

8    several cases that interpret the CERL. And he cites an Attorney General's opinion and State

9    Personnel Board opinions that interpret the PERL and State Civil Service Act as they apply to state

10    employees. But he fails to cite any authority regarding the duties that the PERL imposes on a

11    municipal employer like the City.

12

13    **III.   SECTION 21153 DOES NOT IMPOSE A CLEAR, MINISTERIAL DUTY ON THE CITY TO REINSTATE SETZLER**

14

15    Setzler contends that the City had a clear, ministerial duty under section 21153 of the PERL

16    to reinstate him with full back pay when his disability retirement application was denied, and that

17    the City failed to perform that duty. (Setzler Op. Brief at 3.) Section 21153 provides that:

18        Notwithstanding any other provision of law, *an employer may not separate because of disability a member otherwise eligible to retire for disability but*

19        *shall apply for disability retirement of any member believed to be disabled,* unless the member waives the right to retire for disability and elects to

20        withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Section 20731. (Gov't Code

21        § 21153 (emphasis added).)

22    Whether section 21153 imposes a clear, ministerial duty on the City to reinstate Setzler

23    presents a question of law that the Court reviews *de novo*. See *McGhan Med. Corp. v. Superior*

24    *Court* (1992) 11 Cal.App.4th 804, 808. Although the PERL is liberally construed to protect the

25    rights of PERS members, the doctrine of liberal construction does not permit a court to "pervert the

26    plain language of the statute." *Gourley*, 48 Cal.App.3d at 161.

27    Here, the plain language of section 21153 does not support Setlzer's contention. The plain

28    language of Section 21153 imposes a duty on the employer not to "separate because of disability" a

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1    PERS member who is "otherwise eligible to retire for disability."  Section 21153 also requires the

2    employer to apply for a disability retirement on behalf of "any member believed to be disabled."

3    But Section 21153 does not mention reinstatement or specify any additional duties that the

4    employer must comply with if the member's disability retirement application is denied.  Thus, the

5    plain language of section 21153 does not establish a clear, ministerial duty to reinstate a PERS

6    member whose disability retirement application has been denied.

7         A court of appeal recently reached this same conclusion in *Jones v. Los Angeles County*

8    *Office of Education* (2005) 134 Cal.App.4th 983, 990-992. In *Jones* the employee, like Setzler,

9    worked for a local entity, the Los Angeles County Office of Education (the "LACOE"), that, like

10    the City' Sheriff's Department, provided employees retirement benefits through the PERS.  *Id.* at

11    985. Like Setzler, after Jones's disability retirement application was denied, she filed a writ petition

12    in which she argued that section 21153 imposed a ministerial duty on the LACOE to reinstate her

13    with back pay.  *Id.* at 988. Like Setzler, after Jones's disability retirement application was denied,

14    she continued to maintain that she was incapable of returning to work.  *Id.* at 987, 991.

15         The court of appeal upheld the trial court's denial of Jones's writ petition.  *Id.* at 991.  In

16    holding that the LACOE was not required to reinstate Jones after her disability application was

17    denied, the court of appeal held that "there was no statutory duty to pay plaintiff a full salary for a

18    job she would not perform." *Id.*[3]

19         Setzler does not cite any case holding that section 21153 imposes a clear, ministerial

20    reinstatement requirement on employers.  Instead, Setzler relies on cases interpreting the CERL,

21    which as explained above is a distinct retirement law that does not apply to the City or Setzler.  *Id.*

22    at 989 (the CERL and cases interpreting the CERL do not apply to employers and employees

23    covered by the PERL); *Pennington,* 20 Cal.App.3d at 58-60 (the PERL and CERL are distinct

24    statutory schemes, and courts must abide by the Legislature's decisions to treat "PERS members

25         [3] Jones was represented by the same attorney who represents Setzler: Edward L. Faunce.  In
26    support of Setzler's Petition, Mr. Faunce has made the same arguments regarding section 21153 that
      the court of appeal rejected when Mr. Faunce made them on Jones's behalf.  See Grumbach
27    Declaration In Support of the City's Second Supplemental Brief, Ex. B at pp. 12-35 (Jones's
      Appellant's Brief).

28

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1  differently from CERL members"). Specifically, Setzler relies on language in section 31725 of the

2  CERL that requires a county to reinstate a CERL member with back pay if the member's disability

3  retirement application is denied.

4        Setzler's reliance on section 31725 is especially misplaced. As demonstrated by the

5  legislative history of the 1970 amendments to the CERL and PERL, section 31725 is an example of

6  a provision in which the Legislature specifically distinguished a county's duties under the CERL

7  from a municipality's duties under the PERL.

8        In 1970 the Legislature amended both the PERL and CERL by adding provisions that

9  restrict employers from separating employees who are eligible for a disability retirement. The

10 Legislature amended the PERL by adding the language quoted above from section 21153, which

11 provides that "an employer may not separate because of disability a member otherwise eligible to

12 retire for disability but shall apply for disability retirement of any member believed to be disabled."

13 Gov't Code § 21153 (West 2003) (citing Stats. 1970, c. 1447, §2, p. 2820).[4] At the same time, the

14 Legislature added an identical provision to section 31721(a) of the CERL. Compare Gov't Code

15 § 31721(a) (West 1988) (citing Stats. 1970, c. 1016, § 2, p. 1823) with Gov't Code § 21153.

16        That same year the Legislature also amended section 31725 of the CERL to add a

17 reinstatement provision to that statute. As amended, section 31725 provides that if a CERL

18 member's disability application is denied "and the employer has dismissed the member for disability

19 the employer shall reinstate the member to his employment effective as of the day following the

20 effective date of dismissal." Gov't Code § 31725 (West 1988) (citing Stats. 1970, c. 1016, § 1, p.

21 1823)).

22        Significantly, that same year the Legislature rejected a proposed amendment that would

23 have added an identical reinstatement requirement to the PERL. When initially introduced on

24 March 12, 1970, Assembly Bill No. 1153 proposed adding a provision to the PERL specifying that

25 if a PERS member's disability application is denied "and the employer has dismissed the member

26

27    [4] This language was added to former section 21023.5 of the PERL, which was later
   recodified as section 21153. *Id.*

28

11

for disability the employer shall reinstate the member to his employment effective as of the day following the effective date of dismissal." Assem. Bill No. 1153 (1970 Reg. Sess.), as introduced March 12, 1970, § 3, pp. 3-4; *id.* at p. 1 (legislative counsel's digest). As Assembly Bill No. 1153 progressed through the Assembly and Senate, the Legislature deleted the reinstatement requirement. Assem. Amend. to Assem. Bill No. 1153 (1970 Reg. Sess.), as amended June 18, 1970, § 3, p. 4 ; *id.* at p. 1 (legislative counsel's digest); Sen. Amend. to Assem. Bill No. 1153 (1970 Reg. Sess.), as amended Aug. 4, 1970, § 2, p. 3; *id.* at p. 1 (legislative counsel's digest). As finally enacted, Assembly Bill No. 1153 did not add a reinstatement requirement to the PERL. *Id.;* Stats. 1970, c. 1447, pp. 2818-2822.[5]

Thus, the legislative history confirms that when imposing a reinstatement requirement on counties covered by the CERL, the Legislature deliberately elected not to impose a reinstatement requirement on municipalities covered by the PERL. See *Pennington*, 20 Cal.App.3d at 60 (because "[t]he acts of the Legislature have treated PERS members differently from CERL members," courts "must assume it intended the distinctions"); see also *In re Antonio F.* (2002) 98 Cal.App.4th 1227, 1232 ("[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" (ellipses in original, internal quotations omitted)); *Wilson v. City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555 (when the Legislature has rejected a provision that was part of an act when originally introduced, the act "should be construed according to the final version" and "should not be interpreted to include what was left out" (internal quotations omitted)).[6]

---

[5] None of the cases and administrative opinions cited by Setzler address the distinctions that the Legislature made between the CERL and PERL when amending those statutes in 1970.

[6] A 1999 amendment of the State Civil Service Act further demonstrates the Legislature's intent not to impose a reinstatement requirement on municipalities covered by the PERL. In 1999 the Legislature amended the State Civil Service Act to require the state to reinstate its employees with back pay when state employees' disability retirement applications are denied. Gov't Code § 19253.5 (Deering's Supp. 2004) (reviewing 1999 amendment, 1999 Statutes ch. 310, ). Although state employees are PERS members, the Legislature added this reinstatement requirement to the State Civil Service Act, which applies to the state's employees but not municipalities' employees. *Id.*; Gov't Code § 18526. If the Legislature wanted this reinstatement requirement to apply both to the state and to municipalities that contract with the PERS, the Legislature could have amended the (continued on next page)

1    In sum, the distinctions between the PERL's and the CERL's plain language and legislative

2   history establish that the City did not have a clear ministerial duty under the PERL to reinstate

3   Setzler when his disability retirement application was denied.

4

5   IV.    SETZLER CANNOT ESTABLISH THAT THE CITY VIOLATED SECTION 21153
           BY REFUSING TO RETURN HIM TO WORK

6

7    Even if the City did not have a ministerial duty to reinstate him, Setzler still contends that

8   the Petition should be granted because the City violated section 21153 by separating him because of

9   his disability. Although the City did not terminate Setzler, he argues that the City effectively

10  separated him by allegedly refusing to return him to work.

11        A.    Setzler Cannot Relitigate His Previously Rejected Argument That The City
                Refused To Return Him To Work

12            1.    Issue preclusion (collateral estoppel) bars the petition

13    The doctrine of issue preclusion bars the Petition because Setzler is trying to relitigate an

14  issue that was already decided in the proceeding on the First Petition: whether the City refused to

15  return him to work.

16    Issue preclusion prevents relitigation of issues argued and decided in prior proceedings

17  when: (1) the issue is identical to the one decided in the prior proceeding; (2) the issue was actually

18  litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding;

19  (4) the prior decision is final and on the merits; and (5) preclusion is sought against the person who

20  was a party in the prior proceeding. *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341. Where

21  these requirements are met, issue preclusion applies if it will further the public policies of

22  "preservation of the integrity of the judicial system, promotion of judicial economy, and protection

23  of litigants from harassment by vexatious litigation." *Id.* at 343.

24  (footnote continued from previous page)
    PERL. By adding this reinstatement requirement to the State Civil Service Act instead of the
25  PERL, the Legislature again elected not to impose a reinstatement requirement on municipal
    employers like the City who contract with the PERS.
26
           None of the cases and administrative opinions cited by Setzler address the distinctions that
27  the Legislature has made between state employees who are covered by the State Civil Service Act
    and municipal employees who are not.

28

13

[REVISED PROPOSED] STATEMENT OF DECISION      CASE NO. 313725      n:\labor\li2005\010137\00356116.doc

1    In the proceedings on Setzler's First Petition, he fully litigated the same issue he raises here:

2  whether the City refused to return him to work. (Benjamin Decl. ¶¶ 10-31, Ex.'s K-GG.) Setzler

3  repeatedly raised this issue to the Court and the court of appeal, devoting entire sections of briefs to

4  it and discussing it in oral arguments. (Benjamin Decl. ¶¶ 10-31, Ex.'s K-GG.) Rejecting Setzler's

5  argument that the City had refused to return him to work, the Court and the court of appeal

6  specifically found that Setzler had not made a good faith effort to return to work. (*Id.* Ex's W, CC-

7  3, FF.)

8    Thus, all the prerequisites for issue preclusion are satisfied. The issue of whether the City

9  refused to return Setzler to work was actually—in fact, *extensively*—litigated and necessarily

10  decided on the merits in the prior proceeding, which is now final. See *Lucido,* 51 Cal.3d at 342

11  (issue preclusion broadly applies to any issue previously decided that was not "entirely unnecessary

12  to the judgment in the initial proceeding" (internal quotations omitted)). And issue preclusion is

13  being applied against Setzler, who was also the petitioner in the prior proceeding. *Id.* at 341.

14    Setzler argues that issue preclusion does not apply because neither the parties nor the courts

15  addressed section 21153 in the proceeding on the First Petition. This argument lacks merit. The

16  "identical issue requirement addresses whether identical factual allegations are at stake in the two

17  proceedings, not whether the ultimate issues or dispositions are the same." *Lucido,* 51 Cal.3d at 342

18  (internal quotations omitted); *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 482 (issue

19  preclusion barred plaintiff's FEHA claim alleging employment discrimination even though in

20  proceedings on his earlier, unsuccessful wrongful discharge claim he had not cited the FEHA or

21  argued that he had been subjected to race discrimination). The factual allegations that Setzler raises

22  here are identical to the factual allegations that he raised in the proceeding on his First Petition. In

23  both instances, Setzler argues that he has tried to return to work since 1990 but the City has refused

24  to allow him to do so. Compare, e.g., Setzler's Op. Brief at 2-3, 8-10 (Setzler's factual allegations in

25  the current proceeding) with Benjamin Decl. Ex. EE at 3-14, 17-19 (Setzler's factual allegations in

26  his appellate brief from the earlier proceeding).

27    Application of issue preclusion to the Petition will also further the public policies discussed

28  in *Lucido.* 51 Cal.3d at 343. Granting the Petition would undermine the integrity of the Court's and

14

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

the court of appeal's decisions. *Castillo*, 92 Cal.App.4th at 483 (possibility of inconsistent judgments undermines integrity of judicial system). Applying issue preclusion will further judicial economy by eliminating the need for the Court to review—again—the extensive record in the prior proceeding, including the extensive evidentiary record and the <u>ten</u> briefs in which the parties previously addressed this issue (Benjamin Decl. Ex's M-P, X-AA, CC-2, EE). *Castillo*, 92 Cal.App.4th at 483. Applying issue preclusion here is also appropriate in light of the over 14 years of administrative actions and litigation that Setzler has pursued against the City, all of which arise from a disability claim that the Court has found was not credible (Benjamin Decl. Ex. W). *Castillo*, 92 Cal.App.4th at 483-484.[7]

## 2. Claim preclusion (res judicata) bars the petition

Claim preclusion provides an alternative reason to deny the Petition. Claim preclusion bars the relitigation of an entire claim (rather than a specific issue) when: (1) the claim is identical to the one presented in the prior proceedings; (2) the prior proceeding resulted in final judgment on the merits; and (3) preclusion is being asserted against a party to the prior proceeding. *Bernhard v. Bank of America Nat. Trust & Savings Ass'n* (1942) 19 Cal.2d 807, 813.

Claim preclusion bars the Petition because in the prior proceeding, a final judgment was entered denying Setzler's claim that the City had refused to return him to work. (Benjamin Decl. Ex's W, CC-3, FF, GG.) Although Setzler sought disability retirement benefits in the prior administrative mandate proceeding and seeks "reinstatement" with back pay in the current traditional mandate proceeding, claim preclusion still bars the Petition under the primary rights theory that California courts apply to determine whether two claims are identical. *Eichman v. Fotomat Corp.* (1983) 147 Cal.App.3d 1170, 1174. Under the primary rights theory, "if *two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake* even if in the second suit plaintiff pleads different theories of recovery, seeks

---

[7] For the reasons explained above, issue preclusion also bars Setzler from relitigating the findings in the First Petition proceeding that his: (1) claims to suffer from a disabling foot injury were not credible; (2) objections to the Retirement Board's evidence lack merit; and (3) allegations that the Sheriff's Department must offer him a permanent light duty position lack merit. (Benjamin Decl. ¶¶ 5-33, Ex's D-F, L, M-O, U, V, W-Z, CC-2-CC-4, EE, FF.)

[REVISED PROPOSED] STATEMENT OF DECISION       CASE NO. 313725       n:\labor\li2005\010137\00356116.doc

1  different forms of relief and/or adds new facts supporting recovery." *Id.*; *Takahashi v. Board of*

2  *Education* (1988) 202 Cal.App.3d 1464, 1473-1476, 1481-1485 (claims based on the same adverse

3  employment action are precluded if not brought in the same lawsuit.)

4      In the prior proceeding, Setzler claimed that that the City had refused to return him to work.

5  Now Setzler seeks to revive that same claim by seeking different relief for the same alleged

6  injury—Setzler's purported dilemma of being left without employment or a disability retirement—

7  and same alleged wrongful conduct—the City's purported refusal to return him to work. But since

8  the alleged injury and wrongful conduct are the same, the claims are the same. *Eichman*, 147

9  Cal.App.3d at 1174; *Takahashi*, 202 Cal.App.3d at 1473-1476, 1481-1485.[8]

10      **3.    Issue and claim preclusion bar the entire petition**

11      Because Setzler's Petition reiterates old allegations regarding events that occurred before the

12  court of appeal's decision in the earlier proceeding became final on June 13, 2000, issue and claim

13  preclusion bar the entire Petition. See *Eichman*, 147 Cal.App.3d at 1174 (holding that plaintiffs

14  were precluded from "seeking recovery for acts which occurred before judgment was entered in the

15

16

17

18  [8] In *Eichman*, for example, the court held that claim preclusion barred the plaintiffs' claims in a second proceeding, even though plaintiffs had pleaded a claim violations of "California's Unfair Trade Practices Act (Bus. & Prof. Cod, § 17000 *et seq.*)" in the first proceeding and common law claims for "breach of contract, restraint of trade, monopoly, fraud, conversion, accounting, breach of fiduciary duty and declaratory relief" in the second proceeding. 147 Cal.App.3d at 1173-1174. The court held that claim preclusion barred the plaintiffs' complaint in the second proceeding because:

19

20

[t]he same primary right argued here was clearly also at stake in the Eichmans' first action against Fotomat. In both cases the harm alleged was economic injury caused by Fotomat creating a situation in which the company-owned stores enjoy a competitive edge over the franchise stores. The same types of wrongful acts by Fotomat were alleged in both suits: the provision of greater service at a lower cost to the company-owned stores, failure to provide the franchisees with the same advertising assistance given the company-owned stores and the placement of company-owned stores within areas which should have been reserved for franchise stores. The complaint here merely adds new theories of recovery and greater detail regarding the prices Fotomat charged the Eichmans. The superior court correctly found this suit raises the same causes of action as did the first action.

21

22

23

24

25

26

27

*Id.* at 1175.

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1   first action").[9] Setzler has not produced any new evidence showing that the City refused to return

2   him to work after June 13, 2000. (Setzler Brief at 1-13; Setzler Decl.; Hebel Decl.)

3          Setzler, however, argues that issue and claim preclusion should not apply here because the

4   City allegedly concealed information from him in the proceeding on the First Petition. This

5   argument lacks merit for two reasons. First, Setzler cannot avoid the preclusive effects of an earlier

6   judgment by introducing new evidence, even if, as he contends, the City had improperly or

7   fraudulently concealed this evidence in the earlier proceeding. *Eichman*, 147 Cal.App.3d at 1175-

8   1176 ("fraud or perjury by a party, which goes undiscovered until after judgment is entered, does

9   not affect the finality and conclusiveness of the judgment").[10] Second, the information allegedly

10  concealed here "would have been discovered had [Setzler] diligently investigated [his] case" in the

11  earlier proceeding. *Id.*[11]

12  **B.      The Petition Lacks Merit**

13         Even if the Petition is not precluded, it lacks merit.

14

15  ---

[9]  As further explained in *Eichman*:

16

17          The principles of res judicata demand that the parties present their entire case
            in one proceeding. Public policy requires that pressure be brought upon
            litigants to use great care in preparing cases for trial and in ascertaining all
18          the facts. A rule which would permit the re-opening of cases previously
            decided because of error or ignorance during the progress of the trial would
19          in a large measure vitiate the effects of the rules of res judicata. Courts deny
            relief, therefore, when the fraud or mistake is intrinsic; that is, when it goes to
20          the merits of the prior proceedings, which should have been guarded against
            by the plaintiff at that time.

21  147 Cal.App.3d at 1176, internal quotations and citations omitted.

22  [10]  Setzler has not shown that the City wrongfully concealed evidence or engaged in fraud or
    perjury.

23  [11]  Citing *Roccaforte v. City of San Diego* (1979) 89 Cal.App.3d 877 and *English v. Board of
    Admin.* (1983) 148 Cal.App.3d 839, Setzler also argues that under the doctrines of issue and claim
24  preclusion, the City should be bound by the Retirement Board's determination that Setzler was not
    incapacitated from performing a deputy sheriff's duties. Setzler's reliance *Roccaforte* and *English*
25  is misplaced. The First District Court of Appeal has held that the City and the Retirement Board are
    separate entities who are not bound by each others' determinations. *Geoghegan v. Retirement Brd.*
26  *of the City and County of San Francisco* (1st Dist. 1990) 222 Cal.App.3d 1525, 1531-1534 (citing
    *Traub v Board of Retirement* (1983) 34 Cal.3d 793, 798-799 (holding that because a retirement
27  board was a separate entity from a local governmental employer, no privity existed for purposes of
    issue or claim preclusion)).

---

[REVISED PROPOSED] STATEMENT OF DECISION      CASE NO. 313725      n:\labor\li2005\010137\00356116.doc

### 1.    Standard for reviewing the record

While traditional mandamus "may be employed to compel performance of a duty which is purely ministerial in character, it cannot be applied to control discretion as to a matter lawfully conferred upon an administrative agency or . . . the governing board of a municipality." *Duff*, 108 Cal.App.3d at 935-936. Where, as here, the respondent was not implementing a purely ministerial duty, a court's inquiry is generally "limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support." *DeCuir*, 64 Cal.App.4th at 81.

In the proceeding on Setzler's First Petition for a writ of administrative mandate, the Court exercised its independent judgment in reviewing the record. (Benjamin Decl. Ex. W.) That standard of review was appropriate because the First Petition sought an administrative writ of mandate and concerned Setzler's vested right to retirement benefits. *Strumsky v. San Diego Cty. Employees Retirement Ass'n* (1974) 11 Cal.3d 28, 44-45 (when review is sought by administrative mandate and involves a fundamental vested right, courts must exercise their independent judgment on the evidence).

But the independent judgment standard is not the appropriate standard to apply to the record in Setzler's current Petition. First, Setzler is seeking a traditional writ of mandate, not an administrative writ as in the First Petition. *DeCuir*, 64 Cal.App.4th at 81 (standard of review for administrative writ does not apply when petitioner seeks a traditional writ). Second, the current Petition, unlike the First Petition, does not involve a fundamental vested right. Although as a probationary employee Setzler has vested rights to PERS retirement benefits, he does not have a vested right to continued employment with the City. *Duff*, 108 Cal.App.3d at 936-937.[12] Third, under the PERL, the City retains discretion to administer its own personnel policies. *Gourley*, 48 Cal.App.3d at 163. While section 21153 prohibits the City from arbitrarily separating Setzler because of his disability, the City retains discretion to:  separate a probationary employee like Setzler for other reasons, *Duff*, 108 Cal.App.3d at 936-937; administer the City's personnel policies,

---

[12] In *Jones*, the court of appeal applied an independent judgment standard of review because Jones, unlike Setzler, was a permanent civil service employee with a vested property right in her job. *Jones*, 134 Cal.App.4th at 985, 989-990.

