# EXHIBIT A

1
DENNIS J. HERRERA, State Bar #139669
City Attorney
2
ELIZABETH S. SALVESON, State Bar #83788
Chief Labor Attorney
3
ANTHONY GRUMBACH, State Bar #195107
Deputy City Attorney
4
Fox Plaza
1390 Market Street, 5th Floor
5
San Francisco, California 94102-5408
Telephone:    (415) 554-3947
6
Facsimile:    (415) 554-4248

7

8
Attorneys for Respondents
CITY AND COUNTY OF SAN FRANCISCO AND
9
MICHAEL HENNESSEY

ENDORSED
**FILED**
San Francisco County Superior Court

MAR 0 2 2006

GORDON PARK-LI, Clerk
BY: ____CAROLYN BALISTRERI____
Deputy Clerk

10
SUPERIOR COURT OF THE STATE OF CALIFORNIA

11
COUNTY OF SAN FRANCISCO

12
UNLIMITED CIVIL JURISDICTION

13
WILLIAM SETZLER,

14
          Petitioner,

15
     vs.

16
MICHAEL HENNESSEY, and CITY
AND COUNTY OF SAN FRANCISCO,
17

          Respondents.
18

Case No. 313725

**NOTICE OF ENTRY OF STATEMENT OF
DECISION DENYING MOTION TO GRANT
WRIT PETITION**

| | |
|---|---|
| Hearing Date: | July 18 and Dec. 8, 2005 |
| Hearing Judge: | Hon. James. L. Warren |
| Time: | 9:30 a.m. |
| Place: | Dept. 301 |

| | |
|---|---|
| Date Action Filed: | July 19, 2000 |
| Trial Date: | n/a |

19

20

21

22

23

24

25

26

27

28

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 1, 2006, the Court entered its Statement of Decision Denying Motion to Grant Writ Petition. A true and correct copy of the decision is attached as Exhibit A.

Respectfully submitted,

Dated: *March 1, 2006*

DENNIS J. HERRERA
City Attorney
ELIZABETH S. SALVESON
Chief Labor Attorney
ANTHONY GRUMBACH
Deputy City Attorney

By: _____
ANTHONY GRUMBACH

Attorneys for Defendant
CITY & COUNTY OF SAN FRANCISCO
AND SHERIFF MICHAEL HENNESSEY

NOTICE OF ENTRY OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00361200.doc

DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH S. SALVESON, State Bar #83788
Chief Labor Attorney
ANTHONY GRUMBACH, State Bar #195107
Deputy City Attorney
Fox Plaza
1390 Market Street, 5th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3947
Facsimile:    (415) 554-4248

42

Ex. A

*San Frai*                          ~~~~

GORDON PARK-LI, Clerk
BY: _CYNTHIA S. HERBERT_
                    Deputy Clerk

Attorneys for Respondents
CITY AND COUNTY OF SAN FRANCISCO AND
MICHAEL HENNESSEY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL JURISDICTION

WILLIAM SETZLER,

            Petitioner,

    vs.

MICHAEL HENNESSEY, and CITY
AND COUNTY OF SAN FRANCISCO,

            Respondents.

Case No. 313725

[~~REVISED PROPOSED~~] STATEMENT OF
DECISION DENYING MOTION TO
GRANT WRIT PETITION

Hearing Dates:       July 18 & Dec. 8, 2005
Hearing Judge:       Hon. James L. Warren
Time:                9:30 a.m.
Place:               Dept. 301

Date Action Filed:   July 19, 2000
Trial Date:          n/a

1       This matter came on for hearing on Monday, July 18 and December 8, 2005, before the

2   Honorable Judge James L. Warren in Department 301 of the above-entitled Court, with appearances

3   by counsel as follows:  City Attorney Dennis J. Herrera, through Deputy City Attorney Anthony

4   Grumbach, appeared for Respondents Sheriff Michael Hennessey and City and County of San

5   Francisco (collectively, the "City"); Edward L. Faunce, J.D., of Faunce, Singer & Oatman, a

6   Professional Corporation, appeared for Petitioner William Setzler.

7       On June 3, 2005, Setzler filed a motion requesting the Court to grant the petition for a

8   traditional writ of mandate that he filed on July 19, 2000 (the "Petition").  Setzler contends that the

9   City violated Government Code section 21153, a provision of the Public Employees' Retirement

10  Law (the "PERL"), Government Code sections 20000-21703.  Section 21153 provides that if an

11  employee is eligible for a disability retirement under the PERL, the employer may not separate the

12  employee because of the disability.  Setzler contends that the City had a ministerial duty under

13  section 21153 to reinstate him when his disability retirement application was denied and that the

14  City violated this duty.

15      The Court has reviewed and considered the pleadings, evidence, and oral arguments

16  submitted by the parties. This matter having been fully argued and considered, and proof being

17  made to the satisfaction of the Court,

18      IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

19      The Petition is DENIED in its entirety.  The City shall recover its costs.

20      The Court's decision is based solely on admissible and relevant evidence.  The City filed

21  written objections to Setzler's evidence and preserved the objections by asking the Court to rule on

22  them during oral argument.  *Biljak Ass'n v. First Interstate Bank* (1st Dist. 1990) 218 Cal.App.3d

23  1410, 1419-1420, superseded by statute on other grounds as stated in *Scheiding v. Dinwiddie*

24  *Constr. Co.* (1st Dist. 1999) 69 Cal.App.4th 64, 72.

25      The Court bases its decision on the following grounds:  (1) Setzler has not shown that the

26  City has a clear, ministerial duty under section 21153 to reinstate him; (2) Setzler cannot show that

27  the City separated him in violation of section 21153 because: (a) the doctrines of issue and claim

28  preclusion bar Setzler from relitigating his previously rejected argument that the City refused to

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1    return him to work, and (b) even if the Petition is not precluded, it lacks merit; (3) Setzler comes to

2    the Court with unclean hands; and (4) the Petition fails on procedural grounds because Setzler:

3    (a) waited five years before bringing the Petition to hearing, and (b) failed to exhaust his

4    administrative remedies.

5                                          **FINDINGS OF FACT**

6    I.    FACTUAL BACKGROUND

7            Setzler joined the City's Sheriff's Department as a probationary deputy sheriff in May 1989.

8    (Benjamin Decl. ¶ 6, Ex. B at 33:19-22.) After training, Setzler was assigned to the County Jail.

9    (Id. at 37:15-17.) He admits that did not want to work at the jail because he felt the working

10   conditions were "intolerable." (Id. at 54:14-25, 55:1-19.)

11           On January 2, 1990, seven months into his probationary period, Setzler encountered a gate at

12   the jail that would not open. (Id. at 45:21-25, 46:1-8.) Setzler kicked the gate with his left foot.

13   (Id. at 46:3-8; 47:19-23.) The gate opened, and Setzler went on with his duties. (Id. at 48:5-10.)

14   Later during Setzler's shift, he reported that his foot hurt. (Id. ¶ 6, Ex. G.)

15           Since leaving work at the end of his January 2, 1990 shift, Setzler has not returned to work.

16   (Id. ¶ 6, Ex. B 50:22-25.) Claiming to have injured his foot so severely that he could not work as a

17   deputy sheriff, Setzler sought to retire with a full disability pension. (Id. ¶¶ 4-7.) Even after the

18   Retirement Board denied his disability retirement application in 1996, Setzler did not return to

19   work. (Harrigan Decl. ¶¶ 3-12; see also below at 3-6 (discussing procedural history of Setzler's

20   disability retirement application)).

21           But at all times since January 2, 1990, Setzler has remained a City employee, staying on

22   leave for over 15 years. (Harrigan Decl. ¶¶ 3-12; Grumbach Decl. Ex. F ("Setzler Depo.") at 83.)

23   He received full disability pay under Labor Code section 4850 between January 1990 and January

24   1991, and maintained his full pay through a combination of workers' compensation benefits, sick

25   leave, vacation pay, and vocational rehabilitation allowances until at least March 1996. (Benjamin

26   Decl. Ex. EE at 10.) And during Setzler's entire 15-year leave of absence, he has continued to

27   receive his employee benefits, such as his City-paid health insurance benefits. (Setzler Depo.

28   at 756:11-16.)

[REVISED PROPOSED] STATEMENT OF DECISION.      CASE NO. 313725          n:\labor\li2005\010137\00356116.doc

1    Although the City does not have permanent modified duty positions for deputy sheriffs, the

2    City has repeatedly offered Setzler three ways to return to work: (1) return to full duty as a deputy

3    sheriff if he was medically capable of performing the job's essential functions; (2) return to full duty

4    as a deputy sheriff with reasonable accommodations that would allow him to perform the job's

5    essential functions;[1] or (3) transfer to another position under the City's disability transfer program.

6    (Harrigan Decl. ¶¶ 5-12, Ex's A-D.)