18

1   such as its return to work policy, *Gourley*, 48 Cal.App.3d at 156; or determine how long Setzler was

2   entitled to remain on paid status under the City's sick leave and vacation policies, *Campbell*, 84

3   Cal.App.3d at 348-350.

4       Thus, the arbitrary and capricious standard is the proper standard of review to apply to the

5   record in Setzler's current Petition. *DeCuir*, 64 Cal.App.4th at 81.[13]

6       2.    The evidence does not establish that the city violated section 21153

7       Setzler has not shown that the City expressly or impliedly separated him in violation of

8   section 21153.

9       It is undisputed that at all times since Setzler was injured in 1990, he has remained a City

10  employee. (Harrigan Decl. ¶ 3; Setzler Depo. at 83.) And Setzler concedes that he cannot establish

11  a "separation" under section 21153 merely because he was not on paid status while he was seeking a

12  disability pension. (Setzler Opening Brief at 5.)[14]

13      After Setzler's disability application was denied, the City offered to return Setzler to work in

14  a manner consistent with the authority that it retained under the PERL to administer the City's

15  personnel policies. See above at 17, citing *Duff*, 108 Cal.App.3d at 936-937, *Gourley*, 48

16  Cal.App.3d at 156, and *Campbell*, 84 Cal.App.3d at 348-350. The City repeatedly offered Setzler

17  three ways to return to work. First, Setzler could have returned to full duty as a deputy sheriff if he

18  was medically capable of performing the job's essential functions. Second, Setzler could have

19  returned to full duty as a deputy sheriff with reasonable accommodations that would have allowed

20  him to perform the job's essential functions. Third, Setzler could have transferred to another City

21  job under the City's disability transfer program. (Harrigan Decl. ¶¶ 5-12, Ex's A-D.) Cf. *Bruce v.*

---

[13]   Even under the independent judgment standard, the evidence discussed below establishes
23   that Setzler is not entitled to writ relief.

[14]   Setzler claims that he was separated in 1991 when he contends that City sent him home
after he tried to return to his job as a deputy sheriff. But Setzler has not produced any admissible
25   evidence to support this claim. Moreover, his argument that he was separated in 1991 is negated by
his admission that he remained on paid status until at least March 1996. (Benjamin Decl. Ex. EE at
26   10.) And his contention that he made a good faith effort to return to work as a deputy sheriff in
1991 is undermined by his repeated insistence in his pleadings and deposition testimony that he has
27   been incapable of working as a deputy sheriff since his 1990 injury. (Benjamin Decl. Ex's H, K, Y,
EE; Setzler Depo. at 35-37, 151-152.)

[REVISED PROPOSED] STATEMENT OF DECISION      CASE NO. 313725      n:\labor\li2005\010137\00356116.doc

1 | *Gregory* (1967) 65 Cal.2d 666, 671 ("mandamus will not be employed where the respondents show

2 | that they are willing to perform the duty without the coercion of the writ" (internal quotations

3 | omitted)).

4 |   Rebuffing the City's offers, Setzler failed to make a good faith effort to return to work.

5 | While consistently maintaining that he could not return to full duty as a deputy sheriff, Setzler has

6 | declined to participate in the City's disability accommodation process, under which he could have

7 | returned to work as a deputy sheriff with reasonable accommodations or obtained a disability

8 | transfer to a new position. (Harrigan Decl. ¶¶ 5-12; Setzler Depo. at 30:21-23, 35:8-20-21, 36:21-

9 | 37:2, 151:20-152:17.) Setzler admits that he deliberately chose not to engage in the disability

10 | accommodation process. (Setzler Depo. at 30-31.) And in an August 14, 1996 letter to the City,

11 | Setzler's former attorney explicitly rejected the City's offer to return Setzler to work through the

12 | disability accommodation process. (Harrigan Decl. Ex. D at 1, 3.)

13 |   Because Setzler did not file a claim under the Fair Employment and Housing Act (the

14 | "FEHA"), that statute does not provide the controlling rules of law for evaluating the Petition. Yet

15 | since the FEHA prohibits separating employees because of their disabilities, cases decided under

16 | the FEHA provide useful guidance in interpreting the similar language in section 21153 of the

17 | PERL.[15] Under the FEHA, an employer cannot be held liable for separating an employee because

18 | of a disability where, as here, the employee has declined to participate in the reasonable

19 | accommodation process. *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263 (no liability

20 | under FEHA where "reasonable accommodation was offered and refused").

21 |   The City also provided Setzler with vocational rehabilitation to become a computer

22 | technician through the City's workers' compensation system. (Setzler Depo. at 744-746.) But

23 | Setzler has not worked as a computer technician, either for the City or other employers. (*Id.* at 756-

---

24 | [15] Compare Gov't Code § 12940(a) (providing that, under the FEHA, it is unlawful for "an

25 | employer, because of the . . . physical disability [or] mental disability . . . of any person . . . to

26 | discharge the person from employment . . . .") with Gov't Code § 21153 (providing that, under PERS, "an employer may not separate because of disability a member otherwise eligible to retire for disability"); see also *In re Do Kyung K.*, 88 Cal.App.4th 583, 589 (2001) (similar language in

27 | statutes dealing with the same subject should be interpreted consistently to achieve a uniform legislative purpose).

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1    758.) Instead of returning to work, Setzler continued to seek a disability pension, even after his

2    application was denied. (*Id.* at 591:11-592:14; Benjamin Decl. Ex. HH.) *Jones*, 134 Cal.App.4th at

3    987-988, 991-992 (employee was not entitled to reinstatement with back pay under section 21153

4    after being denied a disability pension where employee continued to insist she was physically

5    incapable of returning to either her former position or a new position she had been trained to

6    perform through a vocational rehabilitation program).

7        Setzler cites no authority holding that in these circumstances an employer has been found to

8    have separated an employee in violation of Section 21153. Instead, Setzler relies on cases involving

9    county employees who sought relief under section 31725 of the CERL. See, e.g., Setzler Reply

10   Brief at 3-6, citing *McGriff*, 33 Cal.App.3d at 399; *Phillips v. County of Fresno* (1990) 225

11   Cal.App.3d 1240; *Hanna v. Los Angeles County Sheriff's Dept.*, 102 Cal.App.4th 887. But because

12   the PERL and CERL are distinct statutes with different provisions regarding employees'

13   reinstatement rights, these cases are not pertinent to Setzler's Petition. See above at 8, 10-12. These

14   cases are further distinguishable because they involve employers who, unlike the City, terminated

15   the employee (*McGriff*, 33 Cal.App.3d at 395) or refused to reinstate the employee while denying

16   him any alternative job opportunity (*Phillips*, 225 Cal.App.3d at 1244-1247; *Hanna*, 102

17   Cal.App.4th at 891).

18       Writ relief also will not issue under the PERL on behalf of an employee, like Setzler, who is

19   unwilling to return to work. As explained in *Haywood v. American River Fire Protection Dist.*

20   (1998) 67 Cal.App.4th 1292, "there is an obvious distinction between an employee who has become

21   medically *unable* to perform his usual duties and one who has become *unwilling* to do so.

22   Disability retirement laws address only the former." *Id.* at 1304 (denying writ petition brought by

23   PERS member who was denied a disability pension after being terminated because he was

24   unwilling to perform his job).

25       Because the PERL addresses only "unable" employees and not "unwilling" employees, *id.*,

26   Setzler cannot meet his burden of showing that he is entitled to the performance of any duty that the

27   City might have under the PERL. See *San Gabriel Tribune*, 143 Cal.App.3d at 771 (petitioners

28   seeking writ relief must show that they are entitled to the performance of the act that they seek to

21

1   compel). Among other evidence that Setzler is an "unwilling" employee who has not made a good

2   faith effort to return to work, he has: exaggerated the extent of his foot injury (Benjamin Decl. ¶¶ 6-

3   33, Ex's B at 93-97, D at 10, C at 15:8-25, 16:1-14, E, I, J);[16] repeatedly rebuffed the City's efforts

4   to return him to work (Harrigan Decl. ¶¶ 5-12; Setzler Depo. at 30:21-23, 35:8-20-21, 36:21-37:2,

5   151:20-152:17); and not worked as a computer technician, although he is physically capable of

6   doing so (Setzler Depo. at 591:11-592:14, 597-598, 744-746, 756-758). In brief, an employer

7   cannot be said to have separated an employee who has not made a good faith effort to return to

8   work.

9           Moreover, as illustrated by the decision in *Alvarez-Gasparin v. County of San Bernardino*

10  (2003) 106 Cal.App.4th 183, the City's conduct here would satisfy even the CERL's more stringent

11  reinstatement provision. In *Alvarez-Gasparin* the employer, like the City, offered vocational

12  rehabilitation, reasonable accommodations, and disability transfers to an employee while her

13  disability retirement application was pending. *Id.* at 185. The employee, however, did not return to

14  work for nine years (*id.* at 185-186, 188), although unlike Setzler she eventually returned to her job

15  one year after her disability retirement application was denied (*id.* at 186). Like Setzler, however,

16  the employee filed a writ petition seeking back pay for the time she was off work before and after

17  her disability application was denied. *Id.* at 186-187. Like Setzler, the employee also argued that

18  she was entitled to writ relief because her employer had effectively dismissed her by allegedly

19  failing to return her to work earlier. *Id.*

20

21  [16] According to Setzler, his foot injury causes him to limp, requires him to walk with a cane,
    and upsets his sense of balance so severely that he has trouble walking on stairs or even just

22  carrying a cup of coffee. (Benjamin Decl. ¶ 7, Ex. B at 59:9-24, 62:18-23, 63:2-17, 65:21-25, 66:1-
    11.) Evidence that his complaints are not credible includes: medical reports from doctors who

23  concluded that Setzler was not disabled coupled with the lack of objective medical evidence
    supporting Setzler's complaints (*id.* Ex's E, I, J); testimony from a witness who saw Setzler walking

24  without a limp in City Hall—until Setzler turned to walk into the Sheriff's office, when he began
    limping (*id* Ex. C 15:8-25, 16:1-14); videotape of Setzler walking normally without a cane,

25  including shots of him ascending and descending stairs and carrying luggage in both hands without
    a limp or balance problems (*id.* Ex. D at 10); and Setzler's admissions that his foot problems did not

26  prevent him from taking extended trips to Europe (*id.* Ex. B at 93-97). In light of this evidence,
    Setzler's "subjective complaints of problems with balance, unsteadiness, difficulty with gate and

27  lack of confidence in his left lower extremity are not credible." (*Id.* Ex. W at 2:13-15 (Aug. 14 1998
    Statement of Decision and Order Denying Petition for Writ of Mandate).

28

[REVISED PROPOSED] STATEMENT OF DECISION          CASE NO. 313725          n:\labor\li2005\010137\00356116.doc

1    Because the employer, like the City, had offered the employee vocational rehabilitation,

2    reasonable accommodations, and disability transfers, the *Alvarez-Gasparin* court rejected the

3    employee's argument that her employer had refused to return her to work. *Id.* at 188. The court

4    concluded that:

5    > The evidence does not prove what plaintiff would like it to prove. *There is*
     > *simply no showing that plaintiff was dismissed, expressly or impliedly. For*

6    > *that reason, this case differs from the cases relied upon by plaintiff in which*
     > *the employee is fired, denied any comparable job opportunity with the public*

7    > *employer, or refused reinstatement.* In October 1991, plaintiff effectively
     > stopped working for the County and in the intervening nine years, her

8    > employment status was admittedly uncertain. But that does not mean she was
     > dismissed for disability and entitled to a remedy under section 31725.

9    *Id.* (emphasis added, internal footnotes and citations omitted); see also *id.* at fn's 7-9

10   (distinguishing *Hanna, McGriff, Phillips* and other § 31725 cases cited by Setzler).

11   Likewise, Setzler cannot establish that the City refused to return him to work when the City

12   provided him vocational rehabilitation and offered to return him to full duty, provide him

13   reasonable accommodations in his current position as a deputy sheriff, or provide him a disability

14   transfer him to another position. As in *Alvarez-Gasparin*, "there is simply no showing that [Setzler]

15   was dismissed, expressly or impliedly." *Id.*[17]

16

17   **V.    WRIT RELIEF CANNOT ISSUE BECAUSE SETZLER HAS UNCLEAN HANDS**

18   Writ relief also is not available for a petitioner like Setzler who comes to the Court with

19   unclean hands. *Elliott v. Contractors' State License Bd.*. (1990) 224 Cal.App.3d 1048, 1054.

20   Setzler has a history of bad faith conduct with the Retirement Board, the Sheriff's Department, and

21   the Court. Setzler made false claims about his foot injury, leading the Court to conclude that he was

---

22   [17] Setzler's counsel essentially agreed that if the facts here are analogous to those in

23   *Alvaraez-Gasparin*, then Setzler was not separated. At oral argument, Setzler's counsel stated that:

24   > Alvarez-Gasparin, I am the attorney who represented her in front of the
     > Board of Retirement. I can tell you that I didn't take her reinstatement case

25   > and I can tell you why. Another attorney took it and *he couldn't find any*
     > *evidence that she had been separated.* He argued by saying well, she was

26   > given voc[ational] rehab[bilitation], therefore she must have been separated
     > and *the court said must have is not good enough.* (Reporter's Transcript at

27   > 54:7-13 (July 18, 2005) (emphasis added).)

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1   a "malingerer" whose allegations about suffering from a disability were not credible. (Benjamin

2   Decl ¶¶ 6-33, Ex. CC-3 14:4-12.) Setzler treated the return to work process as a cat and mouse

3   game by randomly appearing at the Sheriff's Department while ducking the City's efforts to return

4   him to work. (Harrigan Decl. ¶¶ 3-12.) And Setzler filed the Petition and this motion without

5   mentioning that the Court and the court of appeal had repeatedly rejected his argument that the City

6   had refused to return him to work. (Setzler Brief at 2:21-3:4.)

7          Setzler argues that his bad faith conduct should be excused because the City has acted in bad

8   faith too. But Setzler has not shown that the City has unclean hands. To support his claim that the

9   City acted in bad faith, Setzler cites Sheriff Hennessey's January 30, 2004 letter to the Retirement

10  Board. (Hebel Decl. Ex. 2.) In this letter, the sheriff asked the Retirement Board to reopen Setzler's

11  disability retirement application to investigate Setzler's complaints that "possible fraudulent

12  behavior" had marred the review of his application. *Id.* But in the proceedings on the First Petition,

13  the Retirement Board, the Court, and the court of appeal considered and rejected Setzler's

14  complaints about the manner in which his application was reviewed. (E.g., Benjamin Decl. Ex's W

15  at 1-2, EE at 26-27, FF at 4, 8.) Moreover, in the January 30, 2004 letter, the sheriff does not assert

16  that any fraud had actually occurred. (Hebel Decl. Ex. 2.) The letter merely notifies the Retirement

17  Board of Setzler's complaints of "possible fraudulent behavior" and requests that the Retirement

18  Board investigate these complaints, even though the "outcome of the application for disability

19  retirement may well be the same as your prior ruling." (Hebel Decl. Ex. 2; Harrigan Decl. ¶ 17.)

20

21  **VI.    THE PETITION IS BARRED ON PROCEDURAL GROUNDS**

    **A.    Laches**

22

23         The doctrine of laches also bars the Petition. See *Vernon Fire Fighters Ass'n v. City of*

24  *Vernon* (1986) 178 Cal.App.3d 710, 719 (upholding denial of writ petition based on five-year delay

25  in bringing the petition to hearing and evidence that respondent "suffered some prejudice"). Under

26  the laches doctrine if "there is a delay in prosecuting the mandamus action, the burden of showing

27  that the delay is reasonable or excusable is on the petitioner." *Id.* "If the delay is found

---

24

1   unreasonable," the respondent must show either that "petitioner has acquiesced in the act

2   complained of or that respondent has suffered some prejudice." *Id.*

3        Setzler waited almost five years after filing his Petition in July 2000 before bringing it to

4   hearing in July 2005. But he has not met his burden of showing that this five-year delay was

5   "reasonable or excusable." *Id.* (Benjamin Decl. Ex. HH.)

6        Setzler contends that the five-year delay should be excused because he was conducting

7   discovery. The parties, however, completed their written discovery in 2002; the City has not taken

8   a deposition since 2002; and the one deposition that Setzler conducted was completed in 2001.

9   (Hebel Supp. Decl. ¶¶ 5-17.) And although Setzler contends that he was waiting for the City to

10  provide him with copies of exhibits from his deposition, he does not explain why he did not obtain

11  copies from the court reporter before she sent the City the original exhibits, or why he did not more

12  diligently pursue obtaining copies from the City. (Faunce Decl. ¶¶ 3-4.)

13       The five-year delay is not excused by Setzler hiring a new attorney last year. Setzler's new

14  attorney filed a substitution of counsel notice in August 2004, almost a year before the hearing.

5   And Setzler's former attorney continued to participate in the case. In June and July 2005, Setzler's

16  former attorney filed two declarations in support of Setzler's motion to grant the Petition. (Hebel

17  Decl. and Hebel Supp. Decl.)

18       Setzler also asserts that the five-year delay should be excused because he was seeking to

19  reopen his disability retirement application. The Retirement Board, however, refused this request in

20  May 2004, more than 14 months before Setzler brought the Petition to hearing.

21       Finally, Setzler argues that the five-year delay should be excused because he was engaged in

22  settlement negotiations with the City. But the parties have not participated in a settlement

23  conference since December 2002. (Hebel Supp. Decl. ¶ 19.) Setzler nevertheless asserts that the

24  delay should be excused because he was still trying to settle his case through letters that he

25  exchanged with the City between November 2004 and April 2005. (Faunce Decl. Ex's 1-5.) During

26  this exchange of letters, the City stated that it would consider a settlement demand from Setzler if

27  he specified the total monetary relief he was seeking. (*Id.* Ex's 1, 3.) But Setzler did not respond

with a specific monetary demand, and the parties never exchanged settlement offers. (*Id.* Ex's 1-5.)

25

1    Thus, the letters do not show the parties engaging in active settlement negotiations this year. In any

2    event, Setzler's offer to resume settlement discussions at the final hour cannot excuse his five-year

3    delay in bringing the Petition to hearing. To find otherwise would deter respondents in a writ action

4    from discussing settlement on the eve of a hearing or trial.

5        Because Setzler has not shown that the five-year delay was reasonable or excusable, the

6    delay bars the Petition if the City meets its burden of showing that it "suffered some prejudice."

7    *Vernon Fire Fighters*, 178 Cal.App.3d at 719. The City has met its burden. The City "suffered

8    some prejudice" because: (1) the delay could significantly increase the back pay or other monetary

9    relief awarded to Setzler; (2) Setzler is seeking back pay for work that other deputy sheriffs have

10   already been paid to perform; (3) witnesses mentioned in Setzler's pleadings have retired; and (4)

11   Setzler's allegations concern events that occurred as long ago as 1991 (Harrigan Decl. ¶ 20). See

12   *Vernon Fire Fighters*, 178 Cal.App.3d at 723, 726.

13   **B.    Setzler Failed To Exhaust His Administrative Remedies**

14       To the extent that Setzler is arguing that the City violated its own return to work policy, his

15   Petition is barred because he failed to exhaust his administrative remedies under the Memorandum

16   of Understanding (MOU) between the City and Setzler's union (Harrigan Decl. ¶¶ 13, 18, Ex. D).

17   *Edgren v. Regents of the University of California* (1984) 158 Cal.App.3d 515, 519, 523 (employees

18   must exhaust public employers' internal administrative procedures before seeking relief in court);

19   *Johnson v. Hydraulic Rsrch. & Mfg. Co.* (1977) 70 Cal.App.3d 675, 679 (exhaustion requirement

20   applies to labor agreements' grievance and arbitration procedures).

21       The MOU includes a grievance procedure that culminates in binding arbitration and is the

22   exclusive remedy for resolving disputes arising out of the City's application of the MOU's

23   provisions. (Harrigan Decl. ¶¶ 13, 18, Ex. D.) Although the MOU includes a return to work

24   provision, Setzler did not file a grievance and did not exhaust his arbitration remedies. (*Id.* ¶ 18.)

25   But an employee must exhaust a labor agreement's grievance and arbitration procedures before

26   filing a civil action that "is substantially dependent upon analysis of the terms of [the] agreement."

27   *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 219-220; *DFEH v. Verizon California, Inc.*

28

26

1  (2003) 108 Cal.App.4th 160, 170-171 (employee's claim was barred because it required a court to

2  interpret a collective bargaining agreement).

3

## CONCLUSION

4

5  The Petition is DENIED in its entirety. The City shall recover its costs.

6

7  Dated: ___2/28/06___

8                                        JAMES L. WARREN
                                        _____
9                                        THE HONORABLE JAMES L. WARREN
                                        JUDGE OF THE SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

<u>PROOF OF SERVICE</u>

I, WANDA TAI TAKAO, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Fifth Floor, San Francisco, CA 94102.

On February 17, 2006, I served the following document(s):

- [REVISED PROPOSED] STATEMENT OF DECISION DENYING MOTION TO GRANT WRIT PETITION

on the following persons at the locations specified:

Edward Faunce
43020 Blackdeer Loop, Suite 206
Temecula, CA 92590

in the manner indicated below:

☒    **BY UNITED STATES MAIL:** Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

I declare under penalty of perjury that the foregoing is true and correct.

Executed February 17, 2006, at San Francisco, California.

WANDA TAI TAKAO

1

## PROOF OF SERVICE

2    I, WANDA TAI TAKAO, declare as follows:

3    I am a citizen of the United States, over the age of eighteen years and not a party to the
above-entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza
4    Building, 1390 Market Street, Fifth Floor, San Francisco, CA 94102.