7        But Setzler has not returned to work. (Setzler Depo. at 382:2-10, 397:22-398:3, 505:15-

8    506:15.) While consistently maintaining that he cannot return to full duty as a deputy sheriff,

9    Setzler has also declined to participate in the City's disability accommodation process, under which

10   he could return to work as a deputy sheriff with reasonable accommodations or obtain a disability

11   transfer to a new position. (Harrigan Decl. ¶¶ 5-12, Ex. D at 1, 3; Setzler Depo. at 30:21-23, 35:8-

12   20-21, 36:21-37:2, 151:20-152:17.)

13       The City also provided Setzler with vocational rehabilitation to become a computer

14   technician through the City's worker's compensation system. (Setzler Depo. at 744-746.) But

15   Setzler has not worked as a computer technician, either for the City or other employers. (*Id.* at 756-

16   758.)

17   **II.    PROCEDURAL HISTORY**

18       **A.    The Retirement Board Denies Setzler's Disability Retirement Application**

19       As early as September 1990, Setzler began contemplating a disability retirement. (Benjamin

20   Decl. ¶ 6, Ex. B 72:24-25, 73:1-15.) Although he had worked only seven months for the City

21   before his alleged injury, and had not even completed his probationary period, Setzler had already

22   researched what his disability retirement benefits would be under the Public Employees Retirement

23   System ("PERS"). (*Id.* at 73:7-15.)

24

25       [1] Working in a full duty assignment with an accommodation is different than working in a

26   modified or light duty assignment. In full duty assignments with accommodations, employees

     receive accommodations—for example, being allowed to stretch at regular intervals—but still

27   perform their jobs' essential functions. In modified or light duty assignments, employees do not

     perform all of their jobs' essential functions. (Harrigan Decl. ¶¶ 13-14.)

28

---

3

On December 30, 1991, Setzler applied for a disability retirement, claiming that he suffered a disabling foot injury when he kicked the gate at the jail. (*Id.* ¶ 4.) According to Setzler, this injury caused him to limp, required him to walk with a cane, and upset his sense of balance so severely that he had trouble walking on stairs or even just carrying a cup of coffee. (*Id.* ¶ 7, Ex. B at 59:9-24, 62:18-23, 63:2-17, 65:21-25, 66:1-11.)

In 1994, a state administrative law judge ("ALJ") conducted a hearing on Setzler's application. (*Id.* Ex. E.) The ALJ denied Setzler's application. (*Id.*) The evidence supporting the ALJ's decision included:

- the lack of objective medical evidence that Setzler was disabled, coupled with medical reports from doctors who concluded that he was not disabled (*id.* Ex's E, I, J);
- testimony from a witness who saw Setzler walking without a limp in City Hall—until Setzler turned to walk into the Sheriff's office, when he began limping (*id* Ex. C 15:8-25, 16:1-14);
- videotape of Setzler walking normally without a cane, including shots of him ascending and descending stairs and carrying luggage in both hands without a limp or balance problems (*id.* Ex. D at 10); and
- evidence that Setzler had taken three, lengthy vacations in Europe since allegedly injuring his foot (*id.* Ex. B at 93-97).

Adopting the ALJ's decision, the Retirement Board denied Setzler's application in May 1996 and denied his petition for reconsideration in July 1996. (*Id.* ¶¶ 5, 9, Ex. F.)

**B.    The First Petition**

  **1.    The Court decides that Setzler failed to make a good faith effort to return to work**

On July 11, 1996, Setzler filed his First Petition, an administrative mandate action under California Code of Civil Procedure section 1094.5. In the First Petition, Setzler asked the Court to overturn the Retirement Board's denial of his disability retirement application. (Benjamin Decl. Ex. K.) Setzler repeatedly argued that the City had refused to return him to work. (*Id.* ¶¶ 10-12, Ex. J at 8:16-19, Ex's M-O.)

4

1    Following a three-day trial before Judge William Cahill, the Court denied the First Petition

2  on February 25, 1997. (*Id.* ¶ 13, Ex. L.) Setzler appealed. (*Id.* Ex. R.)

3    Before the appeal was heard, the parties found that a videotape that a deputy city attorney

4  had lodged with the Court was not an accurate copy of the videotape entered into evidence in the

5  administrative hearing. (*Id.* ¶¶ 15-18.) The matter was remanded to the ALJ and the Retirement

6  Board to authenticate the actual videotape and reconsider Setzler's disability retirement application.

7  (*Id.*) On remand, the ALJ authenticated the videotape, and the Retirement Board affirmed its denial

8  of Setzler's application. (*Id.*)

9    The proceedings on the First Petition returned to the Court, with Judge Raymond D.

10  Williamson presiding. (*Id.* ¶ 19, Ex. W.) Setzler again argued that the City had refused to return

11  him to work. (*Id.* Ex's X, Y at 4-5).

12    In an August 25, 1998 decision, the Court again denied the First Petition. (*Id.* Ex. W.) In

13  the decision, the Court considered and rejected Setzler's "contention that he is entitled to a disability

14  pension on the ground that the City has refused to return him to work. *The evidence fails to*

15  *establish that petitioner has made a good faith effort to return to work.*" (*Id.* at 2 (emphasis

16  added).) The Court also found that Setzler's claims about his alleged disability were not credible.

17  (*Id.*)

18         2.      **Denying Setzler's motion for a new trial, the Court concludes that**
                   **Setzler is a "malingerer" who "has not done what was necessary to get**
19                 **himself reinstated"**

20    Setzler then moved for a new trial. (*Id.* ¶¶ 25-29; Ex's CC1-CC4.) He argued that the Court

21  had erred in ruling that Setzler had failed to make a good faith effort to return to work. (*Id.* Ex's

22  CC-2 at 3-5, CC-3 at 7:20-11:26.)

23    The Honorable David A. Garcia heard the new trial motion. (*Id.* Ex's CC-3, CC-4.)

24  Denying the motion, the Court concluded that Setzler was a "malingerer" who had not made a good

25  faith effort to return to work. (*Id.*) Judge Garcia explained that:

26              [i]*f the weight of the evidence supports the decision that he's not disabled,*
              *then categorically the weight of the evidence supports the decision that he's*
27              *malingering. And that he has not done what was necessary to get himself*
              *reinstated to the job. Okay?*

28

5

*Because this is what this is about, isn't it? He's either disabled or he's a malingerer. And as cold and as cruel [as] that may sound, that's what it's about. And that's where my analysis is. And that's where it's going to rest.* (*Id.* Ex. CC-3 14:4-12 (emphasis added).)

3.    Upholding the denial of the First Petition, the court of appeal affirms that Setzler did not make a good faith effort to return to work

Setzler appealed. (*Id.* ¶ 30, Ex. DD.) He again argued that the Court should have granted his First Petition because the City had refused to return him to work. (*Id.* Ex. EE at 17-19.)

In an unpublished April 11, 2000 decision, the court of appeal upheld the denial of Setzler's First Petition. (*Id.* Ex. FF.) In reaching this decision, the court of appeal specifically affirmed the Court's findings that: (1) Setzler's claims about his alleged disability were not credible, and (2) Setzler had not made a good faith effort to return to work. (*Id.* Ex. FF 6-8.)

When the court of appeal remitted its opinion to the Court on June 13, 2000, the judgment on the First Petition became final. (*Id.* Ex. GG.)

C.    The Second Petition

On April 28, 1999, while Setzler's appeal in the First Petition proceeding was pending, he filed another petition (the "Second Petition") seeking a traditional writ of mandate (Code of Civ. Proc. § 1085). (Grumbach Decl. Ex. C.) In the Second Petition, Setzler again argued that the City had refused to return him to work and sought an order "reinstating" him to a position as a deputy sheriff. (*Id.*) On December 13, 1999, the Court, with the Honorable Judge Ronald E. Quidachay presiding, sustained the City's demurrer without leave to amend on the grounds that the Second Petition was not ripe because the First Petition was still pending. (*Id.* Ex's D, E.)

D.    The Petition

On July 19, 2000, the month after the judgment denying the First Petition became final, (Benjamin Decl. Ex. GG), Setzler filed the Petition. (Grumbach Decl. Ex. A.) In the Petition, he seeks a traditional writ of mandate under Code of Civil Procedure section 1085 ordering the City to return him to work as a deputy Sheriff with back pay and other monetary relief dating to 1991. (*Id.*) On September 5, 2000, the City filed its response to the petition. (*Id.* Ex. B.) On June 3, 2005— almost five years after the Petition was filed—Setzler filed a motion asking the Court to grant the Petition. (Setzler Motion at 1-2.) As before, he argues that he is entitled to writ relief because the City allegedly refused to return him to work. (Setzler Brief at 1.) He seeks a writ of mandate

1  ordering the City to "reinstate" him with full back pay and benefits from one of three alternative

2  dates in 1991, 1996 and 2000 when Setzler alleges that the City refused to return him to work. (*Id.*

3  at 8-10.)

## LEGAL ANALYSIS

### I.  STANDARD OF REVIEW FOR SECTION 1085 WRIT PETITIONS

Code of Civil Procedure section 1085(a) provides that traditional mandate may issue "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled. . . ."