5    On March 1, 2006, I served the following document(s):

6    • **NOTICE OF ENTRY OF STATEMENT OF DECISION DENYING MOTION TO
GRANT WRIT PETITION**

7

on the following persons at the locations specified:

8

Edward Faunce
9    43020 Blackdeer Loop, Suite 206
Temecula, CA 92590

10

in the manner indicated below:

11

☒    **BY FACSIMILE**: Based on a written agreement of the parties to accept service by fax, I transmitted
12    true and correct copies of the above document(s) via a facsimile machine at telephone number
**(415) 554-4248** to the persons and the fax numbers listed above. The fax transmission was reported as
13    complete and without error. The transmission report was properly issued by the transmitting facsimile
machine, and **a copy of the transmission report is attached**.

14
I declare under penalty of perjury that the foregoing is true and correct.
15
Executed March 1, 2006, at San Francisco, California.
16

17

18                            WANDA TAI TAKAO

19

20

21

22

23

24

25

26

_7

28

CITY AND COUNTY  AN FRANCISCO                    OFF.   THE CITY ATTORNEY



DENNIS J. HERRERA
City Attorney

ANTHONY GRUMBACH
Deputy City Attorney
Direct Dial:   (415) 554-3947

## FACSIMILE COVER SHEET

### Wednesday, March 01, 2006; Time:  5:23 PM

| TO: | OF: | PHONE: | FAX: |
|---|---|---|---|
| Edward Faunce | | 951-296-0288 | 951-296-0321 |

| FROM: | OF: | PHONE: | FAX: |
|---|---|---|---|
| Anthony Grumbach | Deputy City Attorney | (415) 554-3947 | (415) 554-4248 |

### MESSAGE

Re: Setzler v. CCSF

NOTICE OF ENTRY OF STATEMENT
OF DECISION DENYING MOTION TO GRANT WRIT PETITION

We are transmitting a total of ____**32**____ pages,
including this cover sheet.
If you did not receive all of the pages or there is another problem, please call me or
Wanda Takao at (415) 554-3826.

#### CONFIDENTIALITY NOTE

*THIS AND ANY ACCOMPANYING PAGES CONTAIN INFORMATION FROM THE SAN
FRANCISCO CITY ATTORNEY'S OFFICE WHICH IS CONFIDENTIAL AND PRIVILEGED.  THE
INFORMATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF
YOU ARE NOT THE INTENDED RECIPIENT, THEN BE AWARE THAT ANY DISCLOSURE,
COPYING, DISTRIBUTION OR USE OF THE ACCOMPANYING DOCUMENT (OR THE
INFORMATION CONTAINED IN IT) IS PROHIBITED.  IF YOU HAVE RECEIVED THIS FACSIMILE
TRANSMISSION IN ERROR, PLEASE NOTIFY OUR OFFICES IMMEDIATELY SO THAT WE CAN
ARRANGE FOR RETRIEVAL AT NO COST TO YOU.*

FOX PLAZA · 1390 MARKET STREET, FIFTH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3800 · FACSIMILE: (415) 554-4248

---

| | PAGES | STATION NAME/ | | NO. |
|---|---|---|---|---|
| | | TELEPHONE NO. | | |
| PROGRAM NAME | PRG. NO. | | | |
| 034/034 | | 9519512960321 | OK | 100 |

FILE NO. = 254

MODE = MEMORY TRANSMISSION          START=MAR-01 17:25          END=MAR-01 17:36

******** = ********* ***** = *************************************************

---COMM. JOURNAL--- ********* DATE MAR-01-2006 ***** TIME 17:36 *** P.01

## PROOF OF SERVICE

I, WANDA TAI TAKAO, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Fifth Floor, San Francisco, CA 94102.

On March 2, 2006, I served the following document(s):

- **NOTICE OF ENTRY OF STATEMENT OF DECISION DENYING MOTION TO GRANT WRIT PETITION**

on the following persons at the locations specified:

Edward Faunce
43020 Blackdeer Loop, Suite 206
Temecula, CA 92590

in the manner indicated below:

☒ **BY UNITED STATES MAIL:** Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 2, 2006, at San Francisco, California.

_____
WANDA TAI TAKAO

# EXHIBIT B

1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   ELIZABETH S. SALVESON, State Bar #83788
    Chief Labor Attorney
3   ANTHONY GRUMBACH, State Bar #195107
    Deputy City Attorney
4   Fox Plaza
    1390 Market Street, 5th Floor
5   San Francisco, California 94102-5408
    Telephone:   (415) 554-3947
6   Facsimile:    (415) 554-4248

7

8   Attorneys for Respondents
    CITY AND COUNTY OF SAN FRANCISCO AND
    MICHAEL HENNESSEY
9

ENDORSED
F I L E D
San Francisco County Superior Court

APR 2 6 2005

GORDON PARK-LI, Clerk
BY: _____
AUDREY HUIE
Deputy Clerk

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11               COUNTY OF SAN FRANCISCO

12            UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| 13   WILLIAM SETZLER, | Case No. 313725 |
| 14          Petitioner, | [PROPOSED] JUDGMENT |
| 15      vs. | Hearing Date:   July 18 & Dec. 8, 2005 |
| 16   MICHAEL HENNESSEY, and CITY | Hearing Judge:  Hon. James. L. Warren |
|     AND COUNTY OF SAN FRANCISCO, | Time:    9:30 a.m. |
| 17 | Place:    Dept. 301 |
|         Respondents. | |
| 18 | Date Action Filed:  July 19, 2000 |
| | Trial Date:    n/a |

19

20

21

22

23

24

25

26

27

28

1

1    On March 1, 2006, the Court entered its order denying Petitioner William Setzler's Verified

2  Petition for Writ of Mandate under Code of Civil Procedure section 1085, file-stamped July 19,

3  2000.

4    This decision having been duly rendered, it is hereby further ORDERED and ADJUDGED

5  that:  Petitioner take nothing, ~~the action be dismissed with prejudice~~, and Respondents Michael

6  Hennessey and City and County of San Francisco be awarded their costs of action of $5,770 (five

7  thousand seven hundred and seventy dollars).

8

9

10  Dated:  _____APR 2 5 2006_____

                                 **JAMES L. WARREN**

11                           THE HONORABLE JAMES L. WARREN
                         JUDGE OF THE SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

[PROPOSED] JUDGMENT  CASE NO.  313725

n:\labor\li2005\010137\00368299.doc

# EXHIBIT C

COPY

1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   ELIZABETH S. SALVESON, State Bar #83788
    Chief Labor Attorney
3   ANTHONY GRUMBACH, State Bar #195107
    Deputy City Attorney
4   Fox Plaza
    1390 Market Street, 5th Floor
5   San Francisco, California 94102-5408
    Telephone:   (415) 554-3947
6   Facsimile:   (415) 554-4248

7   Attorneys for Respondents
    CITY AND COUNTY OF SAN FRANCISCO AND
8   MICHAEL HENNESSEY

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

MAY - 4 2006

GORDON PARK-LI, Clerk
BY: _____
        Deputy Clerk

9

10         SUPERIOR COURT OF THE STATE OF CALIFORNIA

11               COUNTY OF SAN FRANCISCO

12            UNLIMITED CIVIL JURISDICTION

13   WILLIAM SETZLER,

14         Petitioner,

15     vs.

16   MICHAEL HENNESSEY, and CITY
    AND COUNTY OF SAN FRANCISCO,
17

18         Respondents.

Case No. 313725

**NOTICE OF ENTRY OF JUDGMENT**

Date Action Filed:   July 19, 2000
Trial Date:         n/a

19

20

21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28

1

1    TO PETITIONER WILLIAM SETZLER AND HIS ATTORNEY OF RECORD:

2        Please take notice that on April 26, 2006, the Court entered its Judgment in the above-

3    captioned case.  A true and correct copy of the Judgment is attached as **Exhibit A**.

4

5    Dated: *May 4, 2006*

6                                                    DENNIS J. HERRERA
                                                     City Attorney
7                                                    ELIZABETH S. SALVESON
                                                     Chief Labor Attorney
8                                                    ANTHONY GRUMBACH
                                                     Deputy City Attorney
9

10                                           By: _____
                                                     ANTHONY GRUMBACH
11

12                                                   Attorneys for Defendant
                                                     CITY AND COUNTY OF SAN FRANCISCO
13                                                   AND MICHAEL HENNESSEY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF ENTRY OF JUDGMENT          CASE NO. 313725

# EXHIBIT D



# COLLECTIVE BARGAINING AGREEMENT

between

## THE CITY AND COUNTY OF SAN FRANCISCO

and

## THE SAN FRANCISCO
## DEPUTY SHERIFFS' ASSOCIATION

July 1, 2005 - June 30, 2009

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. I

**ARTICLE I - REPRESENTATION** ........................................................................ 1

   I.A.    RECOGNITION .................................................................................... 1
   I.B.    INTENT ................................................................................................ 1
   I.C.    NO STRIKE PROVISION ................................................................... 2
   I.D.    OBJECTIVE OF THE CITY ............................................................... 2
   I.E.    MANAGEMENT RIGHTS ................................................................... 2
   I.F.    EMPLOYEE REPRESENTATIVES .................................................... 2
   I.G.    SHOP STEWARDS ............................................................................. 4
   I.H.    GRIEVANCE PROCEDURE ............................................................... 4
   I.I.    UNION SECURITY ............................................................................. 9
   I.J.    AGENCY SHOP .................................................................................. 9
   I.K.    BULLETIN BOARDS / UNION ACCESS / GENERAL INFORMATION .............. 11

**ARTICLE II - EMPLOYMENT CONDITIONS** .................................................... 13

   II.A    NON-DISCRIMINATION .................................................................... 13
   II.B    AMERICANS WITH DISABILITIES ACT ........................................ 13
   II.C    LAYOFFS ............................................................................................ 13
   II.D    ASSIGNMENT OF WORK ................................................................. 14
   II.E    PERSONNEL FILES AND OTHER PERSONNEL MATTERS ............... 16

**ARTICLE III - PAY, HOURS AND BENEFITS** .................................................... 17

   III.A.    WAGES ............................................................................................... 17
   III.B.    WORK SCHEDULES ......................................................................... 19
   III.C.    ADDITIONAL COMPENSATION ...................................................... 19
      1.    *Night Duty.* ...................................................................................... *19*
      2.    *Stand-by Pay.* ................................................................................... *20*
      3.    *Call Back Pay.* .................................................................................. *20*
      4.    *Special Skills & Duties.* .................................................................... *20*
      5.    *Bilingual Premium.* ........................................................................... *21*
      6.    *Acting Assignment Pay.* ................................................................... *21*
      7.    *Supervisory Differential.* .................................................................. *22*
      8.    *Other Additional Compensation.* ..................................................... *23*
   III.D.    OVERTIME COMPENSATION .......................................................... 24
   III.E.    HOLIDAYS AND HOLIDAY PAY ..................................................... 26
      1.    *Holiday Pay For Employees Who Separate.* ..................................... *27*
      2.    *Holidays That Fall On A Saturday.* ................................................... *27*
      3.    *Holiday Compensation For Time Worked.* ........................................ *27*

**COLLECTIVE BARGAINING AGREEMENT**
**SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION**

**JULY 1, 2005 – JUNE 30, 2009**

    4.     *Holidays For Employees On Work Schedules Other Than Monday Through Friday.* ................................................................................................ 28
    5.     *Holiday Pay For Employees Laid Off.* ............................................... 28
    6.     *Employees Not Eligible For Holiday Compensation.* .......................... 28
    7.     *Part-Time Employees Eligible For Holidays.* ..................................... 29
    8.     *In-Lieu Holidays.* ........................................................................... 29
III.F.    SALARY STEP PLAN AND SALARY ADJUSTMENTS ..................... 29
III.G.    METHODS OF CALCULATION ...................................................... 32
III.H.    SENIORITY INCREMENTS ........................................................... 32
III.I.    WORKERS COMPENSATION & RETURN TO WORK ...................... 33
III.J.    STATE DISABILITY INSURANCE (SDI) .......................................... 35
III.K.    VACATION ................................................................................ 35
III.L.    HEALTH AND WELFARE .............................................................. 36
    1.     *Employee Health Care.* ................................................................. 36
    2.     *Dependent Health Care Pick-Up.* ................................................... 36
    3.     *Dental Coverage.* .......................................................................... 36
    4.     *Contributions While On Unpaid Leave.* ........................................... 36
III.M.    RETIREMENT PICK-UP ............................................................... 36
III.N.    LEAVES OF ABSENCE ................................................................. 38
III.O.    USE OF SICK LEAVE WITH PAY CREDITS TO SUPPLEMENT STATE DISABILITY INSURANCE .................................................................. 38
III.P.    PILOT WELLNESS INCENTIVE PROGRAM ................................... 38
III.Q.    VOLUNTEER / PARENTAL RELEASE TIME ..................................... 39

**ARTICLE IV - WORKING CONDITIONS** ........................................... **40**

IV.A.    UNIFORMS AND EQUIPMENT ...................................................... 40

**ARTICLE V - SCOPE** ........................................................................ **41**

V.A.    SAVINGS CLAUSE. ..................................................................... 41
V.B.    AMENDMENT OR MODIFICATION ................................................ 41
V.C.    ZIPPER CLAUSE. ........................................................................ 41
V.D.    DURATION OF AGREEMENT ........................................................ 41

**APPENDIX A** ................................................................................. **A-1**

**APPENDIX B** ................................................................................. **B-1**

**APPENDIX C** ................................................................................. **C-1**

**APPENDIX D** .................................................. **D-ERROR! BOOKMARK NOT DEFINED.**

**APPENDIX E** ................................................................................. **E-1**

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

## PREAMBLE

1.      This Collective Bargaining Agreement (hereinafter "Agreement") is entered into by the City and County of San Francisco (hereinafter "City") acting through its designated representatives and the Deputy Sheriff's Association of San Francisco (hereinafter "Association").

# ARTICLE I - REPRESENTATION

### I.A.    RECOGNITION

2.      The City acknowledges that the Association has been certified by the Civil Service Commission as the recognized employee representative, pursuant to the provisions as set forth in the City's Employee Relations Ordinance for the following classes:

> 8302 - Deputy Sheriff I
> 8304 - Deputy Sheriff
> 8306 - Senior Deputy Sheriff
> 8308 - Sheriff's Sergeant
> 8310 - Sheriff's Lieutenant
> 8312 - Sheriff's Captain
> 8314 - Chief Deputy Sheriff

3.      Recognition shall only be extended to individual classes accreted to existing bargaining units covered by this Agreement. Application of this provision shall not extend to new bargaining units, added by affiliations or service agreements, unless mutually agreed in writing by the parties. Upon request of the Association, the City will meet and confer concerning proposed changes to bargaining units.

### I.B.    INTENT

4.      It is the purpose of this Agreement to promote and provide for harmonious relations, cooperation and understanding between and among the City, the Sheriff and the employees covered herein; to provide an orderly and equitable means of resolving any misunderstanding or differences which may arise out of this Agreement; and to set forth the full and entire understanding of the parties reached as a result of good faith negotiations regarding the wages, hours, and other terms and conditions of employment of the employees covered hereby including those matters over which the Sheriff has jurisdiction.

5.      It is agreed that the delivery of municipal services in the most efficient, effective, and courteous manner is of paramount importance to the City, the Association, and represented

employees. Such achievement is recognized to be a mutual obligation of the parties to this Agreement within their respective roles and responsibilities.

### I.C.    NO STRIKE PROVISION

6.    During the term of this Agreement, the City will not lock out the employees who are covered by this Agreement. The Association and the employees shall not strike, cause, encourage, or condone a work stoppage, slowdown, or sympathy strike during the term of this Agreement.

### I.D.    OBJECTIVE OF THE CITY

7.    It is the intent of the parties signatory hereto that the provisions of this Agreement shall become binding on the dates agreed to herein. It is the intent of the Mayor and the Board of Supervisors acting on behalf of the City to agree to wages, hours, and other terms and conditions of employment as are within the Mayor's jurisdiction, powers and authority to act as defined by the Charter, State Law, California Constitution and other applicable bodies of the law. This Agreement shall be binding on any and all employees or parts of the City, including its Commissions, but shall in no way affect the powers and jurisdiction of the Civil Service Commission.

### I.E.    MANAGEMENT RIGHTS

8.    Except as otherwise provided in this Agreement, in accordance with applicable state law, nothing herein shall be construed to restrict any legal City rights concerning direction of its work force, or consideration of the merits, necessity, or organization of any service or activity provided by the City.

9.    The City shall also have the right to determine the mission of its constituent departments, officers, boards and commissions; set standards of services to be offered to the public; and exercise control and discretion over the City's organization and operations. The City may also relieve City employees from duty due to lack of work or funds, and may determine the methods, means and personnel by which the City's operations are to be conducted. However, the exercise of such rights does not preclude employees from utilizing the grievance procedure to process grievances regarding the practical consequence of any such actions on wages, hours, benefits or other terms and conditions of employment specified in this Agreement.

### I.F.    EMPLOYEE REPRESENTATIVES

10.    The Association may select up to eight (8) employees for purposes of meeting and conferring with the City on matters within the scope of representation. If a situation should arise where the Association believes that more than eight (8) employee members should be present at such meetings, and the City disagrees, the Association shall take the matter up with the Employee

*ARTICLE I - REPRESENTATION*

Relations Director and the parties shall attempt to reach agreement as to how many employees shall be authorized to participate in said meetings.

11.    1.    The organization's duly authorized representative shall inform in writing the department head or officer under whom each selected employee member is employed that such employee has been selected.

12.    2.    No selected employee member shall leave the duty or work station, or assignment without specific approval of appropriate employer representative.

13.    3.    In scheduling meetings, due consideration shall be given to the operating needs and work schedules of the department, division, or section in which the employee members are employed.

14.    *President Release Time.* The City agrees to provide the DSA President with 80 hours of release time each pay period. The DSA agrees that the start of the term of office for a newly elected DSA President will coincide with the start of a City pay period. The DSA President shall not be eligible for pay premiums or other special pays while on release time.

15.    The City agrees that thirty-two (32) hours of the release time each pay period shall be paid release time. During this City paid release time, the DSA President shall engage only in the following activities: (1) preparing for and participating in meet and confer or consultation with representatives of the City or Sheriff's Department on matters relating to employment conditions and employee relations, including wages, hours and other terms and conditions of employment; and (2) investigating or processing grievances or appeals. The DSA President shall not participate in any other activity, including but not limited to political activity, during this City paid release time. The DSA President shall provide documentation to the Sheriff certifying that during each pay period, the DSA President used the thirty-two (32) hours of City paid release time only for authorized purposes. The DSA President shall provide this certification at the conclusion of each pay period. Use of the paid release time for unauthorized purposes may result in disciplinary action, up to and including termination of employment.

16.    The DSA agrees to reimburse the City for the balance of the release time, which is 48 hours of release time each pay period. The amount reimbursed to the City shall be 1.42 times the base hourly rate of pay for the DSA President. The DSA shall submit the required payment to the Sheriff's Department within 11 days after the close of each pay period. There are no restrictions on the activities of the DSA President during the 48 hours each pay period for which the DSA is reimbursing the City.

**COLLECTIVE BARGAINING AGREEMENT**
**SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION**

**JULY 1, 2005 – JUNE 30, 2009**

*ARTICLE I - REPRESENTATION*

### I.G.    SHOP STEWARDS

17.        1.      The Association shall have the right to appoint a Steward, who shall be under the direction of the Deputy Sheriff's Association president, for each facility where employees are employed under the terms of this Agreement. The Association shall provide the Sheriff with a written list of Stewards and their work locations, and shall notify the Sheriff of any changes in the designation of Stewards.

18.        2.      The Stewards shall see that this Agreement and working conditions are observed, protecting the rights of both the City and the employees covered by this Agreement. Their duties include the investigation and presentation of grievance for adjustment.

19.        3.      Upon notification of an appropriate management person, stewards, subject to management approval, which shall not be unreasonably withheld, shall be granted release time to investigate and process grievances and appeals. Stewards shall advise their supervisors/management of the area or work location where they will be investigating and processing grievances.

### I.H.    GRIEVANCE PROCEDURE

20.        The following procedures are adopted by the parties to provide for the orderly and efficient disposition of grievances and are the sole and exclusive procedures for resolving grievances as defined herein.

21.        1.      *Definition.*  A grievance is defined as an allegation by an employee, a group of employees or the Association that the City has violated, misapplied or misinterpreted a term or condition of employment provided in this Agreement. A grievance does not include the following:

22.        a.      All Civil Service Commission "carve-outs," as described in Charter section A8.409-3.

23.        b.      Performance evaluations, provided however, that employees shall be entitled to submit written rebuttals to unfavorable performance evaluations. Said rebuttal shall be attached to the performance evaluation and placed in the employee's official personnel file. In the event of an unfavorable performance rating, the employee shall be entitled to a performance review conference with the author and the reviewer of the performance evaluation. The employee shall be entitled to Association representation at said conference.

24.        2.      *Time Limits.*  The time limits set forth herein may be extended by agreement of the parties. Any such extension must be for a specifically stated period of time and

*ARTICLE I - REPRESENTATION*

confirmed in writing. In the event a grievance is not filed or appealed in a timely manner it shall be deemed withdrawn. Failure of the City to timely reply shall authorize the Association to appeal the grievance to the next step in the Grievance Procedure.

25.      *Economic Claims.* Any claim for monetary relief shall not extend more than thirty (30) calendar days prior to the filing of a grievance. Though the resolution of disputes outside the Grievance Procedure is desired, it is understood by the Association that, in order to preserve its claims for monetary relief, it will file a grievance upon having knowledge of the aggrieved event and, should resolution outside the Grievance Procedure appear probable, request an abeyance of the Grievance Procedure time limits, as set forth in section 2, above. The City will not unreasonably refuse a request for abeyance where settlement of an economic claim appears probable.

    3.     *Grievance Initiation.*

26.      a.     A grievance affecting more than one employee shall be filed with the departmental official having authority over all employees affected by the grievance.

27.      b.     Only the Association may file a grievance arising from a final disciplinary decision. These matters shall be initiated with the Sheriff or his designee at Step 2.

28.      c.     All other issues shall be initiated at Step 1.

29.     4.     *Steps of the Procedure.* The grievant shall discuss the grievance informally with his/her immediate supervisor, provided the grievance is not a discrimination or retaliation claim against that supervisor, and try to work out a satisfactory solution in an informal manner as soon as possible, but in no case later than ten (10) calendar days from the date of the occurrence of the act or the date the grievant might reasonably have been expected to have learned of the alleged violation being grieved. The grievant may have an Association representative present.