Traditional mandate under section 1085 will lie "to compel performance of a clear, present and usually ministerial duty in cases where a petitioner has a clear, present and beneficial right to performance of that duty." *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 972. Where the respondent has not violated a purely ministerial duty, writ relief is generally unavailable under section 1085 unless the respondent's "decision was arbitrary, capricious, or entirely lacking in evidentiary support." *DeCuir v. County of Los Angeles* (1998) 64 Cal.App.4th 75, 81.

The petitioner bears the burden of establishing both that the respondent has a duty to perform an act and that the petitioner has a substantial right to the performance of that act. *San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 771.

### II.  THE PERTINENT LAWS ARE THE PERL AND THE CITY'S PERSONNEL POLICES

Although the City has its own retirement system that covers most of its employees, the City has contracted with the PERS to provide retirement benefits to the City's deputy sheriffs. See San Francisco Charter § A8.506. Therefore, the PERL applies to the City's deputy sheriffs. *Duff v. City of Gardena* (1980) 108 Cal.App.3d 930, 933-934 (applying the PERL to local safety officer whose employer had contracted with the PERS to provide retirement benefits).

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1    But while the PERL governs Setzler's retirement benefits, the personnel policies of a charter

2  city remain municipal affairs. *Gourley v. City of Napa* (1st Dist. 1975) 48 Cal.App.3d 156, 163-

3  164. The City, therefore, retains its authority to administer its own Civil Service Rules and

4  personnel policies, which continue to govern Setzler's employment with the City as long as they are

5  not inconsistent with the PERL. *Id.*; *Duff*, 108 Cal.App.3d at 936-937 (PERL did not limit a city's

6  right to terminate a probationary employee for reasons unrelated to the employee's alleged

7  disability); *Campbell v. City of Monrovia* (1978) 84 Cal.App.3d 341, 350 (holding that while the

8  PERL controls "the requirements for PERS member retirements, [it does] not define the nature or

9  extant of factors, like the right to sick leave, which are peripheral thereto and which are properly

10  within the control of a contracting agency").

11    Largely ignoring the PERL and the City's personnel policies, Setzler relies on two laws that

12  do not apply to him or the City. First, he relies on a law that is irrelevant because it governs only

13  county employees' retirement benefits: the County Employees' Retirement Law Act of 1937 (the

14  "CERL"), Government Code sections 31450-31898. The CERL and the PERL are distinct statutory

15  schemes, with different provisions. *Pennington v. Workmen's Comp. Appeals Bd.* (1971) 20

16  Cal.App.3d 55, 58-60. As explained in *Pennington*, the Legislature "created two distinct kinds of

17  retirement systems, each of which may include deputy sheriffs among its members:" the CERL and

18  the PERL. *Id.* at 58. Because, "[t]he acts of the Legislature have treated PERS members differently

19  from CERL members," courts "must assume it intended the distinctions." *Id.* at 60.[2]

20

21

22    [2] Citing *McGriff v. County of Los Angeles* (1973) 33 Cal.App.3d 394, Setzler appears to
argue the PERL entirely preempts the City's civil service rules and personnel policies. This

23  argument is misguided. First, *McGriff* concerned a county employee whose retirement benefits
were governed by the CERL, which, as explained above, does not apply to the City or Setzler.

24  Second, at least three courts of appeal have held that the PERL does not entirely preempt charter
cities' authority in personnel matters. *Gourley*, 48 Cal.App.3d at 163-164; *Duff*, 108 Cal.App.3d at

25  936-937; *Campbell*, 84 Cal.App.3d at 350. Third, in *McGriff* the county, unlike the City, had
adopted the entire CERL as a local ordinance, which caused the court to conclude that the later

26  adopted CERL provisions were controlling rather than the general civil services rules that the
county had previously enacted. 33 Cal.App.3d at 399 ("It is well established that [w]here the terms

27  of a later specific statute apply to a situation covered by an earlier general one, the later specific
statute controls." *Id.*, internal quotations omitted.)

28

8

1    Second, Setzler relies on Government Code section 19253.5, a provision of the State Civil

2    Service Act (Gov't Code §§ 18500-19799). This act, however, applies only to state employees, not

3    the City's employees. Gov't Code § 18526 (under State Civil Service Act, an "'employee' means a

4    person legally holding a position in the State civil service").

5        These distinction between the PERL and the City's personnel policies on the one hand, and

6    the CERL and the State Civil Service Act on the other, are significant. Setzler relies exclusively on

7    cases and administrative authorities involving statutes that do not apply to him or the City. He cites

8    several cases that interpret the CERL. And he cites an Attorney General's opinion and State

9    Personnel Board opinions that interpret the PERL and State Civil Service Act as they apply to state

10   employees. But he fails to cite any authority regarding the duties that the PERL imposes on a

11   municipal employer like the City.

12

13   III.   SECTION 21153 DOES NOT IMPOSE A CLEAR, MINISTERIAL DUTY ON THE
            CITY TO REINSTATE SETZLER
14

15       Setzler contends that the City had a clear, ministerial duty under section 21153 of the PERL

16   to reinstate him with full back pay when his disability retirement application was denied, and that

17   the City failed to perform that duty. (Setzler Op. Brief at 3.) Section 21153 provides that:

18       Notwithstanding any other provision of law, *an employer may not separate
         because of disability a member otherwise eligible to retire for disability but
19       shall apply for disability retirement of any member believed to be disabled,*
         unless the member waives the right to retire for disability and elects to
20       withdraw contributions or to permit contributions to remain in the fund with
         rights to service retirement as provided in Section 20731. (Gov't Code
21       § 21153 (emphasis added).)

22       Whether section 21153 imposes a clear, ministerial duty on the City to reinstate Setzler

23   presents a question of law that the Court reviews *de novo.* See *McGhan Med. Corp. v. Superior*

24   *Court* (1992) 11 Cal.App.4th 804, 808. Although the PERL is liberally construed to protect the

25   rights of PERS members, the doctrine of liberal construction does not permit a court to "pervert the

26   plain language of the statute." *Gourley,* 48 Cal.App.3d at 161.

27       Here, the plain language of section 21153 does not support Setlzer's contention. The plain

28   language of Section 21153 imposes a duty on the employer not to "separate because of disability" a

9

1   PERS member who is "otherwise eligible to retire for disability."   Section 21153 also requires the
2   employer to apply for a disability retirement on behalf of "any member believed to be disabled."
3   But Section 21153 does not mention reinstatement or specify any additional duties that the
4   employer must comply with if the member's disability retirement application is denied. Thus, the
5   plain language of section 21153 does not establish a clear, ministerial duty to reinstate a PERS
6   member whose disability retirement application has been denied.

7       A court of appeal recently reached this same conclusion in *Jones v. Los Angeles County*
8   *Office of Education* (2005) 134 Cal.App.4th 983, 990-992. In *Jones* the employee, like Setzler,
9   worked for a local entity, the Los Angeles County Office of Education (the "LACOE"), that, like
10  the City' Sheriff's Department, provided employees retirement benefits through the PERS. *Id.* at
11  985. Like Setzler, after Jones's disability retirement application was denied, she filed a writ petition
12  in which she argued that section 21153 imposed a ministerial duty on the LACOE to reinstate her
13  with back pay. *Id.* at 988. Like Setzler, after Jones's disability retirement application was denied,
14  she continued to maintain that she was incapable of returning to work. *Id.* at 987, 991.

15      The court of appeal upheld the trial court's denial of Jones's writ petition. *Id.* at 991. In
16  holding that the LACOE was not required to reinstate Jones after her disability application was
17  denied, the court of appeal held that "there was no statutory duty to pay plaintiff a full salary for a
18  job she would not perform." *Id.*[3]

19      Setzler does not cite any case holding that section 21153 imposes a clear, ministerial
20  reinstatement requirement on employers. Instead, Setzler relies on cases interpreting the CERL,
21  which as explained above is a distinct retirement law that does not apply to the City or Setzler. *Id.*
22  at 989 (the CERL and cases interpreting the CERL do not apply to employers and employees
23  covered by the PERL); *Pennington,* 20 Cal.App.3d at 58-60 (the PERL and CERL are distinct
24  statutory schemes, and courts must abide by the Legislature's decisions to treat "PERS members

25      [3] Jones was represented by the same attorney who represents Setzler: Edward L. Faunce. In
26  support of Setzler's Petition, Mr. Faunce has made the same arguments regarding section 21153 that
    the court of appeal rejected when Mr. Faunce made them on Jones's behalf. See Grumbach
27  Declaration In Support of the City's Second Supplemental Brief, Ex. B at pp. 12-35 (Jones's
    Appellant's Brief).
28

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1  differently from CERL members"). Specifically, Setzler relies on language in section 31725 of the

2  CERL that requires a county to reinstate a CERL member with back pay if the member's disability

3  retirement application is denied.