30.      a.     *Step 1.* If the grievance is not resolved within seven (7) calendar days after contact with the immediate supervisor, the grievant will submit the grievance in writing to the facility or division commander no later than seventeen (17) calendar days of the facts or event giving rise to the grievance. The grievance will be submitted on a mutually agreeable grievance form. The grievance will set forth the facts of the grievance, the terms and conditions of the Agreement claimed to have been violated, misapplied or misinterpreted, and the remedy or solution being sought by the grievant.

*ARTICLE I - REPRESENTATION*

31.       The facility or division commander shall respond in writing within seven (7) calendar days following receipt of the written grievance.

32.   b. *Step 2.* A grievant dissatisfied with the facility or division commander's response at Step 1 may appeal to the Sheriff, or his designee, in writing, within seven (7) calendar days of receipt of the Step 1 answer. The Sheriff, or his designee, may convene a meeting within fifteen (15) calendar days with the grievant and/or the grievant's Association representative. The Sheriff, or his designee, shall respond in writing within fifteen (15) calendar days of the meeting or receipt of the grievance, whichever is later.

     c. *Step 3.*

33.     (1) *For Contract Interpretation grievances only.* A grievant dissatisfied with the Sheriff 's response at Step 2 may appeal to the Director, Employee Relations, or its designee ("ERD"), in writing, specifying the reason(s) why it is dissatisfied with the Department's response, within fifteen (15) calendar days of receipt of the Step 2 answer. The grievance shall contain copies of all earlier correspondence and materials reviewed at the earlier steps. ERD may convene a grievance meeting within fifteen (15) calendar days with the grievant and/or the grievant's Association representative. ERD shall have thirty (30) calendar days after the receipt of the written grievance, or if a meeting is held, thirty (30) calendar days after the meeting, whichever is later, to review and seek resolution of the grievance and respond in writing.

34.     (2) *For Disciplinary Grievances only.* The Association dissatisfied with the Sheriff's response at Step 2 may appeal to the Administrative Appeals Board, as provided in the Sheriff's Department Policy, Article X. A copy of the Sheriff's Department Policy, Article X is attached hereto as Appendix A. A copies of both the grievant's appeal and the final written decision of the Administrative Appeals Board shall be forwarded to ERD. Disciplinary grievances may be appealed only through the Administrative Appeals Board and may not be submitted to arbitration under this Article.

35.  5. *Step 4 --- Arbitration for Contractual Interpretation grievances only.* If the Association is dissatisfied with the Step 3 response it may appeal by notifying ERD, in writing, within thirty (30) calendar days of its receipt of the Step 3 response, that arbitration is being invoked. Only the Association may submit a Contractual Interpretation grievance to arbitration under his Article.

*ARTICLE I - REPRESENTATION*

36.    6.    *Expedited Arbitration.*  By written mutual agreement entered into before or during Step 3 of the Grievance Procedure, the parties may submit any Contractual Interpretation grievance to the Expedited Arbitration process.

37.        a.    *Selection of the Arbitrator for Expedited Arbitration.*  The parties will first attempt to mutually agree on an arbitrator within seven (7) days of the invocation of Expedited Arbitration.  If the parties are unable to agree on a selection within the seven (7) days, either party may request a list of seven (7) appropriately experienced arbitrators from the California State Mediation and Conciliation Service (CSMCS).  As a condition of appointment to the CSMCS panel, each of the panelists must certify that (s)he will be available to hear the Expedited Arbitration in not greater than thirty (30) days from her/his selection.

38.        The parties will alternately strike panelists until a single name remains. Should the remaining panelist be unable to preside over the Expedited Arbitration within thirty (30) days, the last name stricken from the panel will be contacted, and continuing, if necessary, in reverse order of the names being stricken, until a panelist is selected who can preside over the Expedited Arbitration within thirty (30) days.  Whether the Association or City strikes the first name in the alternating process shall be determined by lot.

39.        b.    *Proceeding.*  No briefs will be used in Expedited Arbitration. Testimony and evidence will be limited consistent with the expedited format, as deemed appropriate by the arbitrator. There will be no court reporter or transcription of the proceeding, unless either party or the arbitrator requests one.  At the conclusion of the Expedited Arbitration, the arbitrator will make a bench decision. Every effort shall be made to have a bench decision followed by a written decision. Expedited arbitration decisions will be non-precedential except in future issues regarding the same employee.

40.        c.    *Costs.*  Each party shall bear its own expenses in connection with the presentation of its case.  All fees and expenses of the arbitrator shall be borne and shared equally by the parties.  The costs of a court reporter and the transcription of the proceeding, if any, shall be paid by the party requesting such, unless requested by the arbitrator, which will then be borne and equally shared by the parties.  In the event that an Expedited Arbitration hearing is canceled resulting in a cancellation fee, the party initiating the request or causing the cancellation shall bear the full cost of the cancellation fee, unless the parties agree otherwise.

*ARTICLE I - REPRESENTATION*

41.  7.  *Selection of an Arbitrator (not Expedited Arbitration).*  The parties agree to the following list of at least seven (7) but not more than ten (10) arbitrators to serve as the permanent panel to hear grievances arising under the terms of this Agreement.

> Chuck Askin
> Buddy Cohn
> MaryAnn Dresner
> Matt Goldberg
> Kenyette Jones
> Luella Nelson
> William Riker
> Katherine Thomson
> Carol Vendrillo
> Barry Winograd

42.  When a matter is appealed to arbitration the parties shall first attempt to mutually agree on an arbitrator.  In the event no agreement is reached within ten (10) calendar days, the arbitrator shall be selected from the permanent panel in accordance with the following procedure:

43.  a.  Panelists shall be listed in alphabetical order.  The case shall be assigned to the next panelist in order, provided however that each party shall be entitled to one strike.

44.  b.  The panelist next in order following any strike options exercised by the parties shall be designated to hear the case.

45.  c.  In the event that either party strikes a panelist's name from the list in accordance with this section, the struck panelist's name shall be placed at the bottom of the list.  Once struck, the same party may not strike that panelist's name again until that panelist has been selected to preside over an arbitration.

46.  *Authority of the Arbitrator.*  The decision of the arbitrator (for both Arbitration and Expedited Arbitration) shall be final and binding, unless challenged under applicable law.  The arbitrator shall have no authority to add to, ignore, modify or amend the terms of this Agreement.

47.  *Costs of Arbitration.*  The direct expenses of the arbitration including the fees and expenses of the arbitrator and any court reporter shall be borne and shared equally by the parties. In the event that an arbitration is canceled resulting in a cancellation fee from the arbitrator and/or the court reporter, the party initiating the request or causing

*ARTICLE I - REPRESENTATION*

the cancellation shall bear the full cost of the cancellation fee, unless the parties agree otherwise.

48.      *Hearing Dates and Date of Award.* Except for the Expedited Arbitration procedure described above, hearing dates shall be scheduled within thirty (30) working days of selection of an arbitrator or on the next practicable date mutually agreeable to the parties. Awards shall be due forty-five (45) calendar days following the receipt of closing arguments. As a condition of appointment to the permanent panel, arbitrators shall be advised of this requirement and shall certify their willingness to abide by these time limits.

49.    8.    *The Discipline Process.* The imposition of discipline shall be governed by Department Policy, Article X. A copy of Department Policy, Article X is attached hereto as Appendix A.

### I.I.    UNION SECURITY

50.    1.    *Authorization for Deductions.* The City shall deduct Association dues, initiation fees, premiums for insurance programs and political action fund contributions from an employee's pay upon receipt by the Controller of a form authorizing such deductions by the employee. The City shall pay over to the designated payee all sums so deducted. Upon request of the Association, the Controller agrees to meet with the Association to discuss and attempt to resolve issues pertaining to delivery of services relating to such deductions.

51.    2.    *Dues Deductions.* Dues deductions, once initiated, shall continue until the authorization is revoked in writing by the employee. For the administrative convenience of the City and the Association, an employee may only revoke a dues authorization by delivering the notice of revocation to the Controller during the two week period prior to the expiration of this Agreement. The revocation notice shall be delivered to the Controller either in person at the Controller's office or by depositing it in the U.S. mail addressed to the Payroll/Personnel Services Division, Office of the Controller, 875 Stevenson, San Francisco, CA 94103; Attention: Dues Deduction. The City shall deliver a copy of the notices of revocation of dues deductions authorizations to the Association within two (2) weeks of receipt.

### I.J.    AGENCY SHOP

52.    1.    *Application.* Except as provided otherwise herein, the provisions of this section shall apply to all employees of the City in all classifications represented by the Association in represented units when on paid status. These provisions shall not apply to individual employees of the City in represented units who have been properly and

*ARTICLE I - REPRESENTATION*

finally determined to be management, confidential or supervisory employees pursuant to Section 16.208 of the Employee Relations Ordinance. Except when an individual employee has filed a challenge to a management, confidential or supervisory designation, the Employee Relations Director and the Association shall meet as necessary for the purpose of attempting to make such determinations by mutual agreement. The Employee Relations Director shall give the Association no less than ten (10) working days prior notice of any such proposed designation. Disputes regarding such designations shall be promptly resolved pursuant to Section 16.208 (B) of the Employee Relations Ordinance.

53.        *Implementation.* An agency shop shall be implemented within representation units or subunits when:

54.            a.    *Election.* The Association has requested, in writing, an election on the issue, to be conducted by the State Conciliation Service and fifty percent (50%) plus one of those voting favor agency shop, or

55.            b.    *2/3 Membership.* The Association makes a showing that 2/3 of the employees within the unit or subunit are dues paying members of the Association, or

56.            c.    *New Employees.* The Association requests, in writing, an agency shop be implemented for all employees hired after a date to be agreed to by the Association and the Employee Relations Division.

57.    2.    *Service Fee.* Upon such an event occurring, employees of the City in the particular unit or subunit, except as set forth below, shall, as a condition of continued employment, become and remain a member of the Association, or in lieu thereof, shall pay a service fee to the Association. The fair share service fee payment shall be established annually by the Association, provided that such fair share agency shop service fee will be used by the Association only for the purposes permitted by law.

58.    3.    *Religious Exemption.* Any employee of the City in a classification identified in Article I.A., who is a member of a bona fide religion, body or sect which has historically held conscientious objections to joining or financially supporting a public employee organization and is recognized by the National Labor Relations Board to hold such objections to Association membership, shall upon presentation of membership and historical objection be relieved of any obligation to pay the required service fee. The Association shall be informed in writing of any such requests.

59.    4.    *Payroll Deduction.* The Association shall provide the Employee Relations Director and the City with a current statement of membership fees. Such statement of membership fees shall be amended as necessary. The City may take up to thirty (30)

days to implement such changes. Effective the second complete pay period commencing after the election or request or showing described in (b) and each pay period thereafter, the Controller shall make membership fee or service fee deductions, as appropriate, from the regular periodic payroll warrant of each City employee described in (a) thereof, and each pay period thereafter, the City shall make membership fee or service fee deductions, as appropriate, from the regular payroll warrant of each such employee. Nine (9) working days following payday the City will promptly pay over to the Association all sums withheld for membership or service fees.

60.    5.    *Financial Reporting.* Annually, the Association will provide an explanation of the fee and sufficient financial information to enable the fair share service fee payer to gauge the appropriateness of the fee. The Association will provide a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision-maker not chosen by the Association and will make provision for an escrow account to hold amounts reasonably in dispute while challenges are pending.

61.    6.    *Indemnification.* The Association agrees to indemnify and hold the City harmless for any loss or damage arising from the operation of this provision.

62.    7.    *Hudson Compliance.* The Association shall comply with the requirements set forth in *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986) for the deduction of agency shop fees. Annually, the Association shall certify in writing to the City that the Association has complied with the requirements set forth in this article and in *Hudson*, 475 U.S. 292.

### I.K.    BULLETIN BOARDS / UNION ACCESS / GENERAL INFORMATION

63.    *Employee Lists.* The Controller/City's designee shall provide with each dues deduction payment a list of employees paying membership fees and a list of employees paying service fees. All such lists shall contain the employee's name, employee number, classification, department number and amount deducted.

64.    *Bulletin Boards.* The City agrees to provide a reasonable amount of space on bulletin boards within Department facilities for use by the Association to communicate with its employees on representation-related matters. All posted Association literature must be dated, identified by affiliation and author, and neatly displayed. The Association must remove postings from Department bulletin board when the materials are no longer timely. The Department may remove any literature not posted within the specific limits of this section upon notifying the Association.

*ARTICLE I - REPRESENTATION*

65.      Any Association member posting Association literature shall do so in a manner that does not interfere with or interrupt the performance of employees' duties.

# ARTICLE II - EMPLOYMENT CONDITIONS

## II.A    NON-DISCRIMINATION

66.  The City and the Association recognize that the City is required to comply with the California Fair Employment and Housing Act, Title VII of the 1964 Civil Rights Act, as amended, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Age Discrimination in Employment Act of 1963, and other applicable federal, state and local statutes prohibiting discrimination, harassment and retaliation. The City and the Association agree that, pursuant to the City's obligations under those state, federal and local statutes no bargaining unit member employed by the City shall in any way be discriminated or retaliated against, or harassed, because of race, color, creed, religion, sex, gender identity, national origin, physical handicap, age, political affiliation or opinion, or sexual preference. The parties agree that this Memorandum shall be interpreted, administered and applied in a manner consistent with all applicable state, federal and local statutes. The City and the Association further agree that no bargaining unit member shall be discriminated against because of Association activity.

67.  In the event more than one administrative remedy may be available within the City and County governmental system of San Francisco, the Association shall elect one. An individual employee may exercise whatever right he or she may have under the law.

## II.B    AMERICANS WITH DISABILITIES ACT

68.  The parties agree that the City is obligated to provide reasonable accommodations for persons with disabilities in order to comply with the provisions of the Americans' With Disabilities Act, the Fair Employment and Housing Act, and all other applicable federal, state and local disability anti-discrimination statutes. The parties further agree that this Memorandum shall be interpreted, administered and applied in a manner consistent with such statutes. The City reserves the right to take any action necessary to comply with such statutes; however, such action does not include the right to create permanent light duty assignments or the requirement of the Department to accommodate any individual who is permanently incapable of performing the essential job duties as determined by the Sheriff.

## II.C    LAYOFFS

69.  Any permanent employee laid off may have the selection of one of the two following options:

70.  1.    Placement on the Civil Service Commission holdover roster for a duration of one (1) year, or

71.  2.    Severance pay of one (1) week's pay for every year of permanent service to a five (5) year maximum. The employee's decision concerning the above shall be irrevocable.

*ARTICLE II – EMPLOYMENT CONDITIONS*

72.    Placement on the Civil Service Commission holdover roster falls within the jurisdiction of the Civil Service Commission pursuant to Charter Sections A8.409 *et seq.* and is not therefore subject to grievance or arbitration.

  **II.D ASSIGNMENT OF WORK**

73.    1. *Probationary Period.* As defined and administered by the Civil Service Commission, the probationary period shall be as follows:

| | |
|---|---|
| Class 8302 - Deputy Sheriff I | 18 months |
| Class 8304 - Deputy Sheriff | None (1 year if filled by non-promotive other than 8302) |
| Class 8306 - Senior Deputy Sheriff | 1 year |
| Class 8308 - Sheriff's Sergeant | 1 year |
| Class 8310 - Sheriff's Lieutenant | 1 year |
| Class 8312 - Sheriff's Captain | 1 year |
| Class 8314 - Chief Deputy Sheriff | 1 year |

74.    The duration of the probationary period may be extended by written mutual agreement of the employee, the Association and the Sheriff.

     2. *Reclassification/Reorganization.*

75.     a. *Effects of Reclassification.* Upon approval of the reclassification of an existing position by the Human Resources Director or the Civil Service Commission, the incumbent shall be laid off, and shall be eligible to exercise seniority to fill another position in the class occupied prior to the reclassification in accordance with the rules of the Civil Service Commission or provisions of the Agreement whichever governs.

76.      The exercise of seniority shall be the exclusive remedy available to the affected employee and employee organization. The subject matter of this provision shall not be subject to the grievance procedure, except claims based on the application of seniority.

77.     b. *Transfer of Work between Bargaining Units/Incidental Employee Work Assignments.* The City shall have the right, in its sole discretion, to assign work to any classification determined to be appropriate for the performance of said duties.

*ARTICLE II – EMPLOYMENT CONDITIONS*

78.                        The incidental assignment of out of class duties shall be subject to this provision. Incidental duties shall be defined as those constituting a minor portion of the employee's assignment.

79.                        The subject matter of this provision shall not be subject to the grievance procedure.

80.          *c.*     *Reorganization.* The parties recognize and agree that the reorganization of departments and/or departmental units and divisions, and the work pertaining thereto, is the sole and exclusive prerogative of the City. Any action of the City undertaken in connection with this provision, including the consequences thereof, shall not be subject to the grievance procedure.

81.     3.     *Staffing levels.* Current staffing in county jail facilities and courts should be carried forward as minimum staffing. Current minimum staffing levels for the county jails and courts are contained in Appendix B.

82.     4.     *Assignment of the 8302 Deputy Sheriff I.*

83.          a.     *Assignment of functions.* Without limitation to the Sheriff's discretion to make out-of-class assignments, the City shall not allocate to any person not an appointee in any of the following classes:

>Deputy Sheriff I
>Deputy Sheriff
>Senior Deputy Sheriff
>Sheriff's Sergeant
>Sheriff's Lieutenant
>Sheriff's Captain
>Chief Deputy Sheriff

84.                        any of the functions now performed or to be performed by appointees within the aforesaid classes considered in the aggregate, as to the following:

85.          (1)     the intake, processing, housing, release, and transportation of prisoners in any facility of the San Francisco County Jail;

86.          (2)     the security of the San Francisco Municipal and Superior Courts; and,

87.          (3)     the enforcement of civil processes within the City and County of San Francisco.

*ARTICLE II – EMPLOYMENT CONDITIONS*

88.        b.    *Meet and Confer.* The City shall not undertake in any manner to allocate to any person not an appointee within any of the aforesaid classes any of the functions now performed by appointees within the aforesaid classes, as to the hiring, training, retention, promotion, compensation, discipline, or discharge of employees within said classes, without advance notice of intent to the Deputy Sheriff's Association and appropriate meet and confer in advance of such allocation having due regard for the following:

89.            (1)    the current practices of other local law enforcement agencies within the State of California;

90.            (2)    the availability of training in the aforesaid functions as certified by the Commission on Peace Officer Standards and Training of the State of California;

91.            (3)    the quality of service to be provided by the Sheriff's Department; and,

92.            (4)    bargaining unit work performed prior to 1986.

93.        c.    The parties incorporate by reference as if fully set forth Administration Code Sections 16.215(e)(1-4).

94.     5.    Matters within the jurisdiction of the Civil Service Commission are not subject to grievance or arbitration.

## II.E    PERSONNEL FILES AND OTHER PERSONNEL MATTERS

95.        Qualified employees covered by the Agreement shall be entitled to the protections afforded under the Peace Officers' Bill of Rights, Government Code Section 3309. The interpretation of Government Code Section 3309 shall not be subject to grievance or arbitration.

96.        Performance appraisals are prepared for several purposes, including for the purpose of giving notice to employees whose performance is deficient or unacceptable. Performance appraisal, including documents attached to the appraisals, shall be placed in the employee's official personnel file, and shall be removed only upon written authorization of the Sheriff, subject to the approval of the Civil Service Commission.

# ARTICLE III - PAY, HOURS AND BENEFITS

## III.A. WAGES

1.    General Wage Increases

97.    Wages shall be increased as follows:

98.          July 1, 2005        2%

99.          November 5, 2005    2%

100.         May 6, 2006         2%

101.         December 30, 2006   2%

102.         June 28, 2008       2%

2.    Market Wage Adjustments

103.    For the term of the 2005-2009 MOU, market wage adjustments shall be implemented based on a survey to be conducted by the City of the following counties: Alameda, Contra Costa, Marin, Napa, San Mateo, Santa Clara, Santa Cruz, Solano and Sonoma.

104.    The salary survey shall measure total compensation for the rank of Deputy Sheriff (8304) based on the following data points:

- Maximum monthly salary for the rank of Deputy Sheriff (8304);

- Maximum educational incentive premiums (e.g., Adv. POST);

- Employer payment of mandatory employee retirement contributions and retirement supplements;

- Longevity/Retention premiums

105.    The salary survey shall be completed no later than May 15 for market wage adjustments effective July 1 and no later than November 15 for market wage adjustments effective on January 1. The rates reported for the counties listed above shall be those known and officially authorized for payment as of May 15 for the succeeding July 1 and November 15 for the succeeding January 1. If rates are not known and authorized by May 15 for the succeeding July 1 or November 15 for the succeeding January 1, the rates reported shall be those in effect

*ARTICLE III – PAY, HOURS AND BENEFITS*

on May 15 or November 15 respectively. Authorized rates to be surveyed are those contained in resolutions, ordinances, charters or memoranda of understanding.

106.    For memoranda of understanding or other authorizing salary instruments that provide for CPI adjustments, the minimum adjustment, if provided, shall be utilized as the rate effective on the date of the market wage adjustment. If no minimum adjustment is provided, the rates used shall be those in effect when the survey is conducted.

107.    The parties shall consult regarding the survey results. Any disputes regarding the results of the survey or its methodology shall be submitted to Expedited Arbitration under the Grievance Procedure.

108.    The surveyed data shall be reported by each county and for each category, and as an average. The difference between the average total amount of all survey data points and the total amount for San Francisco Deputy Sheriffs for the identical data points shall be calculated as a percentage and the difference, if any, shall be the basis for market wage adjustments as follows:

    a.    Fiscal Year 2005-2006

109.    Effective July 1, 2005, employees shall receive a market wage adjustment, if any, in an amount equal to one-quarter (1/4) of the difference between the average total amount of all survey data points and the comparable total amount for San Francisco Deputy Sheriffs.

    b.    Fiscal Year 2006-2007

110.    Effective July 1, 2006, employees shall receive a market wage adjustment, if any, in an amount equal to one-third (1/3) of the difference between the average total amount of all survey data points and the comparable total amount for San Francisco Deputy Sheriffs.

    c.    Fiscal Year 2007-2008

111.    Effective the pay period that begins closest to January 1, 2008 (December 29, 2007), employees shall receive a market wage adjustment, if any, in an amount equal to one-half (1/2) of the difference between the average total amount of all survey data points and the comparable total amount for San Francisco Deputy Sheriffs.

    d.    Fiscal Year 2008-2009

*ARTICLE III – PAY, HOURS AND BENEFITS*

112.                    Effective the pay period that begins closest to January 1, 2009 (December 27, 2008), employees shall receive a market wage adjustment, if any, in an amount equal to 100% of the difference between the average total amount of all survey data points and the comparable total amount for San Francisco Deputy Sheriffs.