4      Setzler's reliance on section 31725 is especially misplaced. As demonstrated by the

5  legislative history of the 1970 amendments to the CERL and PERL, section 31725 is an example of

6  a provision in which the Legislature specifically distinguished a county's duties under the CERL

7  from a municipality's duties under the PERL.

8      In 1970 the Legislature amended both the PERL and CERL by adding provisions that

9  restrict employers from separating employees who are eligible for a disability retirement. The

10 Legislature amended the PERL by adding the language quoted above from section 21153, which

11 provides that "an employer may not separate because of disability a member otherwise eligible to

12 retire for disability but shall apply for disability retirement of any member believed to be disabled."

13 Gov't Code § 21153 (West 2003) (citing Stats. 1970, c. 1447, §2, p. 2820).[4] At the same time, the

14 Legislature added an identical provision to section 31721(a) of the CERL. Compare Gov't Code

15 § 31721(a) (West 1988) (citing Stats. 1970, c. 1016, § 2, p. 1823) with Gov't Code § 21153.

16     That same year the Legislature also amended section 31725 of the CERL to add a

17 reinstatement provision to that statute. As amended, section 31725 provides that if a CERL

18 member's disability application is denied "and the employer has dismissed the member for disability

19 the employer shall reinstate the member to his employment effective as of the day following the

20 effective date of dismissal." Gov't Code § 31725 (West 1988) (citing Stats. 1970, c. 1016, § 1, p.

21 1823)).

22     Significantly, that same year the Legislature rejected a proposed amendment that would

23 have added an identical reinstatement requirement to the PERL. When initially introduced on

24 March 12, 1970, Assembly Bill No. 1153 proposed adding a provision to the PERL specifying that

25 if a PERS member's disability application is denied "and the employer has dismissed the member

26

27     [4] This language was added to former section 21023.5 of the PERL, which was later
recodified as section 21153. *Id.*

28

for disability the employer shall reinstate the member to his employment effective as of the day following the effective date of dismissal." Assem. Bill No. 1153 (1970 Reg. Sess.), as introduced March 12, 1970, § 3, pp. 3-4; *id.* at p. 1 (legislative counsel's digest). As Assembly Bill No. 1153 progressed through the Assembly and Senate, the Legislature deleted the reinstatement requirement. Assem. Amend. to Assem. Bill No. 1153 (1970 Reg. Sess.), as amended June 18, 1970, § 3, p. 4 ; *id.* at p. 1 (legislative counsel's digest); Sen. Amend. to Assem. Bill No. 1153 (1970 Reg. Sess.), as amended Aug. 4, 1970, § 2, p. 3; *id.* at p. 1 (legislative counsel's digest). As finally enacted, Assembly Bill No. 1153 did not add a reinstatement requirement to the PERL. *Id.;* Stats. 1970, c. 1447, pp. 2818-2822.[5]

Thus, the legislative history confirms that when imposing a reinstatement requirement on counties covered by the CERL, the Legislature deliberately elected not to impose a reinstatement requirement on municipalities covered by the PERL. See *Pennington*, 20 Cal.App.3d at 60 (because "[t]he acts of the Legislature have treated PERS members differently from CERL members," courts "must assume it intended the distinctions"); see also *In re Antonio F.* (2002) 98 Cal.App.4th 1227, 1232 ("[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" (ellipses in original, internal quotations omitted)); *Wilson v. City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555 (when the Legislature has rejected a provision that was part of an act when originally introduced, the act "should be construed according to the final version" and "should not be interpreted to include what was left out" (internal quotations omitted)).[6]

---

[5] None of the cases and administrative opinions cited by Setzler address the distinctions that the Legislature made between the CERL and PERL when amending those statutes in 1970.

[6] A 1999 amendment of the State Civil Service Act further demonstrates the Legislature's intent not to impose a reinstatement requirement on municipalities covered by the PERL. In 1999 the Legislature amended the State Civil Service Act to require the state to reinstate its employees with back pay when state employees' disability retirement applications are denied. Gov't Code § 19253.5 (Deering's Supp. 2004) (reviewing 1999 amendment, 1999 Statutes ch. 310, ). Although state employees are PERS members, the Legislature added this reinstatement requirement to the State Civil Service Act, which applies to the state's employees but not municipalities' employees. *Id.*; Gov't Code § 18526. If the Legislature wanted this reinstatement requirement to apply both to the state and to municipalities that contract with the PERS, the Legislature could have amended the (continued on next page)

1    In sum, the distinctions between the PERL's and the CERL's plain language and legislative

2  history establish that the City did not have a clear ministerial duty under the PERL to reinstate

3  Setzler when his disability retirement application was denied.

4

5  **IV.    SETZLER CANNOT ESTABLISH THAT THE CITY VIOLATED SECTION 21153 BY REFUSING TO RETURN HIM TO WORK**

6

7    Even if the City did not have a ministerial duty to reinstate him, Setzler still contends that

8  the Petition should be granted because the City violated section 21153 by separating him because of

9  his disability.  Although the City did not terminate Setzler, he argues that the City effectively

10  separated him by allegedly refusing to return him to work.

11  **A.    Setzler Cannot Relitigate His Previously Rejected Argument That The City Refused To Return Him To Work**

12    **1.    Issue preclusion (collateral estoppel) bars the petition**

13    The doctrine of issue preclusion bars the Petition because Setzler is trying to relitigate an

14  issue that was already decided in the proceeding on the First Petition:  whether the City refused to

15  return him to work.

16    Issue preclusion prevents relitigation of issues argued and decided in prior proceedings

17  when:  (1) the issue is identical to the one decided in the prior proceeding; (2) the issue was actually

18  litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding;

19  (4) the prior decision is final and on the merits; and (5) preclusion is sought against the person who

20  was a party in the prior proceeding.  *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.  Where

21  these requirements are met, issue preclusion applies if it will further the public policies of

22  "preservation of the integrity of the judicial system, promotion of judicial economy, and protection

23  of litigants from harassment by vexatious litigation." *Id.* at 343.

---

24  (footnote continued from previous page)
PERL.  By adding this reinstatement requirement to the State Civil Service Act instead of the
25  PERL, the Legislature again elected not to impose a reinstatement requirement on municipal
employers like the City who contract with the PERS.

26    None of the cases and administrative opinions cited by Setzler address the distinctions that
27  the Legislature has made between state employees who are covered by the State Civil Service Act
and municipal employees who are not.

28

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\i2005\010137\00356116.doc

1    In the proceedings on Setzler's First Petition, he fully litigated the same issue he raises here:

2    whether the City refused to return him to work. (Benjamin Decl. ¶¶ 10-31, Ex.'s K-GG.) Setzler

3    repeatedly raised this issue to the Court and the court of appeal, devoting entire sections of briefs to

4    it and discussing it in oral arguments. (Benjamin Decl. ¶¶ 10-31, Ex.'s K-GG.) Rejecting Setzler's

5    argument that the City had refused to return him to work, the Court and the court of appeal

6    specifically found that Setzler had not made a good faith effort to return to work. (Id. Ex's W, CC-

7    3, FF.)

8        Thus, all the prerequisites for issue preclusion are satisfied. The issue of whether the City

9    refused to return Setzler to work was actually—in fact, *extensively*—litigated and necessarily

10   decided on the merits in the prior proceeding, which is now final. See *Lucido*, 51 Cal.3d at 342

11   (issue preclusion broadly applies to any issue previously decided that was not "entirely unnecessary

12   to the judgment in the initial proceeding" (internal quotations omitted)). And issue preclusion is

13   being applied against Setzler, who was also the petitioner in the prior proceeding. *Id.* at 341.

14       Setzler argues that issue preclusion does not apply because neither the parties nor the courts

15   addressed section 21153 in the proceeding on the First Petition. This argument lacks merit. The

16   "identical issue requirement addresses whether identical factual allegations are at stake in the two

17   proceedings, not whether the ultimate issues or dispositions are the same." *Lucido*, 51 Cal.3d at 342

18   (internal quotations omitted); *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 482 (issue

19   preclusion barred plaintiff's FEHA claim alleging employment discrimination even though in

20   proceedings on his earlier, unsuccessful wrongful discharge claim he had not cited the FEHA or

21   argued that he had been subjected to race discrimination). The factual allegations that Setzler raises

22   here are identical to the factual allegations that he raised in the proceeding on his First Petition. In

23   both instances, Setzler argues that he has tried to return to work since 1990 but the City has refused

24   to allow him to do so. Compare, e.g., Setzler's Op. Brief at 2-3, 8-10 (Setzler's factual allegations in

25   the current proceeding) with Benjamin Decl. Ex. EE at 3-14, 17-19 (Setzler's factual allegations in

26   his appellate brief from the earlier proceeding).