113.                    The parties acknowledge and understand that the market wage adjustment process set forth herein was reached by mutual agreement and is intended to determine market wage adjustments only during the term of this Agreement.

### III.B.  WORK SCHEDULES

114.      1.     *Regular Work Day.*  Unless agreed upon by the City and the Association as set forth below under the heading "Alternate Work Schedule", a regular workday is a tour of duty of eight (8) hours of work completed within not more than twenty-four (24) hours. There shall be no split shift.

115.      2.     *Regular Work Week.*  The Sheriff shall determine the work schedule for employees in his/her department.  Unless agreed upon by the Association and the City as set forth below under the heading "Alternate Work Schedule", a regular workweek is a tour of duty of five (5) consecutive days within a seven (7) day period.   A regular workweek is a tour of duty of five (5) consecutive days within a seven (7) day period.  However, employees who are moving from one shift or one work schedule to another may be required to work in excess of five (5) working days in conjunction with changes in their work shifts or schedules.

116.      3.     *Alternate Work Schedule.*  By mutual agreement, the City and the Association may enter into cost equivalent alternate work schedules for some or all represented employees.  Such alternate work schedules may include, but are not limited to, core hours flex-time; full-time work weeks of less than five (5) days; or a combination of features mutually agreeable to the parties.  Such changes in the work schedule shall not alter the basis for, nor entitlement to, receiving the same rights and privileges as those provided to employees on five (5) day, forty (40) hour a week schedules.

### III.C.  ADDITIONAL COMPENSATION

117.                    Each premium or additional compensation set forth below shall be separately calculated based on an employee's base rate of pay.

              *1.*     *Night Duty.*

*ARTICLE III – PAY, HOURS AND BENEFITS*

118.      Employees who, as part of their regularly scheduled work shift, are required to work any hours between 4:00 p.m. and 11:00 p.m. shall receive a premium of eight and one-half percent (8.5%) per hour in addition to their straight time hourly base rate of pay for any and all hours worked between 4:00 p.m. and 11:00 p.m.

119.      Employees who, as part of their regularly scheduled work shift, are required to work any hours between 11:00 p.m. and 6:00 a.m. shall receive a premium of ten percent (10%) per hour in addition to their straight time hourly base rate of pay for any and all hours worked between 11:00 p.m. and 6:00 a.m.

120.      Excluded from these provision are those employees who participate in an authorized flex-time program where the work shift includes hours to be worked between the hours of 5:00 p.m. and 7:00 a.m. Day shift employees assigned to work during the night duty premium hours are not eligible for night duty premium.

      2.    *Stand-by Pay.*

121.      Employees who as part of the duties of their positions are required by the Sheriff to standby when normally off duty to be instantly available on call for immediate emergency service for the performance of their regular duties, shall be paid twenty-five (25%) percent of their regular straight time rate of pay for the period of such standby service; except that employees shall be paid ten (10) percent of their regular straight time rate of pay for the period of such standby service when outfitted by the Department with an electronic paging device. When such employees are called to perform their regular duties in emergencies during the period of such standby service, they shall be paid while engaged in such emergency service the usual rate of pay for such service as provided herein. However, standby pay shall not be allowed in classes or positions whose duties are primarily administrative in nature, as designated by the Sheriff.

      3.    *Call Back Pay.*

122.      Employees ordered back to work following the completion of their work day and departure from their place of employment shall be granted a minimum of four (4) hours pay at the applicable rate or shall be paid for all hours actually worked at the applicable rate, whichever is greater. For employees covered by this Agreement, call-back means being ordered to work in an emergency, as a witness in a criminal matter, or when ordered for other reasons. Call-back does not mean continuing duty that does not have a substantial break, court appearances as a result of off-duty employment or personal reasons, prescheduled overtime, or employees called in to duty when on standby status.

      4.    *Special Skills & Duties.*

*ARTICLE III – PAY, HOURS AND BENEFITS*

123.                a.    *Officer Training Duties*. Employees represented by the Association who are assigned training officer duties shall be paid an additional $3.12 (three dollars and twelve cents) per hour when such duties are actually performed.

124.                b.    *Honor/Color Guard*. The City agrees to provide a premium of 0.5% per pay period to each represented employee who has served in the Sheriff's Honor/Color Guard for at least one week during that pay period.

                    c.    *Emergency Services*. The City agrees to provide a premium of 1% per pay period to each represented employee who was assigned to the Emergency Services Unit for at least one week during that pay period. To be entitled to this premium, employees assigned to the Emergency Services Unit must agree to wear a Department issued pager while off-duty and to respond immediately when paged. While assigned to this Unit, employees are not eligible to receive standby pay under Article III.C. of this Agreement for any service related to the Emergency Services Unit.

          5.    *Bilingual Premium*.

125.          Bilingual pay, in the amount of thirty-five dollars ($35) bi-weekly, shall be paid to members who have been certified by the Department of Human Resources as having proficiency in Spanish, Cantonese, Mandarin, Tagalog, sign language for the hearing impaired and Braille for the visually impaired. Members certified by the Department of Human Resources as having proficiency in other languages shall, upon the approval of the Sheriff, receive this bilingual premium.

          6.    *Acting Assignment Pay*.

126.                a.    Employees assigned by the Sheriff or his designee to perform a substantial portion of the duties and responsibilities of a higher classification shall receive compensation at a higher salary if all of the following conditions are met: (1) The assignment shall be in writing; (2) The position to which the employee is assigned must be a budgeted position; and (3) The employee is assigned to perform the duties of a higher classification for longer than ten (10) consecutive working days.

127.                Upon written approval by the Sheriff, beginning on the eleventh (11th) day of an acting assignment under this section and retroactive to the first (1st) day of the assignment, an employee shall be paid at a step of the established salary schedule of the higher class which is at least five percent (5%) above the employee's base salary but which does not exceed the maximum step of the

salary schedule of the class to which temporarily assigned. Premiums based on percent of salary shall be paid at a rate which includes out of class pay.

128.  Requests for classification or reclassification review shall not be governed by this provision.

129.  b.  *Facility Commander Pay.* When a Facility Commander has been assigned but is absent, the senior Sergeant or Lieutenant on the 2nd watch shall be entitled to a seven and one-half percent (7.5%) premium over his/her regular rate of pay for that shift. A Facility Commander shall be considered absent if he/she is off duty for the full shift or is on duty but is physically away from the assigned facility for the full shift. The term "Facility" shall include: County Jail #1, 2, 3, 7, 8 and 9, Court Services, Field Services and Administration.

130.  c.  *Acting Watch Commander.* An 8304 Deputy Sheriff, 8306 Senior Deputy Sheriff or 8308 Sheriff's Sergeant when assigned, under Sheriff's Department rules, to the duties of a higher ranking supervisor who is the Watch Commander during the absence of the Watch Commander during his or her normal tour of duty, at Jails #1, 2, 3, 7, 8, 9, Hall of Justice Courts (in the absence of an 8310), Alternative Program Division, Station Transfer Unit, Institutional Police Unit, Civic Center Courts, Youth Guidance Center, the General Hospital Security wing, CAD/911, the Central Warrant Bureau (CWB), City Hall Security, Transportation, the Training Unit, the Investigative Services Unit, or the Classification Unit, shall be entitled to a seven and one-half percent (7.5%) premium over his/her normal compensation.

7.  *Supervisory Differential.*

131.  The Sheriff may adjust the compensation of a supervisory employee whose schedule of compensation is set herein subject to the following conditions:

132.  a.  The supervisor, as part of the regular responsibilities of his/her class, supervises, directs, is accountable for and is in responsible charge of the work of a subordinate or subordinates.

133.  b.  The supervisor must actually supervise the technical content of subordinate work and possess education and/or experience appropriate to the technical assignment.

134.  c.  The organization is a permanent one approved by the Sheriff, chief administrative officer, Board or Commission, where applicable, and is a matter

of record based upon review and investigation by the Human Resources Department.

135.          d.     The classifications of both the supervisor and the subordinate are appropriate to the organization and have a normal, logical relationship to each other in terms of their respective duties and levels of responsibility and accountability in the organization.

136.          e.     The compensation schedule of the supervisor is less than one full step (approximately 5%) over the compensation schedule, exclusive of extra pay, of the employee supervised. In determining the compensation schedule of a classification being paid a flat rate, the flat rate will be converted to a bi-weekly rate and the compensation schedule the top step of which is closest to the flat rate so converted shall be deemed to be the compensation schedule of the flat rate classification.

137.                 The adjustment of the compensation schedule of the supervisor shall not exceed five percent (5%) over the compensation exclusive of extra pay, of the employee supervised.

138.          f.     If the application of this section adjusts the compensation schedule of an employee in excess of his/her immediate supervisor, the pay of such immediate supervisor shall be adjusted to an amount one dollar ($1) bi-weekly in excess of the base rate of his/her highest paid subordinate, provided that the applicable conditions of this section are also met.

139.          g.     In no event will the Sheriff approve a supervisory salary adjustment in excess of two (2) full steps (approximately 10%) over the supervisor's current basic compensation. If in the following fiscal year a salary inequity continues to exist, the Sheriff may again review the circumstances and may grant an additional salary adjustment not to exceed two (2) full steps (approximately 10%).

140.          h.     The Sheriff shall review any changes in the conditions or circumstances that were and are relevant to the request for salary adjustment under this section either acted upon by or pending before the Human Resources Director.

     8.     *Other Additional Compensation.*

141.          a.     *Canine Pay.* Member(s) assigned to canine duty shall receive pay of $82 biweekly as compensation for the average time authorized and expended in the exercise, care, feeding, grooming, and training of the assigned canine. This

amount has been calculated by the parties to represent approximately 45 minutes per day or 5.25 hours of overtime per week paid at one and one-half times the hourly rate of the federal minimum wage. This extra compensation is not to be considered base pay, premium pay, nor shall it be included for purposes of retirement benefit calculations or contributions. In addition, members shall be reimbursed for canine related expenses in the amount of $100.00 per month, calculated by the parties to represent food and other expenses reasonably and customarily incurred in the maintenance and care of the dog. This reimbursement is non receipted.

142.            b.    *Professional Achievement/POST Premium.* Bargaining unit members who possess an intermediate POST certificate shall, upon presenting documentation to the Department, receive a premium of four (4.0%) percent of their base rate of pay. Professional achievement pay shall be paid commencing with the first pay period following said presentation. Employees who possess an advanced POST certificate shall, upon presentation to the Department, receive a premium of six (6.0%) percent of their base rate of pay. Deputies hired prior to 1975 shall be entitled to receive either premium if (s)he has met the equivalent standard for either certificate. This payment shall not be considered "regular" pay for purposes of overtime.

143.            c.    *Retention Pay.* Effective July 1, 2007, employees who have completed five (5) years or more of service as a sworn member of the Department shall receive 2% retention pay. Retention pay shall be included for purposes of retirement benefit calculations and contributions.

## III.D.  OVERTIME COMPENSATION

144.        The Sheriff may require employees to work longer than the regular work day or the regular work week. Any time worked under proper authorization or suffered to be worked by an employee, exclusive of part-time employees, in excess of actual paid work on a regular work day or week shall be designated as overtime and shall be compensated at one-and-one-half (1-1/2) times the base hourly rate which may include a night differential if applicable; provided that employees working in classifications that are designated as having a regular work day of less than eight (8) hours or a regular work week of less than forty (40) hours shall not be entitled to overtime compensation for work performed in excess of said specified regular hours until they exceed eight (8) hours per day and forty (40) hours per week, provided further, that employees working in a flex-time program shall be entitled to overtime compensation as provided herein when required to work more than eighty (80) hours per payroll period. Overtime shall be calculated and paid on the basis of the total number of straight-time hours worked in a day and a week. For the purposes of this section, statutory holidays and in-lieu

holidays shall be counted as hours worked. Overtime compensation so earned shall be computed subject to all the provisions and conditions set forth herein.

145.  Employees occupying Fair Labor Standards Act (FLSA) exempt (executive, administrative, or professional) positions shall not be paid for overtime worked but may be granted compensatory time off.

146.  Employees covered by the FLSA who are required to work overtime shall be paid at a rate of one and one-half times (1-1/2) the regular base rate except by mutual agreement an employee may earn up to 80 hours of compensatory time each fiscal year. Notwithstanding the above limitation, in fiscal years 2005-2006 and 2006-2007 only, employees may earn up to 120 hours of compensatory time off, and in fiscal year 2007-2008 only, employees may earn up to 100 hours of compensatory time off.

147.  Employees shall give the Department five (5) days advance written notice of a request to use compensatory time off. The Department shall grant permission to use the compensatory time off unless doing so would unduly disrupt the operation of the Department. The Department may grant an employee's request to use compensatory time off with less than the required five (5) days advance written notice at its sole discretion.

148.  Employees shall not accumulate a balance of compensatory time in excess of 480 hours. Effective July 1, 2006, employees may not accumulate a balance of compensatory time in excess of 280 hours. Any employee who has a compensatory time balance in excess of 280 hours on July 1, 2006, may either (1) maintain his or her compensatory balance but not accrue any additional compensatory time until the balance drops below 280 hours, or (2) elect to be paid out compensatory time over 280 hours.

149.  Effective July 1, 2007, employees may not accumulate a balance of compensatory time in excess of 180 hours. Any employee who has a compensatory time balance in excess of 180 hours on July 1, 2007, may either (1) maintain his or her compensatory balance but not accrue any additional compensatory time until the balance drops below 180 hours, or (2) elect to be paid out compensatory time over 180 hours.

150.  Effective July 1, 2008, employees may not accumulate a balance of compensatory time in excess of 80 hours. Any employee who has a compensatory time balance in excess of 80 hours on July 1, 2008, may either (1) maintain his or her compensatory balance but not accrue any additional compensatory time until the balance drops below 80 hours, or (2) elect to be paid out compensatory time over 80 hours.

151.  Subject to the maximum number of compensatory time hours an employee may earn each fiscal year and subject to the maximum compensatory time balance an employee may accumulate, as set forth above, employees who work a 12-hour shift shall be able to elect, at

the beginning of each fiscal year, to be paid in compensatory time for working hours 81 through 84 of their two week pay period. Implementation of this provision is subject to confirmation by the City that it complies with state and federal law.

152.   After receiving the Sheriff's written request to suspend the mandated compensatory time off provisions for "Z" designated positions, if the request meets the requirements in the Annual Salary Ordinance to suspend the "Z" designation, then ERD shall issue its letter to the appropriate authority within 10 days.

153.   Upon transfer to another City department or upon separation of employment through resignation, retirement or termination, a bargaining unit member who is designated "non-Z" or whose "Z" symbol has been waived, shall be entitled to payout of all hours of compensatory time that the member has earned but not used at the time of transfer or separation, less any applicable deductions and withholdings.  A bargaining unit member who transfers from Sheriff's Department to another City department shall provide written notice to the Sheriff's Department, prior to separation from the member's classification, of the member's desire to receive payout of all hours of compensatory time available under this section. At the direction of the Sheriff's Department, an employee shall be required to use compensatory before transferring from another Department.

154.   The parties acknowledge that for purposes of calculating overtime under the Fair Labor Standards Act (FLSA), the work period now in effect for all sworn members, regardless of the member's assignment or shift, is a 14-day period (86 hours) under 29 USC Section 207k (e.g., Saturday, July 2, 2005 at 0001 hours to Friday, July 15, 2005 at 2400 hours; Saturday, July 16, 2005 at 0001 hours to Friday, July 29, 2005 at 2400 hours).

### III.E.  HOLIDAYS AND HOLIDAY PAY

155.   Except when normal operations require, or in an emergency, employees shall not be required to work on the following days hereby declared to be holidays for such employees:

> January 1 (New Year's Day)
> the third Monday in January (Martin Luther King, Jr.'s Birthday)
> the third Monday in February (President's Day)
> the last Monday in May (Memorial Day)
> July 4 (Independence Day)
> the first Monday in September (Labor Day)
> the second Monday in October (Columbus Day)
> November 11 (Veteran's Day)
> Thanksgiving Day
> the day after Thanksgiving
> December 25 (Christmas Day)

*ARTICLE III – PAY, HOURS AND BENEFITS*

156.    In addition, any day declared to be a holiday by proclamation of the Mayor after such day has heretofore been declared a holiday by the Governor of the State of California or the President of the United States.

157.    Provided further, if January 1, July 4, November 11 or December 25 falls on a Sunday, the Monday following is a holiday.

158.    The City shall accommodate religious belief or observance of employees as required by law.

159.    Three additional floating days off to be taken on days selected by the employee subject to prior scheduling approval of the Sheriff. Employees (both full-time and part-time) must complete six (6) months continuous service to establish initial eligibility for the floating days off. Employees hired on an as-needed, part-time, intermittent or seasonal basis shall not receive the additional floating days off. Floating days off may not be carried forward from one fiscal year to the next. No compensation of any kind shall be earned or granted for floating days off not taken.

        *1.    Holiday Pay For Employees Who Separate.*

160.    Employees who have established initial eligibility for floating days off and subsequently separate from City employment, may at the sole discretion of the appointing authority, be granted those floating day(s) off to which the separating employee was eligible and had not yet taken off.

        *2.    Holidays That Fall On A Saturday.*

161.    For those employees assigned to a work week of Monday through Friday, and in the event a legal holiday falls on Saturday, the preceding Friday shall be observed as a holiday; provided, however, that except where the Governor declares that such preceding Friday shall be a legal holiday, each department head shall make provision for the staffing of public offices under his/her jurisdiction on such preceding Friday so that said public offices may serve the public as provided in Section 7.702 of the Charter. Those employees who work on a Friday which is observed as a holiday in lieu of a holiday falling on Saturday shall be allowed a day off in lieu thereof as scheduled by the Sheriff in the current fiscal year. The City shall provide one week's advance notice to employees scheduled to work on the observed holiday, except in cases of unforeseen operational needs.

        *3.    Holiday Compensation For Time Worked.*

162.    Employees required to work on any of the above-specified holidays excepting Fridays observed as holidays in-lieu of holidays falling on Saturday, shall be paid extra compensation

at time and one-half (1-1/2) the usual rate; provided, however, that at an employee's request and with the approval of the Sheriff, an employee may be granted compensatory time off in-lieu of paid overtime.

163. Employees occupying positions which are exempt from the FLSA (executive, administrative and professional) shall not receive extra compensation for holiday work but may be granted time off.

  4. *Holidays For Employees On Work Schedules Other Than Monday Through Friday.*

164.  a. Employees assigned to seven (7) day-operation departments or employees working a five (5) day work week other than Monday through Friday shall be allowed another day off if a holiday falls on one of their regularly scheduled days off.

165.  b. Employees whose holidays are changed because of shift rotations shall be allowed another day off if a legal holiday falls on one of their days off.

166.  c. Employees required to work on a holiday which falls on a Saturday or Sunday shall receive holiday compensation for work on that day. Holiday compensation shall not then be additionally paid for work on the Friday preceding a Saturday holiday, nor on the Monday following a Sunday holiday.

167.  d. Subsections b. and c., above, shall apply to part-time employees on a pro-rata basis. If the provisions of this section deprive an employee of the same number of holidays that an employee receives who works Monday through Friday, he/she shall be granted additional days off to equal such number of holidays. The designation of such days off shall be by mutual agreement of the employee and the appropriate employer representative. Such days off must be taken within the fiscal year. In no event shall the provisions of this section result in such employee receiving more or less holidays than an employee on a Monday through Friday work schedule.

  5. *Holiday Pay For Employees Laid Off.*

168. An employee who is laid off at the close of business the day before a holiday who has worked not less than five (5) previous consecutive workdays shall be paid for the holiday at their normal rate of compensation.

  6. *Employees Not Eligible For Holiday Compensation.*

169.    Persons employed for holiday work only, or persons employed on a part-time work schedule which is less than twenty (20) hours in a bi-weekly pay period, or persons employed on an intermittent part-time work schedule (not regularly scheduled), or persons employed on as-needed, seasonal or project basis for less than six (6) months continuous service, or persons on leave without pay status both immediately preceding and immediately following the legal holiday shall not receive holiday pay.

       7.    *Part-Time Employees Eligible For Holidays.*

170.    Part-time employees who regularly work a minimum of twenty (20) hours in a bi-weekly pay period shall be entitled to holiday pay on a proportionate basis.

171.    Regular full-time employees are entitled to 8/80 or 1/10 time off when a holiday falls in a bi-weekly pay period, therefore, part-time employees, as defined in the immediately preceding paragraph, shall receive a holiday based upon the ratio of 1//10 of the total hours regularly worked in a bi-weekly pay period. Holiday time off shall be determined by calculating 1/10 of the hours worked by the part-time employee in the bi-weekly pay period immediately preceding the pay period in which the holiday falls. The computation of holiday time off shall be rounded to the nearest hour.

172.    The proportionate amount of holiday time off shall be taken in the same fiscal year in which the holiday falls. Holiday time off shall be taken at a time mutually agreeable to the employee and the appropriate employer representative.

       8.    *In-Lieu Holidays.*

173.        a.    Requests for in-lieu holidays shall be made to the appropriate management representative within thirty (30) days after the holiday is earned and must be taken within the fiscal year.

174.        b.    In-lieu days will be assigned by the Sheriff or designee if not scheduled in accordance with the procedures described herein.

175.        c.    A holiday can be carried over into the next fiscal year with the approval of the Sheriff. If the Sheriff fails to schedule an in-lieu holiday as provided herein, the holiday credit shall be carried over to the next fiscal year.

## III.F.  SALARY STEP PLAN AND SALARY ADJUSTMENTS

176.    Appointments to positions in the City and County service shall be at the entrance rate established for the position except as otherwise provided herein. Adjustments as outlined in

this section shall take place on the first day of the pay period after the completion of the specified period.

177.    1.    *Promotive Appointment in a Higher Class.* Except as provided in paragraph 167 below [re 8302 class], an employee following completion of the probationary period or six (6) months of service, and who is appointed to a position in a higher classification, deemed to be promotive shall have his/her salary adjusted to that step in the promotive class as follows:

178.    a.    If the employee is receiving a salary in his/her present classification equal to or above the entrance step of the promotive class, the employee's salary in the promotive class shall be adjusted two steps in the compensation schedule over the salary received in the lower class but not above the maximum of the salary range of the promotive classification.