27       Application of issue preclusion to the Petition will also further the public policies discussed

28   in *Lucido*. 51 Cal.3d at 343. Granting the Petition would undermine the integrity of the Court's and

14

1   the court of appeal's decisions. *Castillo*, 92 Cal.App.4th at 483 (possibility of inconsistent

2   judgments undermines integrity of judicial system). Applying issue preclusion will further judicial

3   economy by eliminating the need for the Court to review—again—the extensive record in the prior

4   proceeding, including the extensive evidentiary record and the ten briefs in which the parties

5   previously addressed this issue (Benjamin Decl. Ex's M-P, X-AA, CC-2, EE). *Castillo*, 92

6   Cal.App.4th at 483. Applying issue preclusion here is also appropriate in light of the over 14 years

7   of administrative actions and litigation that Setzler has pursued against the City, all of which arise

8   from a disability claim that the Court has found was not credible (Benjamin Decl. Ex. W). *Castillo*,

9   92 Cal.App.4th at 483-484.[7]

10          2.      Claim preclusion (res judicata) bars the petition

11          Claim preclusion provides an alternative reason to deny the Petition. Claim preclusion bars

12   the relitigation of an entire claim (rather than a specific issue) when: (1) the claim is identical to the

13   one presented in the prior proceedings; (2) the prior proceeding resulted in final judgment on the

14   merits; and (3) preclusion is being asserted against a party to the prior proceeding. *Bernhard v.*

15   *Bank of America Nat. Trust & Savings Ass'n* (1942) 19 Cal.2d 807, 813.

16          Claim preclusion bars the Petition because in the prior proceeding, a final judgment was

17   entered denying Setzler's claim that the City had refused to return him to work. (Benjamin Decl.

18   Ex's W, CC-3, FF, GG.) Although Setzler sought disability retirement benefits in the prior

19   administrative mandate proceeding and seeks "reinstatement" with back pay in the current

20   traditional mandate proceeding, claim preclusion still bars the Petition under the primary rights

21   theory that California courts apply to determine whether two claims are identical. *Eichman v.*

22   *Fotomat Corp.* (1983) 147 Cal.App.3d 1170, 1174. Under the primary rights theory, "if *two actions*

23   *involve the same injury to the plaintiff and the same wrong by the defendant then the same primary*

24   *right is at stake* even if in the second suit plaintiff pleads different theories of recovery, seeks

25   _____

26   [7] For the reasons explained above, issue preclusion also bars Setzler from relitigating the
     findings in the First Petition proceeding that his: (1) claims to suffer from a disabling foot injury

27   were not credible; (2) objections to the Retirement Board's evidence lack merit; and (3) allegations
     that the Sheriff's Department must offer him a permanent light duty position lack merit. (Benjamin

28   Decl. ¶¶ 5-33, Ex's D-F, L, M-O, U, V, W-Z, CC-2-CC-4, EE, FF.)

[REVISED PROPOSED] STATEMENT OF DECISION      CASE NO. 313725      n:\labor\li2005\010137\00356116.doc

1   different forms of relief and/or adds new facts supporting recovery." *Id.*; *Takahashi v. Board of*

2   *Education* (1988) 202 Cal.App.3d 1464, 1473-1476, 1481-1485 (claims based on the same adverse

3   employment action are precluded if not brought in the same lawsuit.)

4        In the prior proceeding, Setzler claimed that that the City had refused to return him to work.

5   Now Setzler seeks to revive that same claim by seeking different relief for the same alleged

6   injury—Setzler's purported dilemma of being left without employment or a disability retirement—

7   and same alleged wrongful conduct—the City's purported refusal to return him to work. But since

8   the alleged injury and wrongful conduct are the same, the claims are the same. *Eichman*, 147

9   Cal.App.3d at 1174; *Takahashi*, 202 Cal.App.3d at 1473-1476, 1481-1485.[8]

10         **3.**     **Issue and claim preclusion bar the entire petition**

11       Because Setzler's Petition reiterates old allegations regarding events that occurred before the

12   court of appeal's decision in the earlier proceeding became final on June 13, 2000, issue and claim

13   preclusion bar the entire Petition. See *Eichman*, 147 Cal.App.3d at 1174 (holding that plaintiffs

14   were precluded from "seeking recovery for acts which occurred before judgment was entered in the

15

16

17         [8] In *Eichman*, for example, the court held that claim preclusion barred the plaintiffs' claims

18   in a second proceeding, even though plaintiffs had pleaded a claim violations of "California's Unfair
  Trade Practices Act (Bus. & Prof. Cod, § 17000 *et seq.*)" in the first proceeding and common law

19   claims for "breach of contract, restraint of trade, monopoly, fraud, conversion, accounting, breach of
  fiduciary duty and declaratory relief" in the second proceeding. 147 Cal.App.3d at 1173-1174. The

20   court held that claim preclusion barred the plaintiffs' complaint in the second proceeding because:

21         [t]he same primary right argued here was clearly also at stake in the
        Eichmans' first action against Fotomat. In both cases the harm alleged was

22         economic injury caused by Fotomat creating a situation in which the
        company-owned stores enjoy a competitive edge over the franchise stores.

23         The same types of wrongful acts by Fotomat were alleged in both suits: the
        provision of greater service at a lower cost to the company-owned stores,

24         failure to provide the franchisees with the same advertising assistance given
        the company-owned stores and the placement of company-owned stores

25         within areas which should have been reserved for franchise stores. The
        complaint here merely adds new theories of recovery and greater detail

26         regarding the prices Fotomat charged the Eichmans. The superior court
        correctly found this suit raises the same causes of action as did the first

27         action.
  *Id.* at 1175.

[REVISED PROPOSED] STATEMENT OF DECISION     CASE NO. 313725     n:\labor\li2005\010137\00356116.doc

1  first action").[9] Setzler has not produced any new evidence showing that the City refused to return

2  him to work after June 13, 2000. (Setzler Brief at 1-13; Setzler Decl.; Hebel Decl.)

3       Setzler, however, argues that issue and claim preclusion should not apply here because the

4  City allegedly concealed information from him in the proceeding on the First Petition. This

5  argument lacks merit for two reasons. First, Setzler cannot avoid the preclusive effects of an earlier

6  judgment by introducing new evidence, even if, as he contends, the City had improperly or

7  fraudulently concealed this evidence in the earlier proceeding. *Eichman*, 147 Cal.App.3d at 1175-

8  1176 ("fraud or perjury by a party, which goes undiscovered until after judgment is entered, does

9  not affect the finality and conclusiveness of the judgment").[10] Second, the information allegedly

10  concealed here "would have been discovered had [Setzler] diligently investigated [his] case" in the

11  earlier proceeding. *Id.*[11]

12  **B.    The Petition Lacks Merit**

13       Even if the Petition is not precluded, it lacks merit.

14

15  _____

16  [9]  As further explained in *Eichman*:

17       The principles of res judicata demand that the parties present their entire case
       in one proceeding. Public policy requires that pressure be brought upon
       litigants to use great care in preparing cases for trial and in ascertaining all
18     the facts. A rule which would permit the re-opening of cases previously
       decided because of error or ignorance during the progress of the trial would
19     in a large measure vitiate the effects of the rules of res judicata. Courts deny
       relief, therefore, when the fraud or mistake is intrinsic; that is, when it goes to
20     the merits of the prior proceedings, which should have been guarded against
       by the plaintiff at that time.

21  147 Cal.App.3d at 1176, internal quotations and citations omitted.

22  [10]  Setzler has not shown that the City wrongfully concealed evidence or engaged in fraud or
       perjury.

23  [11]  Citing *Roccaforte v. City of San Diego* (1979) 89 Cal.App.3d 877 and *English v. Board of
24     Admin.* (1983) 148 Cal.App.3d 839, Setzler also argues that under the doctrines of issue and claim
       preclusion, the City should be bound by the Retirement Board's determination that Setzler was not
25     incapacitated from performing a deputy sheriff's duties. Setzler's reliance *Roccaforte* and *English*
       is misplaced. The First District Court of Appeal has held that the City and the Retirement Board are
26     separate entities who are not bound by each others' determinations. *Geoghegan v. Retirement Brd.
       of the City and County of San Francisco* (1st Dist. 1990) 222 Cal.App.3d 1525, 1531-1534 (citing
27     *Traub v Board of Retirement* (1983) 34 Cal.3d 793, 798-799 (holding that because a retirement
       board was a separate entity from a local governmental employer, no privity existed for purposes of
       issue or claim preclusion)).

_____

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

### 1.    Standard for reviewing the record

While traditional mandamus "may be employed to compel performance of a duty which is purely ministerial in character, it cannot be applied to control discretion as to a matter lawfully conferred upon an administrative agency or . . . the governing board of a municipality." *Duff,* 108 Cal.App.3d at 935-936. Where, as here, the respondent was not implementing a purely ministerial duty, a court's inquiry is generally "limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support." *DeCuir,* 64 Cal.App.4th at 81.

In the proceeding on Setzler's First Petition for a writ of administrative mandate, the Court exercised its independent judgment in reviewing the record. (Benjamin Decl. Ex. W.) That standard of review was appropriate because the First Petition sought an administrative writ of mandate and concerned Setzler's vested right to retirement benefits. *Strumsky v. San Diego Cty. Employees Retirement Ass'n* (1974) 11 Cal.3d 28, 44-45 (when review is sought by administrative mandate and involves a fundamental vested right, courts must exercise their independent judgment on the evidence).