179.    b.    If the employee is receiving a salary in his/her present classification which is less than the entrance step of the salary range of the promotive classification, the employee shall receive a salary step in the promotive class which is closest to an adjustment of seven and one-half percent (7.5%) above the salary received in the class from which promoted. The proper step shall be determined in the bi-weekly compensation schedule and shall not be above the maximum of the salary range of the promotive class.

156.    For purpose of this Section, appointment of an employee as defined herein to a position in any class the salary schedule for which is higher than the salary schedule of the employee's class shall be deemed promotive.

157.    2.    *Non-promotive Appointment.* When an employee accepts a non-promotive appointment in a classification having the same salary schedule, or a lower salary schedule, the appointee shall enter the new position at that salary step which is the same as that received in the prior appointment, or if the salary steps do not match, then the salary step which is immediately in excess of that received in the prior appointment, provided that such salary shall not exceed the maximum of the salary schedule.

158.    3.    *Appointment Above Entrance Rate.* Subject to the Controller's certification of available funds and procedures to be established by the Department of Human Resources, appointments may be made by the Sheriff at any step in the compensation schedule under any of the following conditions:

*ARTICLE III – PAY, HOURS AND BENEFITS*

159.                    a.    A former permanent City employee, following resignation with service satisfactory, is being reappointed to a permanent position in his/her former classification.

160.                    b.    Loss of compensation would result if appointee accepts a position at the normal step.

161.                    c.    A severe, easily demonstrated and documented recruiting and retention problem exists.

162.                    d.    The appointee possesses special experience, qualifications, and/or skills that, in the opinion of the Sheriff, warrant appointment above the entrance rate.

163.          4.    *Compensation Upon Reemployment.*

164.                    a.    *Reemployment in Same Classification Following Layoff.* An employee who has acquired permanent status in a position and who is laid off because of lack of work or funds and is re-employed in the same class after such layoff shall be paid the salary step attained prior to layoff.

165.                    b.    *Reemployment in an Intermediate Classification.* An employee who has completed the probationary period in a promotive appointment that is two or more steps higher in an occupational series than the permanent position from which promoted and who is subsequently laid off and returned to a position in an intermediate ranking classification shall receive a salary based upon actual permanent service in the higher classification, unless such salary is less than the employee would have been entitled to if promoted directly to the intermediate classification. Further increments shall be based upon the increment anniversary date that would have applied in the higher classification.

166.                    c.    *Reemployment in a Formerly Held Classification.* An employee who has completed the probationary period in an entrance appointment who is laid off and is returned to a classification formerly held on a permanent basis shall receive a salary based upon the original appointment date in the classification to which the employee is returned. An employee who is returned to a classification not formerly held on a permanent basis shall receive a salary step in the salary schedule for the classification closest to, but not below, the prior salary amounts, provided that salary shall not exceed the maximum of the salary schedule.

167.          5.    As awarded by arbitration, all 8302 employees, after completing 12 months in the 8302 classification, will move to the salary level of step 1 of classification

8304.  Probationary and current requirements for the class 8302 will be maintained.  An 8302 employee will move to salary step 2 of class 8304 upon completion of six months of continuous service after achieving step 1, provided such employee successfully completes the 8302 probationary period. Unless otherwise modified by this Article, the Civil Service Commission Rule 14, section 14.38 et seq., shall govern the 8302 classification and advancement to the 8304 classification.

## III.G.  METHODS OF CALCULATION

168.    1.    *Bi-Weekly.*  An employee whose compensation is fixed on a bi-weekly basis shall be paid the bi-weekly salary for his/her position for work performed during the bi-weekly payroll period.  There shall be no compensation for time not worked unless such time off is authorized time off with pay.

169.    2.    *Per Diem or Hourly.*  An employee whose compensation is fixed on a per diem or hourly basis shall be paid the daily or hourly rate for work performed during the bi-weekly payroll period on a bi-weekly pay schedule.  There shall be no compensation for time not worked unless such time off is authorized time off with pay.

170.    3.    *Conversion of Annual Rate to Bi-Weekly Rate.*  When an annual rate of compensation is converted to bi-weekly rates for payroll purposes and the resulting amount involves a fraction of a cent, the converted bi-weekly rate shall be adjusted to eliminate such fraction of a cent on the following basis:

171.        a.    A fraction of less than one-half (1/2) shall be dropped and the amount reduced to the next full cent.

172.        b.    A fraction of one-half (1/2) or more shall be increased to the next full cent.

## III.H.  SENIORITY INCREMENTS

Advancement Through Salary Steps

    1.    *8302 and 8304 Employees*

173.        a.    All employees in classification 8302, after completing twelve (12) months in that classification, shall move to Step 1 of the 8304 salary range.

174.        b.    Any employee assigned to classifications 8302 or 8304, Step 1, who has completed eighteen (18) months or more of service shall be paid at the 8304 Step 2 salary rate.

*ARTICLE III – PAY, HOURS AND BENEFITS*

175.    c. All employees in classification 8304 will advance to each successive step upon completion of the one (1) year (six (6) months, effective July 1, 2006) of required service with the following exception. If the Sheriff agrees that a performance appraisal should be marked lower than competent and effective, the increment may be withheld at the Sheriff's sole discretion.

    *2.* *Supervisory Ranks (8306-8314 Employees)*

176.    a. All employees in classifications 8306 through 8314 shall be paid at the top step of their salary range.

177.  *3.* *Date Increment Due.* Increments granted in accordance with this section become due and payable on the next day following completion of required service in the class, unless otherwise provided herein.

178.  *4.* *Exceptions.* An employee shall not receive a salary adjustment based upon service as herein provided if he/she has been absent by reason of suspension or on any type of leave without pay (excluding a military leave) for more than one-sixth (1/6) of the required service in the anniversary period, provided that such employee shall receive a salary increment when the aggregate time worked since his/her previous increment equals or exceeds the service required for the increment, and such increment date shall be his/her new anniversary date; provided that time spent on approved military leave or in an appointive or promotive position shall be counted as actual service when calculating salary increment due dates.

179.  *5.* *Accelerated Steps.* Please reference Attachment E for the Accelerated Step structure that is to take effect July 1, 2006.


**III.I. WORKERS COMPENSATION & RETURN TO WORK**

180.  1. *Workers Compensation.* An employee who is absent because of an occupational disability and who is receiving Temporary Disability, Vocational Rehabilitation Maintenance Allowance, State Disability Insurance, may request that the amount of disability indemnity payment be supplemented with salary to be charged against the employee's accumulated unused sick leave with pay credit balance at the time of disability, compensatory time off, or vacation, so as to equal the normal salary the employee would have earned for the regular work schedule. Use of compensatory time requires the employee's appointing officer's approval.

*ARTICLE III – PAY, HOURS AND BENEFITS*

181.　　　　　An employee who wishes not to supplement, or who wishes to supplement with compensatory time or vacation, must submit a written request to the appointing officer or designee within seven (7) calendar days following the first date of absence. Disability indemnity payments will be automatically supplemented with sick pay credits (if the employee has sick pay credits and is eligible to use them) to provide up to the employee's normal salary unless the employee makes an alternative election as provided in this section.

182.　　　　　Employee supplementation of workers compensation payment to equal the full salary the employee would have earned for the regular work schedule in effect at the commencement of the workers compensation leave shall be drawn only from an employee's paid leave credits including vacation, sick leave balance, or other paid leave as available. An employee returning from disability leave will accrue sick leave at the regular rate and not an accelerated rate.

183.　　　　　Salary may be paid on regular time-rolls and charged against the employee's sick leave with pay, vacation, or compensatory time credit balance during any period prior to the determination of eligibility for disability indemnity payment without requiring a signed option by the employee.

184.　　　　　Sick leave with pay, vacation, or compensatory time credits shall be used to supplement disability indemnity pay at the minimum rate of one (1) hour units.

185.　　　　　The parties agree that this provision clarifies and supercedes any conflicting provision of the Civil Service Rules which are within the authority of the Board of Supervisors and subject to bargaining and arbitration pursuant to Charter Section A8.409 *et seq*.

186.　　　　　Entitlements afforded represented employees under Labor Code Section 4850 and Article II.D.4. of this Agreement shall not be affected by this provision.

187.　　　2.　　*Return-To-Work Programs*:　(1)　all deputized duty assignments in the Sheriff's Department could require physical contact and require physical agility; (2) there are *no* light duty assignments; and, (3) deputies returning from disability or sick leave must be prepared and medically cleared to fully perform the full range of assigned duties.

　　　　　　　　Exceptions:

188.　　　　　a.　　Upon written notice from a deputy's physician that in the physician's professional opinion the deputy will be able to return to full duty within ninety (90) calendar days, the Sheriff or Undersheriff may authorize the Personnel Manager to return the deputy to specific duties that are within the deputy's abilities.

*ARTICLE III – PAY, HOURS AND BENEFITS*

189.                  b.      In order to maintain Department operations, the Sheriff or Undersheriff may authorize the resumption of specific duties by management personnel who medically are not fully capable of performing all job duties.

### III.J.  STATE DISABILITY INSURANCE (SDI)

190.        Upon certification by the Association that one or more representation units covered by this Agreement desires to be enrolled in the State Disability Insurance (hereinafter "SDI") program, the Director, Department of Human Resources, shall take any and all necessary action to enroll such representation units and all employees therein.  The cost of SDI will be paid by the employee through payroll deduction at a rate established by the State of California Employment Development Department.

### III.K.  VACATION

191.        Vacations will be administered pursuant to the Administrative Code, Article II, Sections 16.10 through 16.16.

*ARTICLE III – PAY, HOURS AND BENEFITS*

### III.L. HEALTH AND WELFARE

*1.    Employee Health Care.*

192.    The level of the City's contribution to health benefits will be set in accordance with the requirements of Charter Sections 8.423 and 8.428.

193.    The City shall contribute all of the premium for the employee's own health care benefit coverage for "medically single" employees (i.e. employees not receiving a City contribution for dependent health care benefits).

*2.    Dependent Health Care Pick-Up.*

194.    The City will contribute the greater amount of $225 per month or 75% of the dependent rate charged by the City to employees for Kaiser coverage at the dependent plus two or more level.

*3.    Dental Coverage.*

195.    The City agrees to maintain dental plan coverage at present levels for the term of this Agreement.

*4.    Contributions While On Unpaid Leave.*

196.    As set forth in Administrative Code section 16.701(b), covered employees who are not in active service for more than twelve (12) weeks, shall be required to pay the Health Service System for the full premium cost of membership in the Health Service System, unless the employee shall be on sick leave, workers' compensation, mandatory administrative leave, approved personal leave following family care leave, disciplinary suspensions or on a layoff holdover list where the employee verifies they have no alternative coverage.

### III.M. RETIREMENT PICK-UP

197.    For the duration of this agreement, employees shall pay their own retirement contributions in an amount equal to 7.5% of covered gross salary.

198.    Any City pickup of an employee's retirement contribution shall not be considered as a part of an employee's compensation for the purpose of computing straight-time earnings, compensation for overtime worked, premium pay, or retirement benefits; nor shall such contributions be taken into account in determining the level of any other benefit which is a function of our percentage of salary. The City reserves the right to take said contributions into account for the purpose of salary comparisons with other employers.

*ARTICLE III – PAY, HOURS AND BENEFITS*

199.        *Military Buy-Back Option.* Subject to meeting the PERS requirements for military buy-back, and in compliance with the City Charter, the parties agree that employees may buy-back up to four (4) years of active duty Federal Armed Services time under the following terms and conditions: (a) the employee shall pay the full employee share and the full employer share (expected to rise over the next few years) for the time (s)he bought back based on a rate of compensation to be determined by PERS; in addition, (b) the employee shall pay interest on the contribution as determined by PERS.

200.        Charter Section A8.506 authorizes the Board of Supervisors to enter into a contract with the Public Employees Retirement System (PERS) to provide retirement benefits for the deputy sheriffs. In the MOU for 2001-2003, the City agreed that, in the event the voters approved an improvement to the retirement benefits for safety members (police officers and firefighters) of the San Francisco Retirement System, the City would recommend to the Board of Supervisors that the City's contract with PERS be amended to provide a comparable benefit for employees covered by this agreement. In November 2002, the voters approved a retirement benefit known as "3% @ 55" for safety members of SFERS. In accordance with that agreement, the Board of Supervisors adopted and implemented an agreement between the City and the DSA to amend the City's contract with PERS to provide employees covered by this agreement with the retirement benefit known as 3% @ 55.

201.        In connection with the Board of Supervisors approval of the amendment to the contract with PERS, the DSA and City entered into a cost sharing agreement in which the DSA agreed that represented members had a continuing obligation to share in the increased cost to the City of amending the PERS contract to provide represented members with the 3% @ 55 retirement plan. The DSA further agreed that it had a continuing obligation to meet and confer with the City to implement a cost sharing agreement for the increased costs to the City of amending the PERS contract, which would materially reduce the cost to the City of the increase in the employer contribution caused by the retirement improvement. The parties agreed that the cost sharing agreement would not require an employee retirement contribution in excess of the limits set in the Charter.

            Retirement Seminar Release Time

202.        Subject to development, availability and scheduling by SFERS and PERS, employees shall be allowed not more than one day during the life of this MOU to attend a pre-retirement planning seminar sponsored by SFERS or PERS.

203.        Employees must provide at least two-weeks advance notice of their desire to attend a retirement planning seminar to the appropriate supervisor. An employee shall be released from work to attend the seminar unless staffing requirements or other Department exigencies require the employee's attendance at work on the day or days such seminar is scheduled. Release time shall not be unreasonably withheld.

204.    This section shall not be subject to the grievance procedure.

### III.N.  LEAVES OF ABSENCE

205.    Those portions of the Civil Service Commission Rules applicable to Leaves, which are negotiable and arbitrable pursuant to Charter Sections A8.409 *et seq.*, may not be changed during the term of this Agreement except by mutual consent.  Those matters within the jurisdiction of the Civil Service Commission are not subject to grievance or arbitration.

206.    A copy of the portions of the Civil Service Commission Rules applicable to Leaves which may not be negotiated or arbitrated is attached as Appendix C.

### III.O.  USE OF SICK LEAVE WITH PAY CREDITS TO SUPPLEMENT STATE DISABILITY INSURANCE

207.    Sick leave with pay credits shall be used to supplement State Disability Insurance (SDI) at the minimum rate in units of one tenth (0.1) hour.

208.    SDI payments to an employee who qualifies and who has accumulated and is eligible to use sick leave with pay credits shall be supplemented with sick leave with pay credits so that the total of SDI and sick leave with pay calculated in units of one/tenth (0.1) hour provides up to, but does not exceed, the regular net salary the employee would have received for the normal work schedule excluding overtime.

209.    An employee who wishes not to supplement, or who wishes to supplement with compensatory time or vacation, must submit a written request on the prescribed form to the appointing officer or designee within seven (7) calendar days following the first date of absence.

210.    An employee who supplements SDI, shall earn sick leave with pay credits at the normal rate only for those hours of sick leave pay credits used.

### III.P.  PILOT WELLNESS INCENTIVE PROGRAM

211.    The City hereby establishes a pilot "wellness incentive program" to promote workforce attendance.

212.    Any full-time employee leaving the employment of the City upon service or disability retirement may receive payment of a portion of accrued sick leave credits at the time of separation.

213.    The amount of this payment shall be equal to two-and-one-half percent (2.5%) of accrued sick leave credits at the time of separation times the number of whole years of continuous employment times an employee's salary rate, exclusive of premiums or supplements, at the

time of separation. Vested sick leave credits, as set forth under Civil Service Commission Rules, shall not be included in this computation.

214.        Example of Calculation

Employee A retires with 20 years of service.
Employee A has a sick leave balance of 500 hours.
Employee A has a base salary rate of $25.00 per hour at the time of separation.

Wellness Incentive = 2.5% for each year of service x 20 years of service = 50%
50% x 500 hours = 250 hours.
250 hours x $25.00 (base salary at time of separation) = $6,250.00

215.        The number of hours for which an employee may receive cash payments shall not exceed one thousand forty (1040) hours, including any vested sick leave.

216.        A wellness incentive bonus payment shall not be considered as part of an employee's compensation for the purpose of computing retirement benefits.

## III.Q. VOLUNTEER / PARENTAL RELEASE TIME

217.        Represented employees shall be granted paid release time to attend parent teacher conferences of four (4) hours per fiscal year (for children in kindergarten or grades 1 to 12).

218.        In addition, an employee who is a parent or who has child rearing responsibilities (including domestic partners but excluding paid child care workers) of one or more children in kindergarten or grades 1 to 12 shall be granted unpaid release time of up to forty (40) hours each fiscal year, not exceeding eight (8) hours in any calendar month of the fiscal year, to participate in the activities of the school of any child of the employee, providing the employee, prior to taking the time off, gives reasonable notice of the planned absence. Subject to minimum staffing requirements, an employee may use vacation, floating holiday hours, or compensatory time off during the planned absence.

## ARTICLE IV - WORKING CONDITIONS

### IV.A.  UNIFORMS AND EQUIPMENT

219.       1.       Uniform Allowance. The City agrees to provide a sum of Seven Hundred and Seventy-five ($775) dollars in the payroll that includes September 1, 2005 as a uniform allowance to represented employees who have been continuously employed in the Sheriff's Department. An employee shall be considered "continuously employed" if he/she was on duty status cumulatively for ten (10) of the twelve (12) months immediately preceding September 1 each year of this contract. Employees who were on duty status less than ten (10) of the twelve (12) months shall be paid a pro-rata uniform allowance, calculated on a twelve (12) month basis. However, to receive this allowance, an employee must be in paid status or an approved leave on September 1. If an employee is not on duty status or on approved leave on September 1, the employee will not receive any allowance.

220.       Beginning in fiscal year 2006-2007 and continuing for the duration of this Agreement, the City agrees to provide a uniform allowance each year in the amount of Eight Hundred Fifty ($850) dollars. The City will pay the uniform allowance in the payroll that includes September 1 of each year. Represented employees must be on duty status or approved leave on each September 1 to be eligible for the uniform allowance. Any eligible employee hired on or after March 1 will receive fifty percent (50%) of the uniform allowance that year.

221.       2.       *Bulletproof Vests.* The City agrees to refurbish, repair or replace bulletproof vests for each represented employee, as appropriate and in accordance with manufacturer's specifications. All bulletproof vests provided to employees remain the property of the City and must be returned to the City when an employee is issued a replacement vest.

222.       3.       *Ammunition.* The City will provide an adequate amount of ammunition per month as determined by the Sheriff, for each member of the bargaining unit to practice in order to qualify.

# ARTICLE V - SCOPE

### V.A.    SAVINGS CLAUSE.

223.    Any provision of this Agreement shall be held invalid by operation of the law or by any court of competent jurisdiction or if compliance with enforcement of any provision shall be restrained by any tribunal, the remainder of this Agreement shall not be affected thereby. Upon such occurrence, and upon the request of either party, the parties agree to meet and confer regarding the affected provision.

### V.B.    AMENDMENT OR MODIFICATION.

224.    This Agreement may be amended or modified, but only in writing, upon the mutual consent of the parties.

225.    The City has the right to initiate negotiations on holiday pay for fiscal year 2007-2008 by providing written notice to the Association by not later than March 1, 2007, of its intent to do so. If the City provides that notice, the Association then has the right to initiate negotiations for an attendance incentive/sick pay cashout program, by providing written notice to the City by not later than March 30, 2007. Negotiations will be subject to Charter Section A8.590-5.

### V.C.    ZIPPER CLAUSE.

226.    The parties agree that the current Memorandum of Understanding shall continue in full force and effect for its stated term, and that any successor Departmental Memorandum of Understanding negotiated during the term of this Agreement will be negotiated as provided in Section A8.590-5 of the Charter.

227.    Except as may be amended through the procedure provided in Article V.B. above, this Agreement sets forth the full and entire understanding of the parties regarding the matters herein.

### V.D.    DURATION OF AGREEMENT.

228.    This Agreement shall be effective July 1, 2005, and shall remain in full force and effect through June 30, 2009.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on this _____

day of _____, 2006.

**FOR THE ASSOCIATION**                    **FOR THE CITY AND COUNTY**


_____           _____
DAVID WONG                                MICKI CALLAHAN
President                                 Assistant Director, Employee Relations
San Francisco Deputy Sheriffs' Association


_____           _____
DAVID H. SWIM                             PHILIP A. GINSBURG
D.P.A., Labor Consultant                  Director, Department of Human Resources
Mastagni, Holstedt & Chiurazzi

APPROVED AS TO FORM:
DENNIS J. HERRERA, ESQ.
CITY ATTORNEY


_____
ELIZABETH SALVESON
Chief Labor Attorney


COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

42

*APPENDIX A*

# APPENDIX A

## SHERIFF'S DEPARTMENT POLICY

### VIII. TRAINING COMMITTEE

The Sheriff has sanctioned, recognized and agreed to a joint Department/DSA Training Committee.

The joint Training Committee shall consist of two representatives designated by the DSA and two or more persons designated by the Sheriff.

The primary purpose of the Training Committee is to assist in identifying specific training needs and suggesting solutions to meet those needs.

### IX.    ENTRY AND PROMOTIONAL QUALIFICATIONS

The Sheriff's Department and the Deputy Sheriff's Association (DSA) shall meet and confer on the Department's recommendations to the Civil Service Commission regarding recommended minimum qualifications for Classes 8304, Deputy Sheriff; 8306, Senior Deputy; 8308, Sergeant; 8310, Lieutenant; 8312 Captain.

It shall be the responsibility of the D.S.A. to initiate a meet and confer session by notification in writing to the Undersheriff on a readiness to proceed and a proposed date and time for the meeting.   The Sheriff's Department agrees to promptly notify the D.S.A. when it begins discussions with the Civil Service Commission on examination eligibility for employees governed by this Contract.

### X.    DISCIPLINE

A.    No permanent, non-probationary employee shall be disciplined, or subject to punitive action, except for just cause as set forth in the Charter, Civil Service Rules and Regulations, and Rules and Regulations of the Sheriff's Department incorporated herein by reference, and unless afforded proper due process.

B.    No discipline or punitive action may be imposed on a member of the bargaining unit by a member of the bargaining unit below the rank of Chief Deputy.