But the independent judgment standard is not the appropriate standard to apply to the record in Setzler's current Petition. First, Setzler is seeking a traditional writ of mandate, not an administrative writ as in the First Petition. *DeCuir,* 64 Cal.App.4th at 81 (standard of review for administrative writ does not apply when petitioner seeks a traditional writ). Second, the current Petition, unlike the First Petition, does not involve a fundamental vested right. Although as a probationary employee Setzler has vested rights to PERS retirement benefits, he does not have a vested right to continued employment with the City. *Duff,* 108 Cal.App.3d at 936-937.[12] Third, under the PERL, the City retains discretion to administer its own personnel policies. *Gourley,* 48 Cal.App.3d at 163. While section 21153 prohibits the City from arbitrarily separating Setzler because of his disability, the City retains discretion to: separate a probationary employee like Setzler for other reasons, *Duff,* 108 Cal.App.3d at 936-937; administer the City's personnel policies,

---

[12] In *Jones,* the court of appeal applied an independent judgment standard of review because Jones, unlike Setzler, was a permanent civil service employee with a vested property right in her job. *Jones,* 134 Cal.App.4th at 985, 989-990.

[REVISED PROPOSED] STATEMENT OF DECISION.    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1   such as its return to work policy, *Gourley*, 48 Cal.App.3d at 156; or determine how long Setzler was

2   entitled to remain on paid status under the City's sick leave and vacation policies, *Campbell*, 84

3   Cal.App.3d at 348-350.

4        Thus, the arbitrary and capricious standard is the proper standard of review to apply to the

5   record in Setzler's current Petition. *DeCuir*, 64 Cal.App.4th at 81.[13]

6        2.        The evidence does not establish that the city violated section 21153

7        Setzler has not shown that the City expressly or impliedly separated him in violation of

8   section 21153.

9        It is undisputed that at all times since Setzler was injured in 1990, he has remained a City

10  employee. (Harrigan Decl. ¶ 3; Setzler Depo. at 83.) And Setzler concedes that he cannot establish

11  a "separation" under section 21153 merely because he was not on paid status while he was seeking a

12  disability pension. (Setzler Opening Brief at 5.)[14]

13       After Setzler's disability application was denied, the City offered to return Setzler to work in

14  a manner consistent with the authority that it retained under the PERL to administer the City's

15  personnel policies. See above at 17, citing *Duff*, 108 Cal.App.3d at 936-937, *Gourley*, 48

16  Cal.App.3d at 156, and *Campbell*, 84 Cal.App.3d at 348-350. The City repeatedly offered Setzler

17  three ways to return to work. First, Setzler could have returned to full duty as a deputy sheriff if he

18  was medically capable of performing the job's essential functions. Second, Setzler could have

19  returned to full duty as a deputy sheriff with reasonable accommodations that would have allowed

20  him to perform the job's essential functions. Third, Setzler could have transferred to another City

21  job under the City's disability transfer program. (Harrigan Decl. ¶¶ 5-12, Ex's A-D.) Cf. *Bruce v.*

22  _____

23  [13] Even under the independent judgment standard, the evidence discussed below establishes
    that Setzler is not entitled to writ relief.

24  [14] Setzler claims that he was separated in 1991 when he contends that City sent him home
    after he tried to return to his job as a deputy sheriff. But Setzler has not produced any admissible

25  evidence to support this claim. Moreover, his argument that he was separated in 1991 is negated by
    his admission that he remained on paid status until at least March 1996. (Benjamin Decl. Ex. EE at

26  10.) And his contention that he made a good faith effort to return to work as a deputy sheriff in
    1991 is undermined by his repeated insistence in his pleadings and deposition testimony that he has

27  been incapable of working as a deputy sheriff since his 1990 injury. (Benjamin Decl. Ex's H, K, Y,
    EE; Setzler Depo. at 35-37, 151-152.)

28

[REVISED PROPOSED] STATEMENT OF DECISION        CASE NO. 313725        n:\labor\li2005\010137\00356116.doc

1  *Gregory* (1967) 65 Cal.2d 666, 671 ("mandamus will not be employed where the respondents show

2  that they are willing to perform the duty without the coercion of the writ" (internal quotations

3  omitted)).

4      Rebuffing the City's offers, Setzler failed to make a good faith effort to return to work.

5  While consistently maintaining that he could not return to full duty as a deputy sheriff, Setzler has

6  declined to participate in the City's disability accommodation process, under which he could have

7  returned to work as a deputy sheriff with reasonable accommodations or obtained a disability

8  transfer to a new position. (Harrigan Decl. ¶¶ 5-12; Setzler Depo. at 30:21-23, 35:8-20-21, 36:21-

9  37:2, 151:20-152:17.) Setzler admits that he deliberately chose not to engage in the disability

10  accommodation process. (Setzler Depo. at 30-31.) And in an August 14, 1996 letter to the City,

11  Setzler's former attorney explicitly rejected the City's offer to return Setzler to work through the

12  disability accommodation process. (Harrigan Decl. Ex. D at 1, 3.)

13      Because Setzler did not file a claim under the Fair Employment and Housing Act (the

14  "FEHA"), that statute does not provide the controlling rules of law for evaluating the Petition. Yet

15  since the FEHA prohibits separating employees because of their disabilities, cases decided under

16  the FEHA provide useful guidance in interpreting the similar language in section 21153 of the

17  PERL.[15]  Under the FEHA, an employer cannot be held liable for separating an employee because

18  of a disability where, as here, the employee has declined to participate in the reasonable

19  accommodation process. *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263 (no liability

20  under FEHA where "reasonable accommodation was offered and refused").

21      The City also provided Setzler with vocational rehabilitation to become a computer

22  technician through the City's workers' compensation system. (Setzler Depo. at 744-746.)  But

23  Setzler has not worked as a computer technician, either for the City or other employers. (*Id.* at 756-

24  _____

[15]  Compare Gov't Code § 12940(a) (providing that, under the FEHA, it is unlawful for "an

25  employer, because of the . . . physical disability [or] mental disability . . . of any person . . . to

discharge the person from employment . . . .") with Gov't Code § 21153 (providing that, under the

26  PERS, "an employer may not separate because of disability a member otherwise eligible to retire for

disability"); see also *In re Do Kyung K.*, 88 Cal.App.4th 583, 589 (2001)  (similar language in

27  statutes dealing with the same subject should be interpreted consistently to achieve a uniform

legislative purpose).

_____

[REVISED PROPOSED] STATEMENT OF DECISION      CASE NO. 313725      n:\labor\li2005\010137\00356116.doc

758.) Instead of returning to work, Setzler continued to seek a disability pension, even after his application was denied. (*Id.* at 591:11-592:14; Benjamin Decl. Ex. HH.) *Jones*, 134 Cal.App.4th at 987-988, 991-992 (employee was not entitled to reinstatement with back pay under section 21153 after being denied a disability pension where employee continued to insist she was physically incapable of returning to either her former position or a new position she had been trained to perform through a vocational rehabilitation program).

Setzler cites no authority holding that in these circumstances an employer has been found to have separated an employee in violation of Section 21153. Instead, Setzler relies on cases involving county employees who sought relief under section 31725 of the CERL. See, e.g., Setzler Reply Brief at 3-6, citing *McGriff*, 33 Cal.App.3d at 399; *Phillips v. County of Fresno* (1990) 225 Cal.App.3d 1240; *Hanna v. Los Angeles County Sheriff's Dept.*, 102 Cal.App.4th 887. But because the PERL and CERL are distinct statutes with different provisions regarding employees' reinstatement rights, these cases are not pertinent to Setzler's Petition. See above at 8, 10-12. These cases are further distinguishable because they involve employers who, unlike the City, terminated the employee (*McGriff*, 33 Cal.App.3d at 395) or refused to reinstate the employee while denying him any alternative job opportunity (*Phillips*, 225 Cal.App.3d at 1244-1247; *Hanna*, 102 Cal.App.4th at 891).

Writ relief also will not issue under the PERL on behalf of an employee, like Setzler, who is unwilling to return to work. As explained in *Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, "there is an obvious distinction between an employee who has become medically *unable* to perform his usual duties and one who has become *unwilling* to do so. Disability retirement laws address only the former." *Id.* at 1304 (denying writ petition brought by PERS member who was denied a disability pension after being terminated because he was unwilling to perform his job).