C.    The Department agrees that, if it intends to discipline or take punitive action against an employee,

*APPENDIX A*

the Department will notify the employee in writing as speedily as proper investigation will permit or within ten (10) days after completion of investigation or date of knowledge (whichever occurs later) of the occurrence of the intent to impose by a supervisor, discipline or punitive action. A copy of the notice will be sent to the D.S.A.

D.   The Administrative Appeals Board shall consist of three (3) members. One member shall be selected by the Sheriff and shall serve at the Sheriff's pleasure. One member shall be selected by the Executive Board of the Union and shall serve at its pleasure. One member shall be selected by mutual agreement by a representative of the Sheriff and a representative of the Executive Board of the Union and serve for a period of one year, or until a resignation is tendered to both the Sheriff and the Executive Board of the Union, or until incapacitated and/or is unable to perform the duties of a member of the Administrative Appeals Board, at which time, a new selection will be made by the same method.

E.   Should the Sheriff's representative and the Executive Board's representative be unable to mutually agree upon the selection of the third Board member, the third Board member shall be selected from a (odd-numbered) list of neutrals provided by the State Mediation and Conciliation Service, or by mutual agreement from some other source. The method of selection shall be that each representative shall alternate in striking a name from the list. The last name remaining shall be the third member selection. The choice of which representative shall strike first shall be determined by a coin flip.

F.   The fee for the third member shall be shared equally by the Department and the Union. The Sheriff's and Union appointees, if members of the Department, shall be compensated by the Sheriff's Department at their regular pay rates and released from duty. Cost incurred by the presence of a court reporter, as well as preparation costs of any transcript of the proceedings, shall be equally shared by the Sheriff's Department and the Union.

G.   The Administrative Appeals Board shall hear all testimony, examine all evidence, documents, exhibits, reports, and witnesses deemed relevant to the matters appealed. Witnesses, if Department employees on duty, shall be on paid release time.

H.   The Administrative Appeals Board shall render its decision by a majority vote. The Chairperson of the Board shall issue a written decision within ten (10) days after the conclusion of any hearing unless that time period is mutually extended by the parties. The Administrative Appeals Board shall not have the power to change, modify, or amend any provision of the contract.

I.   Up to two (2) representatives of the Union and up to two (2) representatives of the Sheriff's Department have the right to be present at Appeal Board hearings. These representatives shall be compensated by the Union and the Sheriff's Department respectively. In addition, the employee appealing discipline or punitive action shall have the right to be present at all times during his/her Appeal Board hearing and shall be compensated by the Sheriff's Department on paid release time.

**COLLECTIVE BARGAINING AGREEMENT**
**SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION**

**JULY 1, 2005 – JUNE 30, 2009**

**A-2**

*APPENDIX A*

In all discipline or punitive action appeals, the Department shall have the burden of proof.

J.      Appeal Board hearings shall be held within sixty (60) calendar days after receipt of demand unless such hearings are continued through mutual consent or request of the Union. A transcript of the proceedings will be made at the request of either party.

K.      All parties shall cooperate in producing witnesses and documents under their control relevant to appeals at the request of the neutral third Appeals Board member. The majority decision of the Appeals Board shall be binding on the parties unless the decision of the Appeals Board is a recommendation of a reduction in discipline.

**Note:**  None of these procedures applies to terminations of probationary or provisional employees.

## XI.    REPRESENTATION

A.      The address of service of any and all notices to the Association shall be:

San Francisco Deputy Sheriffs' Association
444-6th Street
San Francisco, CA 94103
Telephone: (415) 861-8060

B.      The Union and its agent shall receive a roster, at the Union's request, showing all unit employees by name, rank, work location, shift, employees on leave (including type of leave and expected return date), and any and all changes thereto.

C.      Any authorized representative of the Union shall have the right to contact individual unit employees in county facilities during, before, or after business hours on matters within the scope of representation without disrupting operations.

*APPENDIX B*

# APPENDIX B

## MINIMUM STAFFING LEVELS FOR COUNTY JAILS AND COURTS

### CUSTODY DIVISION

**8 Hour Shift**

| Time | 2300 - 0700 | | 2300 - 0700 Sat., Sun. & Legal Holidays | | 0700 - 1500 | | 0700 - 1500 Sat., Sun. & Legal Holidays | | 1500 - 2300 | | 1500 - 2300 Sat., Sun. & Legal Holidays | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | Sups | Deputies | Sups | Deputies | Sups | Deputies | Sups | Deputies | Sups | Deputies | Sups | Deputies |
| County Jail #1 | 1 | 9 | 1 | 9 | 2 | 16 | 1 | 15 | 1 | 11 | 1 | 11 |
| County Jail #7 | 1 | 8 | 1 | 7 | 2 | 13 | 1 | 14 | 1 | 9 | 1 | 9 |
| County Jail #8 | 1 | 11 | 1 | 11 | 2 | 19 | 1 | 20 | 1 | 14 | 1 | 14 |
| County Jail #9 | 1 | 11 | 1 | 11 | 2 | 13 | 1 | 11 | 1 | 13 | 1 | 13 |
| Classification | 0 | 2 | 0 | 2 | 1 | 7 | 1 | 3 | 0 | 2 | 0 | 2 |
| SFGH 7D/L | 0 | 2 | 0 | 2 | 1 | 5 | 0 | 3 | 0 | 3 | 0 | 3 |

**12 Hour Shift**

| Time | 0700 - 1900 | | 0700 - 1900 Sat., Sun. & Legal Holidays | | 1900 - 0700 | |
|---|---|---|---|---|---|---|
| Location | Sups | Deputies | Sups | Deputies | Sups | Deputies |
| County Jail #2 | 2 | 19 | 1 | 19 | 1 | 13 |
| County Jail #3 | 2 | 23 | 1 | 23 | 1 | 18 |

### PROGRAMS AND DEPARTMENT SERVICES DIVISION

| Time | 0800 - 1700 | |
|---|---|---|
| Location | Sups | Deputies |
| Hall of Justice Courts | 1 | 35 |
| Civic Center Courts | 1 | 19 |
| Youth Guidance Center | 1 | 6 |

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

B-1

*APPENDIX C*

# APPENDIX C

## CIVIL SERVICE COMMISSION LEAVES OF ABSENCE DEFINITIONS

**COLLECTIVE BARGAINING AGREEMENT**
**SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION**

**JULY 1, 2005 – JUNE 30, 2009**

*APPENDIX C*

City and County of San Francisco                    Civil Service Commission

### CIVIL SERVICE COMMISSION JURISDICTION

#### Leaves of Absence Definitions

The following Leaves of Absence Definitions are under the exclusive jurisdiction of the Civil Service Commission and as such are excluded from collective bargaining, grievance or arbitration for employees subject to Charter Sections 8.409 and 8.590. Should there be any conflict between the terms and conditions of a Memorandum of Understanding and these definitions, the definitions of the Civil Service Commission shall be in full force and effect.

#### Definition of Leave of Absence

A Leave of absence is defined as an employee's absence from duty with the authorization of an appointing officer for a specific duration and purpose.

#### Sick Leave - Definition

A Leave due to illness or disability.

#### Sick Leave - Medical Reasons - Definition

A leave due to illness or injury or medical and dental appointments, other than illness or injury arising out of and in the course of City and County employment.

#### Sick Leave - Quarantine - Definition

Leave during a period of quarantine established and declared by the Department of Public Health or other authority.

#### Sick Leave - Bereavement - Definition

Leave due to the death of another person.

#### Sick Leave - Maternity - Definition

Leave due to the employee's pregnancy or convalescent period following child birth.

#### Sick Leave - Illness or Medical Appointment - Definition

Leave due to the illness, injury or medical or dental appointment of a person other than the employee.

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

*APPENDIX C*

City and County of San Francisco                      Civil Service Commission

### Sick Leave Compulsory - Definition

Mandatory sick leave imposed by an appointing officer provided it is determined as a result of a medical evaluation conducted by a physician designated by the Human Resources Director, that the employee is not medically or physically competent, and if allowed to continue in employment will represent an imminent risk to themselves, their co-workers or the public, or if an employee refuses to obtain a physician's certificate after being requested to obtain a medical evaluation.

### Sick Leave With Pay - Definition

Sick leave with compensation for eligible employees.

### Sick Leave With Pay - Battery Leave - Definition

Leave due to bodily injury or illness received in the course of employment and caused by an act of criminal violence.

### Sick Leave Without Pay - Definition

Sick leave granted to employees who are not eligible for sick leave with pay or employees who choose not to use their sick leave pay credits.

### Disability Leave - Definition

Leave due to illness or injury arising out of and in the course of employment and as administered under State Workers' Compensation Laws.

### Military Leave - Definition

Leave for active military duty.

### Leave to Accept Other City and County Position - Definition

Leave to accept exempt, temporary civil service, or provisional appointment in the City and County service.

### Educational Leave - Definition

Leave for the purpose of educational or vocational training.

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

C-3

*APPENDIX C*

City and County of San Francisco                    Civil Service Commission

## Leave for Civilian Service in the National Interest - Definition

Leave to serve with a federal, state, or other public agency or non-profit organization in a program or in a capacity which the Human Resources Director deems to be in the national or general public interest.

## Leave for Employment as an Employee Organization Officer or Representative - Definition

Leave for employment to serve full time as an officer or representative of an employee organization whose membership includes City employees, or to attend a convention or other type of business meeting of an employee organization as an officer or delegate of the employee organization.

## Family Care Leave - Definition

Leave for assisting or nurturing of family members.

## Definition of Family

A unit of independent and interacting persons, related together over time by strong social and emotional bonds and/or by ties of marriage, birth and adoption, whose central purpose is to create, maintaine, and promote the social, mental, physical and emotional development and well being of each of its members.

## Witness or Jury Duty Leave - Definition

Leave to serve in a judicial proceeding in a local, Sate or Federal Court.

    a.   as a witness on behalf of the City and County

    b.   to serve as a juror

## Holiday Leave - Definition

Paid leave for special occasions provided either by ordinance of the Board of Supervisors or in a collective bargaining agreement.

## Vacation Leave - Definition

Paid leave of specified duration as provided in the Charter and by ordinance of the Board of Supervisors or in a collective bargaining agreement.

**COLLECTIVE BARGAINING AGREEMENT**
**SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION**

**JULY 1, 2005 – JUNE 30, 2009**

*APPENDIX C*

City and County of San Francisco                    Civil Service Commission

### Involuntary Leave of Absence - Definition

Leave established and regulated under the layoff provision of Civil Service Rules.

### Religious Leave - Definition

Leave when an employ's personal religious beliefs require that the employee abstain from work during certain periods of the work day or work week.

### Personal Leave - Definition

Leave for reasons other than those covered under the Rules of the Civil Service Commission.

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

C-5

*APPENDIX D*

# Appendix D

## Leaves of Absence
### (Formerly Civil Service Commission Rule 20)

**Section I:**      **Leaves of Absence - General Requirements**

**Section II:**     **Sick Leave - General Provisions**

**Section III:**    **Sick Leave With Pay**

**Section IV:**     **Sick Leave Without Pay**

**Section V:**      **Compulsory Sick Leave**

**Section VI:**     **Disability Leave**
             **Sick Leave to Supplement State Disability**

**Section VII:**    **Military, War Effort and Sea Duty Leaves**

**Section VIII:**   **Other Leaves of Absence**

*APPENDIX D*

# Leaves of Absence
### (Formerly Civil Service Commission Rule 20)

## Section I:  General Requirements

### Leaves of Absence - General Requirements

Requests for leave shall be subject to the approval of the appointing officer or designee. The decision of the appointing officer or designee is final unless provision for appeal is specifically provided herein.  Such requests for appeal shall be processed in accordance with the procedure provided herein.  Requests for military, maternity, or witness or jury duty leave shall be granted as provided herein.

Except for vacation leave, witness or jury duty leave, compulsory sick leave, disability leave or unpaid administrative leave, an employee requesting a leave for more than five working days shall submit such request to the appointing officer or designee on the form prescribed by the Human Resources Director.  Requests for sick leave in excess of five continuous working days shall be certified by a licensed medical doctor, doctor of dental surgery, doctor of podiatric medicine, licensed clinical psychologist, Christian Science Practitioner or licensed doctor of chiropractic.  Verification of sick leave with pay for less than five working days (seven calendar days in the case of part-time employees) as provided herein shall be required on an individual basis only and shall be based upon an evaluation of the individual attendance record of an employee.

Except as otherwise provided, leave granted for the period stated on the prescribed form may be extended or abridged only with the approval of the appointing officer or designee. An employee who does not return to work on the approved date shall be deemed as away without official leave and shall be subject to automatic resignation.

Except when an employee requesting sick leave has accumulated unused sick leave with pay credits and except for employees eligible for military leave with pay, witness or jury duty leave, disability leave or leave due to battery as provided herein, or for authorized holiday or vacation, leaves shall be without pay.

An authorized leave granted under these provisions shall not be considered as a break in the continuous service of an employee.

## Section II:  Sick Leave - General Provisions

### Eligibility for Sick Leave

Subject to these provisions, covered employees who are absent from their duties because of illness or disability are eligible for sick leave.

D-2

**COLLECTIVE BARGAINING AGREEMENT**
**SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION**

**JULY 1, 2005 – JUNE 30, 2009**

**D-2**

APPENDIX D

### Verification of Sick Leave

The appointing officer or designee to whom application for sick leave is made may make such independent investigation as to the necessity for sick leave as is deemed proper and may require certification for any period of sick leave, provided that the employee has been previously notified in writing that such certification for absence of less than five working days shall be required.

The Human Resources Director may at any time make such independent investigation as may be deemed proper regarding the illness of any person on sick leave.

### Retirement Automatically Terminates Sick Leave

Sick leave shall automatically terminate on the effective date of an employee's retirement.

### Abridgment of Sick Leave

Sick leaves granted in excess of five working days may be abridged if the employee presents to the appointing officer or designee medical evidence of capability to resume all the duties of the position.

### Types of Sick Leave

Sick Leave - Medical Reasons

Sick Leave - Quarantine

Bereavement

Absence because of the death of the employee's spouse or domestic partner, parents, step parents, grandparents, parents-in-law or parents of a domestic partner, sibling, child, step child, adopted child, a child for whom the employee has parenting responsibilities, aunt or uncle, legal guardian, or any person who is permanently residing in the household of the employee. Such leave shall not exceed three working days and shall be taken within 30 calendar days after the date of death; however, two additional working days shall be granted in conjunction with the bereavement leave if travel outside the State of California is required as a result of the death.

For absence because of the death of any other person to whom the employee may be reasonably deemed to owe respect, leave shall be for not more than one working day; however, two additional working days shall be granted if travel outside the State of California is required as a result of the person's death.

Sick Leave - Maternity

Maternity leave shall not exceed six months provided that such leave may be extended for permanent employees if a physician certifies that a longer convalescence period is

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

D-3

*APPENDIX D*

required.  Such extensions shall be subject to the provisions of this section governing sick leave without pay.

### Sick Leave - Illness or Medical Appointment of Child

Absence because of the illness, injury, or medical or dental appointment of a biological or adoptive child, or child for whom the employee has parenting or child rearing responsibilities.

### Sick Leave - Compulsory

Leave imposed by an appointing officer due to an employee's medical inability or incapacity to perform all the duties of the position as provided elsewhere in this section.

## Section III:  Sick Leave with Pay

### Sick Leave with Pay Eligibility

Sick leave with pay may be granted to employees who have earned sick leave with pay credits and who have served a total of six continuous months of regularly scheduled paid service except that supplemental disability credits may be used to supplement disability indemnity payments as provided elsewhere in this section regardless of length of service and except that an authorized leave of absence with or without pay granted under this section shall not be considered as a break in the continuous service of an employee.

A break in service of more than six continuous months by any employee other than an employee designated as a "holdover" will cause prior accumulated sick leave with pay credits to be canceled and eligibility for sick leave with pay must be re-established.

Sick leave with pay credits will continue to accrue at the normal rate while an employee is on voluntary unpaid time off in accordance with this section, for a maximum of up to 20 days per fiscal year for voluntary unpaid time off.

### Sick Leave with Pay - Maximum Accumulation of Credits

Sick leave with pay credits shall be cumulative but the accumulated balance of unused sick leave with pay credits shall not exceed the equivalent of six months, the hourly equivalent of 130 working days based on the regular daily work schedule as defined, provided that in no case may the total accumulated unused sick leave with pay credit balance exceed 1040 hours for any employee. Maximum accumulated sick leave with pay credits shall be reduced proportionately for employees entering a class or position where the regular work schedule is less than the class exiting if such employees have accumulated unused sick leave with pay credits in excess of the maximum allowable for the new class or position.  Such employees shall have all such credits restored upon return to a class or position with an increased regular work schedule.

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

**D-4**

*APPENDIX D*

### Sick Leave with Pay - Restrictions

An appointing officer or designee may require proof of incapacitation before granting sick leave with pay for any period of time and may withhold pay for failure to submit such proof provided that the employee had been previously notified in writing that such proof would be required for absences of less than five working days.

The rate of earning and accumulating sick leave with pay credits and authorization for its use as provided herein shall in no way inhibit or restrict the right of an appointing officer to establish standards of attendance.

### Prohibition Against Employment While on Sick Leave with Pay

Employees are prohibited from working in any other employment while on sick leave with pay unless, after considering the medical reason for the sick leave with pay, the appointing officer with the approval of the Human Resources Director, grants permission for the employee to engage in a secondary employment subject to the provisions of the Civil Service Commission Rules governing such employment.

Violators of this section are subject to disciplinary action as provided in the Charter.

### Calculation of Sick Leave with Pay Credits

Sick leave with pay credits shall be earned at the rate of .05 hours for each hour of regularly scheduled paid service excluding overtime exceeding 40 hours per week and holiday pay, except that an employee on disability leave shall earn sick leave with pay credits at the normal rate.

### Disbursement of Sick Leave with Pay Credits

Sick leave with pay credits shall be used and deducted at the minimum rate in units of one hour for those employees whose credits are calculated in hours.

### Conversion of Sick Leave with Pay Credits from Days to Hours

Sick leave with pay credit balances shall be converted from days to hours based on the equivalent number of hours in such employee's sick leave with pay credit balances.

### Employees Injured by Battery

Sick leave with pay under this section shall be known as "leave due to battery" and shall be subject to approval by the Human Resources Director. The Human Resources Director shall make such investigation as is deemed appropriate and may include medical examinations by a physician(s) designated by the Human Resources Director.

Authorized sick leave under this section shall not be charged against earned sick leave with pay credits.

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

**D-5**

*APPENDIX D*

<u>Denial of Sick Leave with Pay</u>

- Denial of sick leave with pay to an appointee who is eligible and qualified for such leave is subject to the grievance procedure.

<u>Reimbursement of Vested and Unused Accumulated Sick Leave with Pay Credits Balance</u>

An employee who had accumulated unused sick leave with pay credits and who had completed the service requirement on or before December 5, 1978, shall upon the effective date of retirement for service or disability, or upon the date of death, or upon the date of separation caused by industrial accident, be reimbursed for the accumulated unused sick leave with pay credit balance which had been earned on or before December 5, 1978, and not subsequently used ("vested and unused accumulated sick leave with pay credits") in accordance with the following schedule of service requirements and allowances.

| Schedule of Service Requirements and Allowances for Reimbursement of Vested and Unused Accumulated Sick Leave with Pay Credit Balance at the Time of Retirement, Separation Because of Accident or Death | |
|---|---|
| **Service Requirement** | **Amount of Cash Reimbursement** |
| 15 or more years of service | 100% |
| More than 5 continuous years but less than 15 continuous years of service | 50% |
| Up to and including 5 continuous years of service | 33.3% |

Reimbursement for the vested and unused accumulated sick leave with pay credit balance shall be further subject to the following:

1) The Human Resources Director shall administer the provisions of this section.

2) Deduction shall be made from the unused accumulated sick leave with pay credit balance which existed on December 5, 1978, in an amount proportional to any credits used of that balance. Reimbursement shall be made only for the adjusted amount with all credits from the December 5, 1978, balance subsequently used being deducted.

3) Reimbursement for the vested and unused accumulated sick leave with pay credit balance shall be payable at the time of retirement, separation caused by

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

**D-6**

*APPENDIX D*

industrial accident or death, or at a later date when so selected by the employee, but within one year of such retirement, separation or death.

4) Reimbursement is to be computed at the base rate of pay of an employee's permanent class, at the base rate of pay of the class of a temporary or provisional employee with no permanent status, or at the base rate of pay in a temporary or provisional appointment of an employee with permanent status in another class who has held such temporary or provisional appointment continuously for one or more years at the time of separation.

5) No reimbursement shall be made for unused sick leave with pay credits earned on or after December 6, 1978.

6) The enactment of this section is not intended to constitute additional compensation, nor be a part of the rate of pay of the employee, but is reimbursement for the vested and unused accumulated sick leave with pay credit balance to which an employee would have been entitled if the employee had not retired, separated due to industrial injury or died.

## Section IV:  Sick Leave without Pay

### Sick Leave without Pay – Eligibility

Subject to the provisions of this section, sick leave without pay may be granted to employees who are not eligible for sick leave with pay or, subject to the approval of the appointing officer or designee, employees may choose not to use their sick leave with pay credits.

### Sick Leave without Pay – Temporary and Provisional Employees

Sick leave without pay may be granted to temporary or provisional employees. Such leave shall be renewed monthly and shall not be extended beyond three calendar months except for sick leave – maternity.

### Sick Leave without Pay – Permanent Employees

Sick leave without pay may be approved for permanent employees for the period of the illness provided that requests for prolonged leave shall be renewed every three months and provided further that such leave shall not be extended beyond a period of one continuous year.

### Prohibition Against Employment While on Sick Leave Without Pay

Employees are prohibited from working in any other employment when on sick leave without pay unless, after considering the medical reason for the sick leave without pay, the

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

*APPENDIX D*

appointing officer with the approval of the Human Resources Director, grants permission for the employee to engage in outside employment.

Violators of this section are subject to disciplinary action.

## Section V:  Compulsory Sick Leave

**Compulsory Sick Leave**

An appointing officer or designee who has reason to believe that an employee is not medically or physically competent to perform assigned duties, and if allowed to continue in employment or return from leave may represent a risk to co-workers, the public and the employee, may require the employee to present a medical report from a physician designated by the Human Resources Director certifying the employee's medical or physical competency to perform the required duties.