Because the PERL addresses only "unable" employees and not "unwilling" employees, *id.*, Setzler cannot meet his burden of showing that he is entitled to the performance of any duty that the City might have under the PERL. See *San Gabriel Tribune*, 143 Cal.App.3d at 771 (petitioners seeking writ relief must show that they are entitled to the performance of the act that they seek to

21

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1   compel).  Among other evidence that Setzler is an "unwilling" employee who has not made a good

2   faith effort to return to work, he has:  exaggerated the extent of his foot injury (Benjamin Decl. ¶¶ 6-

3   33, Ex's B at 93-97, D at 10, C at 15:8-25, 16:1-14, E, I, J);[16] repeatedly rebuffed the City's efforts

4   to return him to work (Harrigan Decl. ¶¶ 5-12; Setzler Depo. at 30:21-23, 35:8-20-21, 36:21-37:2,

5   151:20-152:17); and not worked as a computer technician, although he is physically capable of

6   doing so (Setzler Depo. at 591:11-592:14, 597-598, 744-746, 756-758).  In brief, an employer

7   cannot be said to have separated an employee who has not made a good faith effort to return to

8   work.

9       Moreover, as illustrated by the decision in *Alvarez-Gasparin v. County of San Bernardino*

10   (2003) 106 Cal.App.4th 183, the City's conduct here would satisfy even the CERL's more stringent

11   reinstatement provision.  In *Alvarez-Gasparin* the employer, like the City, offered vocational

12   rehabilitation, reasonable accommodations, and disability transfers to an employee while her

13   disability retirement application was pending.  *Id.* at 185.  The employee, however, did not return to

14   work for nine years (*id.* at 185-186, 188), although unlike Setzler she eventually returned to her job

15   one year after her disability retirement application was denied (*id.* at 186).  Like Setzler, however,

16   the employee filed a writ petition seeking back pay for the time she was off work before and after

17   her disability application was denied.  *Id.* at 186-187.  Like Setzler, the employee also argued that

18   she was entitled to writ relief because her employer had effectively dismissed her by allegedly

19   failing to return her to work earlier.  *Id.*

20

21     [16] According to Setzler, his foot injury causes him to limp, requires him to walk with a cane,

22   and upsets his sense of balance so severely that he has trouble walking on stairs or even just carrying a cup of coffee.  (Benjamin Decl. ¶ 7, Ex. B at 59:9-24, 62:18-23, 63:2-17, 65:21-25, 66:1-

23   11.)  Evidence that his complaints are not credible includes:  medical reports from doctors who concluded that Setzler was not disabled coupled with the lack of objective medical evidence supporting Setzler's complaints (*id.* Ex's E, I, J); testimony from a witness who saw Setzler walking

24   without a limp in City Hall—until Setzler turned to walk into the Sheriff's office, when he began limping (*id* Ex. C 15:8-25, 16:1-14); videotape of Setzler walking normally without a cane,

25   including shots of him ascending and descending stairs and carrying luggage in both hands without a limp or balance problems (*id.* Ex. D at 10); and Setzler's admissions that his foot problems did not

26   prevent him from taking extended trips to Europe (*id.* Ex. B at 93-97).  In light of this evidence, Setzler's "subjective complaints of problems with balance, unsteadiness, difficulty with gate and

27   lack of confidence in his left lower extremity are not credible." (*Id.* Ex. W at 2:13-15 (Aug. 14 1998 Statement of Decision and Order Denying Petition for Writ of Mandate).

28

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1    Because the employer, like the City, had offered the employee vocational rehabilitation,

2    reasonable accommodations, and disability transfers, the *Alvarez-Gasparin* court rejected the

3    employee's argument that her employer had refused to return her to work. *Id.* at 188. The court

4    concluded that:

5        The evidence does not prove what plaintiff would like it to prove. *There is*
6        *simply no showing that plaintiff was dismissed, expressly or impliedly. For*
         *that reason, this case differs from the cases relied upon by plaintiff in which*
7        *the employee is fired, denied any comparable job opportunity with the public*
         *employer, or refused reinstatement.* In October 1991, plaintiff effectively
8        stopped working for the County and in the intervening nine years, her
         employment status was admittedly uncertain. But that does not mean she was
9        dismissed for disability and entitled to a remedy under section 31725.

9    *Id.* (emphasis added, internal footnotes and citations omitted); see also *id.* at fn's 7-9

10   (distinguishing *Hanna, McGriff, Phillips* and other § 31725 cases cited by Setzler).

11       Likewise, Setzler cannot establish that the City refused to return him to work when the City

12   provided him vocational rehabilitation and offered to return him to full duty, provide him

13   reasonable accommodations in his current position as a deputy sheriff, or provide him a disability

14   transfer him to another position. As in *Alvarez-Gasparin*, "there is simply no showing that [Setzler]

15   was dismissed, expressly or impliedly." *Id.*[17]

16

17   **V.    WRIT RELIEF CANNOT ISSUE BECAUSE SETZLER HAS UNCLEAN HANDS**

18       Writ relief also is not available for a petitioner like Setzler who comes to the Court with

19   unclean hands. *Elliott v. Contractors' State License Bd.* (1990) 224 Cal.App.3d 1048, 1054.

20   Setzler has a history of bad faith conduct with the Retirement Board, the Sheriff's Department, and

21   the Court. Setzler made false claims about his foot injury, leading the Court to conclude that he was

22   [17] Setzler's counsel essentially agreed that if the facts here are analogous to those in
23   *Alvaraez-Gasparin*, then Setzler was not separated. At oral argument, Setzler's counsel stated that:

24       Alvarez-Gasparin, I am the attorney who represented her in front of the
         Board of Retirement. I can tell you that I didn't take her reinstatement case
25       and I can tell you why. Another attorney took it and *he couldn't find any*
         *evidence that she had been separated.* He argued by saying well, she was
26       given voc[ational] rehab[bilitation], therefore she must have been separated
         and *the court said must have is not good enough.* (Reporter's Transcript at
27       54:7-13 (July 18, 2005) (emphasis added).)

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\i2005\010137\00356116.doc

1  a "malingerer" whose allegations about suffering from a disability were not credible. (Benjamin

2  Decl ¶¶ 6-33, Ex. CC-3 14:4-12.) Setzler treated the return to work process as a cat and mouse

3  game by randomly appearing at the Sheriff's Department while ducking the City's efforts to return

4  him to work. (Harrigan Decl. ¶¶ 3-12.) And Setzler filed the Petition and this motion without

5  mentioning that the Court and the court of appeal had repeatedly rejected his argument that the City

6  had refused to return him to work. (Setzler Brief at 2:21-3:4.)

7        Setzler argues that his bad faith conduct should be excused because the City has acted in bad

8  faith too. But Setzler has not shown that the City has unclean hands. To support his claim that the

9  City acted in bad faith, Setzler cites Sheriff Hennessey's January 30, 2004 letter to the Retirement

10 Board. (Hebel Decl. Ex. 2.) In this letter, the sheriff asked the Retirement Board to reopen Setzler's

11 disability retirement application to investigate Setzler's complaints that "possible fraudulent

12 behavior" had marred the review of his application. *Id.* But in the proceedings on the First Petition,

13 the Retirement Board, the Court, and the court of appeal considered and rejected Setzler's

14 complaints about the manner in which his application was reviewed. (E.g., Benjamin Decl. Ex's W

15 at 1-2, EE at 26-27, FF at 4, 8.) Moreover, in the January 30, 2004 letter, the sheriff does not assert

16 that any fraud had actually occurred. (Hebel Decl. Ex. 2.) The letter merely notifies the Retirement

17 Board of Setzler's complaints of "possible fraudulent behavior" and requests that the Retirement

18 Board investigate these complaints, even though the "outcome of the application for disability

19 retirement may well be the same as your prior ruling." (Hebel Decl. Ex. 2; Harrigan Decl. ¶ 17.)

20

21 **VI.    THE PETITION IS BARRED ON PROCEDURAL GROUNDS**

22 **A.    Laches**

23        The doctrine of laches also bars the Petition. See *Vernon Fire Fighters Ass'n v. City of*

24 *Vernon* (1986) 178 Cal.App.3d 710, 719 (upholding denial of writ petition based on five-year delay

25 in bringing the petition to hearing and evidence that respondent "suffered some prejudice"). Under

26 the laches doctrine if "there is a delay in prosecuting the mandamus action, the burden of showing

27 that the delay is reasonable or excusable is on the petitioner." *Id.* "If the delay is found

[REVISED PROPOSED] STATEMENT OF DECISION    CASE NO. 313725    n:\labor\li2005\010137\00356116.doc

1   unreasonable," the respondent must show either that "petitioner has acquiesced in the act

2   complained of or that respondent has suffered some prejudice." *Id.*

3       Setzler waited almost five years after filing his Petition in July 2000 before bringing it to

4   hearing in July 2005. But he has not met his burden of showing that this five-year delay was

5   "reasonable or excusable." *Id.* (Benjamin Decl. Ex. HH.)

6       Setzler contends that the five-year delay should be excused because he was conducting

7   discovery. The parties, however, completed their written discovery in 2002; the City has not taken

8   a deposition since 2002; and the one deposition that Setzler conducted was completed in 2001.

9   (Hebel Supp. Decl. ¶¶ 5-17.) And although Setzler contends that he was waiting for the City to

10  provide him with copies of exhibits from his deposition, he does not explain why he did not obtain

11  copies from the court reporter before she sent the City the original exhibits, or why he did not more

12  diligently pursue obtaining copies from the City. (Faunce Decl. ¶¶ 3-4.)