If the employee refuses to obtain such physician's certificate or if as a result of a medical evaluation, the employee is found not to be medically or physically competent, the appointing officer or designee may place the employee on compulsory sick leave and shall immediately report such action to the Human Resources Director.

An employee shall remain on compulsory sick leave until such time as the employee is found to be competent to return to duty by a physician designated by the Human Resources Director, but such leave shall not exceed the maximum period of sick leave as provided herein.

An employee placed on sick leave under the provisions of this section may appeal as provided under the appeal provisions of the Medical Examination Civil Service Commission Rule.

An employee placed on compulsory sick leave is ineligible for employment with the City and County and shall be placed under waiver on all lists on which the employee's name appears and shall otherwise be unemployable.

## Section VI:  Disability Leave

**Use of Sick Leave with Pay Credits to Supplement State Disability Insurance**

Sick leave with pay credits shall be used to supplement State Disability Insurance (SDI) at the minimum rate in units of one hour.

SDI payments to an employee who qualifies and who has accumulated and is eligible to use sick leave with pay credits shall be supplemented with sick leave with pay credits so that the total of SDI and sick leave with pay calculated in units of one-hour provides up to, but

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

**D-8**

APPENDIX D

does not exceed, the regular gross salary the employee would have received for the normal work schedule excluding overtime.

An employee who wishes not to supplement, or who wishes to supplement with compensatory time or vacation, must submit a written request on a form prescribed by the Human Resources Director to the appointing officer or designee within seven calendar days following the first date of absence.

Employees who are supplementing SDI earn sick leave with pay credits at the normal rate only for those hours of sick leave with pay credits used.

### Section VII: Military, War Effort and Sea Duty Leaves

#### Military Leave

Military leave is governed by the provisions of applicable Federal and State laws, by Charter provision and by Civil Service Commission Rules.

#### Military Leave - Time of War

Leaves of absence shall be granted to covered employees for service in the armed forces of the United States or the State of California or for service on ships operated by or for the United States government in time of war and for a period not to exceed three months after the conclusion of such service, but not later than one year after the cessation of hostilities, except in case of disability incurred while in active service with the armed forces or the merchant marines when such disability shall extend beyond such period.

#### Military Leave - Time of Peace

Whenever any covered employee shall, by order of the government of the United States or by lawful order of any of its departments or officers, or by lawful order of the State of California, or any of its departments or officers, be directed in time of peace to report and serve in the armed forces of the United States, or in the armed forces of the State of California, said covered employee shall be entitled to a leave of absence from the employee's position during the time of such service and for a period not to exceed three months after the expiration thereof.

#### Military Leave - Permanent Appointees

Any covered employee on military leave, who prior to such leave has been appointed to a permanent position in the City and County service, shall be entitled to resume such position at the expiration of the leave, and in determining and fixing rights, seniority, salary and otherwise which have accrued and shall inure to the benefit of such covered employee, the term of military leave shall be considered and accounted as part of the employee's service to the City and County.

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

**D-9**

*APPENDIX D*

### Military Leave - Proof of Duty

Covered employees requesting military leave shall file with the Human Resources Director a copy of the orders necessitating such service prior to the effective date of the leave of absence and upon return from such leave shall submit a copy of the discharge or release.

### Military Leave - Salary While on Temporary Leave

Employees who have been employed by the City and County or any other public agency or have been on military duty for a period of not less than one year continuously prior to the date upon which temporary military leave not exceeding 180 calendar days begins shall, as required by the State of California Military and Veterans' Code (Section 395), receive their regular salary or compensation for a period not to exceed 30 calendar days of such military leave in any fiscal year or more than 30 calendar days during any period of continuous military leave.

### War Effort Leave

The Board of Supervisors may provide by ordinance that leaves of absence shall be granted to covered employees during time of war for service directly connected with the prosecution of the war or national defense or preparedness.

### Leave for Sea Duty as Licensed Officers

In time of war or while any act authorizing compulsory military service or training is in effect, the Board of Supervisors may provide by ordinance that leaves of absence shall be granted to covered employees for sea duty as licensed officers aboard ships operated by or for the United States government. This section may be amended to implement such ordinance.

## Section VIII: Other Leaves of Absence

### Leave to Accept Other City and County Position

Leave by an employee who has completed the probationary period to accept exempt or temporary appointment in the City and County service may be approved for the duration of such appointment.

Denial of such leave by the appointing officer is appealable as provided elsewhere in this section.

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

*APPENDIX D*

### Educational Leave

Educational leave may be approved for permanent appointees for a period of up to one year. Requests for educational leave of longer than one year must be renewed each year.

Denial of educational leave is appealable as provided elsewhere in this section.

An employee on educational leave shall not accept other employment without approval of the appointing officer and the Human Resources Director, except for employment in vacant positions with the City and County during school vacations.

As soon as records are available, the employee shall periodically present to the appointing officer a record of completed educational work. These records shall be maintained in such a manner as to be readily available for audit by Department of Human Resources staff. Failure to submit an acceptable record of completed educational work shall subject the employee to disciplinary action.

### Leave for Civilian Service in the National Interest

Such leave may be approved for permanent appointees for a period of up to one year. Requests for such leave of longer than one year must be renewed each year.

Denial of such leave is appealable as provided elsewhere in this section.

### Leave for Employment as an Employee Organization Officer or Representative

Leave for permanent appointees may be approved for the duration of such service.

Denial of such leave is appealable as provided herein.

### Family Care Leave

Permanent employees who have one or more years of continuous service in any status may be granted up to one year of unpaid family care leave for the following reasons:

1) The birth of a biological child of the employee;

2) The assumption by the employee of parenting or child rearing responsibilities. Family care leave does not apply to an employee who temporarily cares for a child for compensation, such as a paid child care worker;

3) The serious illness or health condition of a family member of the employee, the employee's spouse or domestic partner, a parent of the employee or the employee's spouse or domestic partner, the biological or adoptive child

D-11

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

*APPENDIX D*

of the employee, or a child for whom the employee has parenting or child rearing responsibilities; or

4)   The mental or physical impairment of a family member of the employee, the employee's spouse or domestic partner, a parent of the employee or the employee's spouse or domestic partner, the biological or adoptive child of the employee, or a child for whom the employee has parenting or child rearing responsibilities, which impairment renders that person incapable of self-care.

Family care leave is unpaid leave. Such leave may be granted in addition to accumulated compensatory time off, vacation time, floating holiday time or sick leave as specified under Sick Leave - Illness or Medical Appointment of Child.

Denial of family care leave is appealable as provided elsewhere in this section.

### Witness or Jury Duty Leave

An employee who is summoned as a witness on behalf of the City and County or juror for a judicial proceeding shall be entitled to leave with pay less the amount of juror or witness fee paid for the period required for such service. An employee who is summoned to serve as a witness in cases which involve outside employment or personal business affairs shall be placed on leave without pay unless vacation leave or compensatory time is requested and granted.

Paid witness or jury duty leave shall be only from an employee's scheduled duty time and shall not include hours outside of scheduled hours of work or on days off.

Such employees shall notify the appointing officer immediately upon receiving notice of jury duty.

An employee who takes vacation leave while on witness or jury duty leave shall receive regular salary.

### Vacation Leave

Vacation leave shall be as provided in the Charter and by ordinance of the Board of Supervisors.

### Involuntary Leave of Absence

Whenever it becomes necessary to effect a reduction in force due to lack of work or lack of funds which shall result in the displacement of a permanent or probationary appointee from the City and County service, an appointing officer, notwithstanding other provisions of Civil Service Commission Rules governing leaves of absence, shall place such employees on a leave of absence of an involuntary nature unless the employee elects to be laid off.

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

**D-12**

*APPENDIX D*

Such reductions in force shall be effected by the provisions of the Civil Service Commission Rules governing seniority and order of layoff.

Leaves of absence imposed under the provisions of this section shall expire upon the return to duty of the holdover, upon the expiration of holdover status, or upon written request of the employee to elect to be laid off while on involuntary leave.

## Religious Leave

Religious leave shall be without pay unless the employee elects to use accumulated compensatory time off, vacation time, or floating holiday time.

Denial of religious leave is appealable as provided elsewhere in this section.

## Personal Leave

Personal leave for permanent employees may be approved for a period of up to 12 months within any two-year period. Personal leave for temporary or provisional employees may be approved only if replacement of the employee is not required and for a maximum of one month.

On the request of an appointing officer, the Human Resources Director, may for reasons deemed to be in the best interest of the service approve extension of personal leave for permanent employees beyond a 12 month period.

D-13

COLLECTIVE BARGAINING AGREEMENT
SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION

JULY 1, 2005 – JUNE 30, 2009

**D-13**

*APPENDIX E*

# APPENDIX E

## ACCELERATED STEPS

Effective July 1, 2006, the Step Structure for Classes 8302 and 8304 shall be as follows:

| Class | Prior to 7/1/06 | 7/1/06 Forward | Annual Base Salary (6/30/05) | Length of Time at this Step (years) Prior to 7/1/06 | 7/1/06 Forward |
|-------|-----------------|----------------|------------------------------|-----------------------------------------------------|----------------|
| 8302  | 1               | 1              | $42,874                      | 1.0                                                 | 1.0            |
| 8304  | 1               | 1              | $52,130                      | 0.5                                                 | 0.5            |
| 8304  | 2               | 2              | $54,782                      | 1.0                                                 | 0.5            |
|       |                 | 3              | $56,134                      |                                                     | 0.5            |
| 8304  | 3               | 4              | $57,486                      | 1.0                                                 | 0.5            |
|       |                 | 5              | $58,929                      |                                                     | 0.5            |
| 8304  | 4               | 6              | $60,372                      | 1.0                                                 | 0.5            |
|       |                 | 7              | $61,867                      |                                                     | 0.5            |
| 8304  | 5               | 8              | $63,362                      | 1.0                                                 | 0.5            |
|       |                 | 9              | $64,948                      |                                                     | 0.5            |
| 8304  | 6               | 10             | $66,534                      |                                                     |                |

- Current Steps 2 through 6 shall be split into Steps 2 through 10.
- The new step increments will be approximately 2.5% between each step.
- Employees shall advance through these new steps based upon six months of service.
- Time served prior to July 1, 2006 shall count toward service for these new steps, but there shall be no retroactive compensation for time served prior to July 1, 2006.

# EXHIBIT E

# Civil Service Commission

### Rule 117 Probationary Period

Applicability: Rule 117 shall apply to employees in all classes who started work in a permanent civil service status on or after March 16, 1998; except the Uniformed Ranks of the Police and Fire Departments and MTA Service-Critical classes.

## Sec. 117.1 Requirement for a Probationary Period

## Sec. 117.2 Definition of Probationary Period

## Sec. 117.3 Appointments Subject to the Probationary Period

## Sec. 117.4 Extension of the Probationary Period to Obtain License or Certificate

## Sec. 117.5 Credit for Probationary Period

## Sec. 117.6 Successive Probationary Appointment

## Sec. 117.7 Report of Completion of Probationary Period

## Sec. 117.8 Voluntary Resumption of the Probationary Period

## Sec. 117.9 Release of Employee During the Probationary Period

### Rule 117

### Probationary Period

Applicability: Rule 117 shall apply to employees in all classes who started work in a permanent civil service status on or after March 16, 1998; except the Uniformed Ranks of the Police and Fire Departments and MTA Service-Critical classes.

## Sec. 117.1 Requirement for a Probationary Period

**117.1.1** Any person appointed to a permanent civil service position shall serve a probationary period.

**117.1.2** Nothing in these provisions is intended to infringe upon or restrict the authority of an appointing officer in releasing a probationary employee as provided in these Rules.

## Sec. 117.2 Definition of Probationary Period

The probationary period is defined as:

**117.2.1** The final and most important phase of the selection process and is to be used for evaluating the performance of an employee in the position to which appointed; and

**117.2.2** A period of regularly scheduled hours worked, excluding any time off for leave, vacation, other types of time off (not including legal holidays), or overtime.

## Sec. 117.3 Appointments Subject to the Probationary Period

A probationary period is required for all of the following types of permanent appointments:

**117.3.1** Appointment from an eligible list;

**117.3.2** Appointment following layoff or involuntary leave when the appointment is to a class and/or department other than the one from which laid off, or when a probationary period has not been previously served in the class and department;

**117.3.3** Appointments by transfer to a position in the same class in another department, status transfer under the status rights of Americans With Disabilities Act provisions of these Rules, or technological transfer;

**117.3.4** Reappointment of resignees;

## Sec. 117.3 Appointments Subject to the Probationary Period (cont.)

**117.3.5** Reinstatement at the request of the employee to a permanent position in a former class in a department other than a department in which the probationary period had been completed in this former class;

**117.3.6** Advancement from a part-time position to a full-time position except if the employee had previously served a probationary period in a full-time position in the same class in the same department;

**117.3.7** Reversion by a promotive probationary employee to a position in a former class in which the probationary period has been completed, except if the employee has previously served a probationary period in the same department in that class.

## Sec. 117.4 Extension of the Probationary Period to Obtain License or Certificate

An appointing officer, with the approval of the Human Resources Director, may extend the probationary period of a probationary appointee for up to a maximum of twelve (12) calendar months in order to allow the employee time in which to obtain required licenses and/or certificates.

## Sec. 117.5 Credit for Probationary Period

**117.5.1** Time served while on leave of absence to serve under exempt, temporary civil service, or provisional appointment under the same appointing officer in another class during the probationary period may be counted toward the completion of the probationary period for the class from which leave was granted. Appointing officers shall notify the Department of Human Resources in writing of such appointments.

**117.5.2** An appointing officer may credit as probationary time served, an employee's prior full-time service in a permanent position in the same class, excluding probationary time. Such credits shall not exceed one-half (1/2) of the required length of the probationary period.

**117.5.3** An appointing officer may credit periods of limited-term transfer toward the completion of the probationary period as provided in the transfer provisions of these Rules.

## Sec. 117.6 Successive Probationary Appointment

With the approval of the Human Resources Director, an appointing officer, with the concurrence of the employee, may renew the employee's probationary period. The Human Resources Director shall establish the administrative process and procedures for accomplishing such successive probationary appointments.

## Sec. 117.7 Report of Completion of Probationary Period

The appointing officer shall notify the appointee and the Department of Human Resources on the form, and in the manner prescribed by the Human Resources Director, upon completion of an appointee's probationary period.

## Sec. 117.8 Voluntary Resumption of the Probationary Period

**117.8.1** When agreed upon by an appointing officer and an employee, and with the approval of the Human Resources Director, a permanent employee past the probationary period may voluntarily agree to serve a new probationary period in lieu of the department dismissing the employee.

**117.8.2** The duration of the resumed probationary period shall not exceed six (6) calendar months.

**117.8.3** During this resumed probationary period, should the employee fail to abide by the terms and conditions of the probationary period set by the department, subsequent action may be taken.

**117.8.4** This resumed probationary period is subject to all terms and conditions of a probationary period as provided elsewhere in these Rules.

## Sec. 117.9 Release of Employee During the Probationary Period

### 117.9.1 Authority and procedures for release of probationary employee.

**1)** An employee may be released by the appointing officer at any time during the probationary period upon written notice to the employee and the Human Resources Director.

**2)** Consistent with these Rules and subject to the approval of the Commission, the Human Resources Director shall establish and promulgate procedures for administering and processing the release of probationary employees.

## Sec. 117.9 Release of Employee During the Probationary Period (cont.)

### 117.9.2 Release of probationary employee for disciplinary reasons.

**1)** If the release of a probationary employee is for disciplinary reasons, a determination of the employee's future employability shall be as provided in this section. .

**2)** The decision on future employability reached through the procedures established under these Rules shall be final and shall not be subject to reconsideration.

**3)** The Executive Officer shall establish and promulgate the administrative process and procedures including the time frame for filing requests for future employability hearings.

### 117.9.3 Reversion to Former Class - Released Promotive Probationary Employee.

**1)** Except if the release is for disciplinary reasons and subject to approval of the Human Resources Director, an employee released during a promotive probationary period shall revert to a position in the class from which promoted. If necessary, displacements in the former class shall occur.

**2)** Except for reasons beyond the control of the Commission or the Human Resources Director, reversion of a released promotive probationary employee shall be accomplished not later than thirty (30) days from the effective date of the employee's release.

**3)** The Human Resources Director shall establish and promulgate the administrative process and

Case 3:07-cv-05794 Document 9    Filed 01/28/2008    Page 117 of 121

procedures for the reversion of a released promotive probationary employee.

# Civil Service Commission

## Rule 117 Probationary Period

Applicability: Rule 117 shall apply to employees in all classes who started work in a permanent civil service status on or after March 16, 1998; except the Uniformed Ranks of the Police and Fire Departments and MTA Service-Critical classes.

### Sec. 117.1 Requirement for a Probationary Period

### Sec. 117.2 Definition of Probationary Period

### Sec. 117.3 Appointments Subject to the Probationary Period

### Sec. 117.4 Extension of the Probationary Period to Obtain License or Certificate

### Sec. 117.5 Credit for Probationary Period

### Sec. 117.6 Successive Probationary Appointment

### Sec. 117.7 Report of Completion of Probationary Period

### Sec. 117.8 Voluntary Resumption of the Probationary Period

### Sec. 117.9 Release of Employee During the Probationary Period

### Rule 117

### Probationary Period

Applicability: Rule 117 shall apply to employees in all classes who started work in a permanent civil service status on or after March 16, 1998; except the Uniformed Ranks of the Police and Fire Departments and MTA Service-Critical classes.

### Sec. 117.1 Requirement for a Probationary Period

**117.1.1** Any person appointed to a permanent civil service position shall serve a probationary period.

**117.1.2** Nothing in these provisions is intended to infringe upon or restrict the authority of an appointing officer in releasing a probationary employee as provided in these Rules.

### Sec. 117.2 Definition of Probationary Period

The probationary period is defined as:

**117.2.1** The final and most important phase of the selection process and is to be used for evaluating the performance of an employee in the position to which appointed; and

**117.2.2** A period of regularly scheduled hours worked, excluding any time off for leave, vacation, other types of time off (not including legal holidays), or overtime.

### Sec. 117.3 Appointments Subject to the Probationary Period

A probationary period is required for all of the following types of permanent appointments:

**117.3.1** Appointment from an eligible list;

**117.3.2** Appointment following layoff or involuntary leave when the appointment is to a class and/or department other than the one from which laid off, or when a probationary period has not been previously served in the class and department;

**117.3.3** Appointments by transfer to a position in the same class in another department, status transfer under the status rights of Americans With Disabilities Act provisions of these Rules, or technological transfer;

**117.3.4** Reappointment of resignees;

## Sec. 117.3 Appointments Subject to the Probationary Period (cont.)

**117.3.5** Reinstatement at the request of the employee to a permanent position in a former class in a department other than a department in which the probationary period had been completed in this former class;

**117.3.6** Advancement from a part-time position to a full-time position except if the employee had previously served a probationary period in a full-time position in the same class in the same department;

**117.3.7** Reversion by a promotive probationary employee to a position in a former class in which the probationary period has been completed, except if the employee has previously served a probationary period in the same department in that class.

## Sec. 117.4 Extension of the Probationary Period to Obtain License or Certificate

An appointing officer, with the approval of the Human Resources Director, may extend the probationary period of a probationary appointee for up to a maximum of twelve (12) calendar months in order to allow the employee time in which to obtain required licenses and/or certificates.

## Sec. 117.5 Credit for Probationary Period

**117.5.1** Time served while on leave of absence to serve under exempt, temporary civil service, or provisional appointment under the same appointing officer in another class during the probationary period may be counted toward the completion of the probationary period for the class from which leave was granted. Appointing officers shall notify the Department of Human Resources in writing of such appointments.

**117.5.2** An appointing officer may credit as probationary time served, an employee's prior full-time service in a permanent position in the same class, excluding probationary time. Such credits shall not exceed one-half (1/2) of the required length of the probationary period.

**117.5.3** An appointing officer may credit periods of limited-term transfer toward the completion of the probationary period as provided in the transfer provisions of these Rules.

## Sec. 117.6 Successive Probationary Appointment

With the approval of the Human Resources Director, an appointing officer, with the concurrence of the employee, may renew the employee's probationary period. The Human Resources Director shall establish the administrative process and procedures for accomplishing such successive probationary appointments.

## Sec. 117.7 Report of Completion of Probationary Period

The appointing officer shall notify the appointee and the Department of Human Resources on the form, and in the manner prescribed by the Human Resources Director, upon completion of an appointee's probationary period.

## Sec. 117.8 Voluntary Resumption of the Probationary Period

**117.8.1** When agreed upon by an appointing officer and an employee, and with the approval of the Human Resources Director, a permanent employee past the probationary period may voluntarily agree to serve a new probationary period in lieu of the department dismissing the employee.

**117.8.2** The duration of the resumed probationary period shall not exceed six (6) calendar months.

**117.8.3** During this resumed probationary period, should the employee fail to abide by the terms and conditions of the probationary period set by the department, subsequent action may be taken.

**117.8.4** This resumed probationary period is subject to all terms and conditions of a probationary period as provided elsewhere in these Rules.

## Sec. 117.9 Release of Employee During the Probationary Period

### 117.9.1 Authority and procedures for release of probationary employee.

**1)** An employee may be released by the appointing officer at any time during the probationary period upon written notice to the employee and the Human Resources Director.

**2)** Consistent with these Rules and subject to the approval of the Commission, the Human Resources Director shall establish and promulgate procedures for administering and processing the release of probationary employees.

## Sec. 117.9 Release of Employee During the Probationary Period (cont.)

### 117.9.2 Release of probationary employee for disciplinary reasons.

**1)** If the release of a probationary employee is for disciplinary reasons, a determination of the employee's future employability shall be as provided in this section.

**2)** The decision on future employability reached through the procedures established under these Rules shall be final and shall not be subject to reconsideration.

**3)** The Executive Officer shall establish and promulgate the administrative process and procedures including the time frame for filing requests for future employability hearings.

### 117.9.3 Reversion to Former Class - Released Promotive Probationary Employee.

**1)** Except if the release is for disciplinary reasons and subject to approval of the Human Resources Director, an employee released during a promotive probationary period shall revert to a position in the class from which promoted. If necessary, displacements in the former class shall occur.

**2)** Except for reasons beyond the control of the Commission or the Human Resources Director, reversion of a released promotive probationary employee shall be accomplished not later than thirty (30) days from the effective date of the employee's release.

**3)** The Human Resources Director shall establish and promulgate the administrative process and

procedures for the reversion of a released promotive probationary employee.