13      The five-year delay is not excused by Setzler hiring a new attorney last year. Setzler's new

14  attorney filed a substitution of counsel notice in August 2004, almost a year before the hearing.

5   And Setzler's former attorney continued to participate in the case. In June and July 2005, Setzler's

16  former attorney filed two declarations in support of Setzler's motion to grant the Petition. (Hebel

17  Decl. and Hebel Supp. Decl.)

18      Setzler also asserts that the five-year delay should be excused because he was seeking to

19  reopen his disability retirement application. The Retirement Board, however, refused this request in

20  May 2004, more than 14 months before Setzler brought the Petition to hearing.

21      Finally, Setzler argues that the five-year delay should be excused because he was engaged in

22  settlement negotiations with the City. But the parties have not participated in a settlement

23  conference since December 2002. (Hebel Supp. Decl. ¶ 19.) Setzler nevertheless asserts that the

24  delay should be excused because he was still trying to settle his case through letters that he

25  exchanged with the City between November 2004 and April 2005. (Faunce Decl. Ex's 1-5.) During

26  this exchange of letters, the City stated that it would consider a settlement demand from Setzler if

27  he specified the total monetary relief he was seeking. (*Id.* Ex's 1, 3.) But Setzler did not respond

    with a specific monetary demand, and the parties never exchanged settlement offers. (*Id.* Ex's 1-5.)

[REVISED PROPOSED] STATEMENT OF DECISION     CASE NO. 313725     n:\labor\li2005\010137\00356116.doc

1    Thus, the letters do not show the parties engaging in active settlement negotiations this year. In any

2    event, Setzler's offer to resume settlement discussions at the final hour cannot excuse his five-year

3    delay in bringing the Petition to hearing. To find otherwise would deter respondents in a writ action

4    from discussing settlement on the eve of a hearing or trial.

5         Because Setzler has not shown that the five-year delay was reasonable or excusable, the

6    delay bars the Petition if the City meets its burden of showing that it "suffered some prejudice."

7    *Vernon Fire Fighters*, 178 Cal.App.3d at 719. The City has met its burden. The City "suffered

8    some prejudice" because: (1) the delay could significantly increase the back pay or other monetary

9    relief awarded to Setzler; (2) Setzler is seeking back pay for work that other deputy sheriffs have

10   already been paid to perform; (3) witnesses mentioned in Setzler's pleadings have retired; and (4)

11   Setzler's allegations concern events that occurred as long ago as 1991 (Harrigan Decl. ¶ 20). See

12   *Vernon Fire Fighters*, 178 Cal.App.3d at 723, 726.

13   **B.     Setzler Failed To Exhaust His Administrative Remedies**

14        To the extent that Setzler is arguing that the City violated its own return to work policy, his

15   Petition is barred because he failed to exhaust his administrative remedies under the Memorandum

16   of Understanding (MOU) between the City and Setzler's union (Harrigan Decl. ¶¶ 13, 18, Ex. D).

17   *Edgren v. Regents of the University of California* (1984) 158 Cal.App.3d 515, 519, 523 (employees

18   must exhaust public employers' internal administrative procedures before seeking relief in court);

19   *Johnson v. Hydraulic Rsrch. & Mfg. Co.* (1977) 70 Cal.App.3d 675, 679 (exhaustion requirement

20   applies to labor agreements' grievance and arbitration procedures).

21        The MOU includes a grievance procedure that culminates in binding arbitration and is the

22   exclusive remedy for resolving disputes arising out of the City's application of the MOU's

23   provisions. (Harrigan Decl. ¶¶ 13, 18, Ex. D.) Although the MOU includes a return to work

24   provision, Setzler did not file a grievance and did not exhaust his arbitration remedies. (*Id.* ¶ 18.)

25   But an employee must exhaust a labor agreement's grievance and arbitration procedures before

26   filing a civil action that "is substantially dependent upon analysis of the terms of [the] agreement."

27   *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 219-220; *DFEH v. Verizon California, Inc.*

28

26

1  (2003) 108 Cal.App.4th 160, 170-171 (employee's claim was barred because it required a court to

2  interpret a collective bargaining agreement).

3

## CONCLUSION

5  The Petition is DENIED in its entirety. The City shall recover its costs.

6

7  Dated: ___2/28/06___                          JAMES L. WARREN

8                                     _____
                                       THE HONORABLE JAMES L. WARREN
9                                      JUDGE OF THE SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[REVISED PROPOSED] STATEMENT OF DECISION     CASE NO. 313725     n:\labor\li2005\010137\00356116.doc

1

## PROOF OF SERVICE

2      I, WANDA TAI TAKAO, declare as follows:

3      I am a citizen of the United States, over the age of eighteen years and not a party to the
above-entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza
4   Building, 1390 Market Street, Fifth Floor, San Francisco, CA 94102.

5      On February 17, 2006, I served the following document(s):

6   • [REVISED PROPOSED] STATEMENT OF DECISION DENYING MOTION TO
    GRANT WRIT PETITION
7

on the following persons at the locations specified:
8

Edward Faunce
9   43020 Blackdeer Loop, Suite 206
Temecula, CA 92590
10

in the manner indicated below:
11

☒     **BY UNITED STATES MAIL**: Following ordinary business practices, I sealed true and correct
12     copies of the above documents in addressed envelope(s) and placed them at my workplace for collection
and mailing with the United States Postal Service. I am readily familiar with the practices of the San
13     Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the
sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States
14     Postal Service that same day.

15

16     I declare under penalty of perjury that the foregoing is true and correct.

17     Executed February 17, 2006, at San Francisco, California.

18

19

20                                    WANDA TAI TAKAO

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, WANDA TAI TAKAO, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Fifth Floor, San Francisco, CA 94102.

On March 1, 2006, I served the following document(s):

- **NOTICE OF ENTRY OF STATEMENT OF DECISION DENYING MOTION TO GRANT WRIT PETITION**

on the following persons at the locations specified:

Edward Faunce
43020 Blackdeer Loop, Suite 206
Temecula, CA 92590

in the manner indicated below:

☒      **BY FACSIMILE**: Based on a written agreement of the parties to accept service by fax, I transmitted true and correct copies of the above document(s) via a facsimile machine at telephone number (415) 554-4248 to the persons and the fax numbers listed above. The fax transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine, and a copy of the transmission report is attached.

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 1, 2006, at San Francisco, California.

WANDA TAI TAKAO

CITY AND COUNTY OF SAN FRANCISCO                    OFF.. THE CITY ATTORNEY

DENNIS J. HERRERA
City Attorney

ANTHONY GRUMBACH
Deputy City Attorney
DIRECT DIAL:  (415) 554-3947

## FACSIMILE COVER SHEET

### Wednesday, March 01, 2006; Time:  5:23 PM

| TO: | OF: | PHONE: | FAX: |
|---|---|---|---|
| Edward Faunce | | 951-296-0288 | 951-296-0321 |

| FROM: | OF: | PHONE: | FAX: |
|---|---|---|---|
| Anthony Grumbach | Deputy City Attorney | (415) 554-3947 | (415) 554-4248 |

### MESSAGE

Re: Setzler v. CCSF

NOTICE OF ENTRY OF STATEMENT
OF DECISION DENYING MOTION TO GRANT WRIT PETITION

We are transmitting a total of __32__ pages,
including this cover sheet.
If you did not receive all of the pages or there is another problem, please call me or
Wanda Takao at (415) 554-3826.

CONFIDENTIALITY NOTE

*THIS AND ANY ACCOMPANYING PAGES CONTAIN INFORMATION FROM THE SAN
FRANCISCO CITY ATTORNEY'S OFFICE WHICH IS CONFIDENTIAL AND PRIVILEGED. THE
INFORMATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF
YOU ARE NOT THE INTENDED RECIPIENT, THEN BE AWARE THAT ANY DISCLOSURE,
COPYING, DISTRIBUTION OR USE OF THE ACCOMPANYING DOCUMENT (OR THE
INFORMATION CONTAINED IN IT) IS PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE
TRANSMISSION IN ERROR, PLEASE NOTIFY OUR OFFICES IMMEDIATELY SO THAT WE CAN
ARRANGE FOR RETRIEVAL AT NO COST TO YOU.*

FOX PLAZA · 1390 MARKET STREET, FIFTH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3800 · FACSIMILE: (415) 554-4248

## PROOF OF SERVICE

I, WANDA TAI TAKAO, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Fifth Floor, San Francisco, CA 94102.

On March 2, 2006, I served the following document(s):

- **NOTICE OF ENTRY OF STATEMENT OF DECISION DENYING MOTION TO GRANT WRIT PETITION**

on the following persons at the locations specified:

Edward Faunce
43020 Blackdeer Loop, Suite 206
Temecula, CA 92590

in the manner indicated below:

☒    **BY UNITED STATES MAIL**: Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 2, 2006, at San Francisco, California.

_____
WANDA TAI TAKAO