# EXHIBIT H

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

FILED
Court of Appeal - First App. Dist
APR 11 2000
RON D. BARROW, Clerk
By _____ DEPUTY

| | |
|---|---|
| WILLIAM R. SETZLER,<br>Plaintiff and Appellant,<br>v.<br>RETIREMENT BOARD OF THE CITY AND COUNTY OF SAN FRANCISCO,<br>Defendant and Respondent. | A085098<br><br>(San Francisco County<br>Super. Ct. No. 979587) |

William R. Setzler filed a petition for a writ of administrative mandate contending the Retirement Board of the City and County of San Francisco erred when it denied his request for industrial disability retirement. The trial court disagreed and denied the writ. Setzler now appeals claiming the trial court's ruling was not supported by substantial evidence. We disagree and will affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

Setzler joined the San Francisco Sheriff's Department as a deputy sheriff in May 1989. He was 40 years old and had no prior law enforcement experience. Setzler went through a five-week training session and was then assigned to the county jail in San Bruno.

Setzler did not like working at the San Bruno jail. The facilities there are old, and Setzler thought the working conditions were "intolerable."

On June 2, 1990, about seven months after Setzler started work, he encountered a gate at the jail that would not open. Setzler kicked the gate "extremely hard" five or six

1

times with his left foot. The gate opened and Setzler went on with his duties. Later that day, Setzler complained that his foot hurt.

Setzler sought treatment for his foot at an occupational clinic. X-rays taken by the attending physician showed nothing abnormal.

Three weeks later, the clinic referred Setzler to Dr. Richard Coughlin, an orthopedic specialist. Dr. Coughlin examined Setzler and noted that he was experiencing "significant discomfort." Coughlin recommended padding, soaks, and physical therapy, and said he expected Setzler would be able to return to work in about two weeks.

Setzler's foot did not improve, so Dr. Coughlin placed it into a cast in March 1990. That treatment did not help, so Coughlin excised a small tumor on Setzler's foot. That did not give Setzler relief either; he continued to complain that he had made "no improvement."

Dr. Coughlin was "unable to explain" Setzler's "slow progress." He could observe no objective evidence that anything was wrong.

By December 1990, Setzler finally began to show some improvement. He told Dr. Coughlin that he had found "several comfortable pairs of running shoes" and that he had been "running on the beach [without] significant discomfort." On December 6, 1990, Coughlin gave Setzler a slip releasing him to return to work on February 18, 1991.

Four days before Setzler was scheduled to return to work, he told Dr. Coughlin he had "unsteadiness" in his left foot and ankle. Coughlin was "at a loss" to explain Seltzer's new complaint, so he referred him to a neurologist, Dr. Richard Cuneo, for a second opinion. Dr. Cuneo examined Setzler and ordered a broad battery of tests, including MRI studies of the brain and cervical spine, blood tests, and nerve conduction studies. All were normal. Thus, Dr. Cuneo wrote a letter to Dr. Coughlin explaining that he had been "unable to find any neurologic abnormality to explain [Setzler's complaints.]" Cuneo went on to state that "[f]rom a strictly neurological point of view there is nothing to keep him from returning to work."

Another doctor agreed that Setzler could work. Dr. J. Conrad Clifford, an orthopedist, examined Setzler on June 5, 1991. He said Setzler's x-rays were normal,

2

that he had no limitation of motion in his left ankle, and that there was no evidence of atrophy. Based on that examination, Dr. Clifford concluded Setzler was "fully capable of resuming his work as a Deputy Sheriff."

Dr Coughlin disagreed with Dr. Clifford. He said he did not believe Setzler could return to work, although he conceded that Setzler's complaints might be caused by his "fear of returning back to work."

In December 1991, Setzler applied for industrial disability retirement. The San Francisco Retirement Board opposed the application, so a hearing before an administrative law judge was conducted. At the hearing, Setzler testified that it was difficult for him to walk. He said his balance was so poor that it was hard for him to go up and down stairs, or even to carry a cup of coffee. The Retirement Board tried to impeach this testimony with a videotape of Setzler that had been recorded surreptitiously. The tape, admitted into evidence as "exhibit 8," showed that Setzler could, at times, carry luggage and walk up and down stairs without difficulty. On other occasions, Setzler displayed a slight but distinct limp.

A witness who testified at the administrative hearing cast some doubt on whether Setzler had made his complaints in good faith. Sergeant Fred Arquilla of the San Francisco Sheriff's Department, testified that he saw Setzler on the third floor of City Hall in July 1991, and that he was walking without any difficulty. When Setzler turned to walk into the sheriff's office, however, he suddenly started limping. Sergeant Arquilla immediately called San Francisco's worker's compensation adjuster to report what he had seen.

Other testimony at the administrative hearing demonstrated that Setzler's foot problems did not prevent him from traveling extensively. Between January 1990 when he left work, and the administrative hearing in 1994, Setzler took three extended trips to Europe.

The administrative law judge considered this and other evidence and denied Setzler's application for retirement benefits. Setzler filed a petition for rehearing. The administrative law judge granted the petition, but declined to change his ruling.

3

The San Francisco Retirement Board adopted the administrative law judge's decision and denied Setzler's request for retirement benefits. Setzler filed a petition for reconsideration, but it was denied.

Setzler then filed a petition for a writ of administrative mandate in the San Francisco Superior Court seeking to set aside the Retirement Board's decision. The case was assigned to the Honorable William Cahill who conducted three hearings and then denied Setzler's request.

Setzler filed an appeal with this court. However, while the case was being briefed, the parties discovered that the surveillance videotapes that had been lodged with the superior court and viewed by Judge Cahill were not identical to the one that had been viewed by the administrative law judge. Accordingly, the parties both asked that the case be remanded to correct the record. This court agreed, so we dismissed the appeal, and remanded the case to the trial court. Our remand order stated that the court should "reconsider [Setzler's] petition after viewing the videotape identified as 'exhibit 8.'" We also said the court could "take whatever steps it deem[ed] necessary to decide the petition, including, to the extent permissible by controlling law, remanding the matter to the retirement board so that it [could] reconsider its ruling."

The superior court accepted our suggestion and it remanded the case to the administrative law judge who originally heard the case. He viewed a videotape that was provided to him and identified it as the same tape that had been introduced into evidence at the prior administrative hearing as "exhibit 8."

On June 9, 1998, the Retirement Board viewed "exhibit 8" and then voted to affirm its prior decision denying Setzler's application for industrial disability retirement.

That same day, "exhibit 8" was lodged with the clerk of the Writs and Receiver's Department in the San Francisco Superior Court.

In August 1998, the Honorable Raymond Williamson conducted a new hearing on Setzler's petition. Applying an independent review standard, Judge Williamson denied Setzler's petition, explaining his decision as follows: "The weight of the evidence supports the Retirement Board's conclusion that petitioner is not disabled from the

4

performance of his duties as a deputy sheriff. The Court finds persuasive the opinions of orthopedist J. Conrad Clifford, M.D. and neurologist Richard A. Cuneo, M.D., who found that petitioner does not have any orthopedic or neurologic condition that disables him from the performance of duty. In light of all the evidence, petitioner's subjective complaints of problems with balance, unsteadiness, difficulty with gait and lack of confidence in his left lower extremity are not credible. [¶] In addition, the Court rejects petitioner's contention that he is entitled to a disability pension on the ground that the City has refused to return him to work. The evidence fails to establish that petitioner has made a good faith effort to return to work."

Setzler then filed a motion for new trial alleging, among other things, that the judgment was not supported by the evidence. Judge Williamson had retired, so the motion was assigned to the Honorable David Garcia. Judge Garcia considered the petition again and denied Setzler's motion for a new trial. This appeal followed.

II. DISCUSSION

A. Substantial Evidence

Setzler contends that substantial evidence does not support the trial court's conclusion that he is not disabled from the performance of his duties as a deputy sheriff.

The standard we use to evaluate arguments such as this is familiar. We must review the entire record to determine whether it contains "substantial support, contradicted or uncontradicted, that the trial court's determinations are correct." (*Geoghegan v. Retirement Board* (1990) 222 Cal.App.3d 1525, 1529.) "[A]ll conflicts in the evidence must be resolved in favor of the respondent, indulging all reasonable inferences to uphold the judgment, and deferring to the trial court on inferences reasonably deduced from the facts." (*Ibid.*) Furthermore, "if undisputed facts can support more than one interpretation, the reviewing court is bound by the factual interpretation made by the trial court." (*Ibid.*)

Here, the record contains ample evidence to support the court's finding that Setzler was not disabled from the performance of his duties as a deputy sheriff. Dr. Clifford addressed this exact issue. He examined Setzler and concluded that he was

"fully capable of resuming his work as a Deputy Sheriff." Dr. Cuneo concurred. After subjecting Setzler to a broad battery of tests, including MRIs, blood tests, and nerve conduction studies (all of which were normal), Dr. Cuneo said that from a "neurological point of view, there is nothing to keep [Setzler] from returning to work."

The conclusion reached by Dr. Cuneo and Dr. Clifford was supported by the testimony of Sergeant Arquilla, who testified that he saw Setzler walking without a limp while in City Hall, and by "exhibit 8," the videotape which showed Setzler can, at least at times, walk normally.

In sum, the record contains evidence showing Setzler can and does walk normally, medical evidence showing there is nothing wrong with him, and expert medical testimony saying he can return to work. The court's conclusion that Setzler was not disabled from his work as a deputy sheriff is supported by substantial evidence.

Setzler contends the court should have rejected the opinions of Dr. Clifford and Dr. Cuneo in favor of those put forth by Dr. Coughlin and Dr. Henry Edington,[1] both of whom said that Setzler could not return to work. While it is true that the record contains evidence that would have supported the conclusion that Setzler was disabled, that is not how the trial court ruled. Instead, the court ruled Setzler was not disabled and its conclusion is supported by substantial evidence. The fact that the record contains evidence that would have supported a different conclusion is simply irrelevant on appeal. (See *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 ["'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'" (Citations omitted, italics added.)].)

Setzler also contends the trial court erred when it ruled that his subjective complaints of problems with balance, unsteadiness, and gait were "not credible." However, credibility is an issue for the trial court. (*Stokus* v. *Marsh* (1990) 217

---

[1]    Dr. Edington was hired to perform an agreed medical examination of Setzler.

6

Cal.App.3d 647, 656-657.) Here, the court had ample opportunity to evaluate Setzler's credibility by, for example, evaluating his subjective complaints in light of the opinions of the medical experts who said there was nothing wrong with him, and by weighing Setzler's testimony that he was disabled against the evidence that showed he could and did walk normally, and that he took three extended trips to Europe. Again, we conclude the court's conclusion is supported by substantial evidence.

B. Return to Work

Setzler contends the trial court erred when it found he had not "made a good faith effort to return to work." Although the precise reason Setzler raises this argument is not clear, he seems to contend he was entitled to receive industrial disability retirement because the sheriff's office would not allow him to return to work.

We reject this argument for two reasons. First, Setzler has not cited any evidence that shows he raised this issue at the administrative level. As our Supreme Court recently explained, "[a]dministrative agencies must be given the opportunity to reach a reasoned and final conclusion on each and every issue upon which they have jurisdiction to act before those issues are raised in a judicial forum." (*Sierra Club* v. *San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 510.) Indeed, exhaustion of administrative remedies is "not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis* and binding upon all courts . . . . [E]xhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 293.)

Second, even ignoring the jurisdictional problem, Setzler's argument is simply unpersuasive. Setzler seems to contend that the court's finding is not supported by substantial evidence. While there is evidence in the record that suggests Setzler did try to return to work, there is also evidence to support the opposite conclusion. Specifically, the record shows Setzler continued to seek disability retirement even though objective medical evaluations showed nothing was wrong with him, and at least two doctors said he was fully capable of returning to work. Indeed, Setzler himself testified that he

7

disagreed with the doctors who said he could return to work: "Q. [Counsel for the Retirement Board:] There have been several doctors who have cleared you to return to your usual work? [¶] A. [Setzler:] Which ones, sir? [¶] Q. Dr. Clifford, an orthopedist, who reported on June 21, 1991; Dr. Weber, a psychiatrist, who reported on June 24th, 1991; and Dr. Cuneo, whose reports we have just gone over. [¶] In your own mind, do you agree that you can return to work in the Sheriff's Office? [¶] A. No."

Based on this evidence, the trial court could, and impliedly did conclude that Setzler had not made a good faith effort to return to work.

C. Exhibit 8

Setzler contends the record has not been corrected as this court ordered on January 2, 1998. Setzler does not explain why he thinks the record is incorrect, other than to say that the "exhibit 8" on file with this court is "inaccurate and incomplete." Setzler does not explain how "exhibit 8" is inaccurate or incomplete.[2]

As we understand the situation, the tape on file with this court as "exhibit 8" is the same tape that was reviewed by the administrative law judge, the Retirement Board, and the trial court. In the absence of cogent argument to the contrary, we see no reason to conclude that record has not been corrected.

III. DISPOSITION

The judgment is affirmed.

---

[2] Setzler has attached a declaration to his opening brief from an expert in videotape analysis; apparently in an attempt to prove that "exhibit 8" is inaccurate and incomplete. We decline to consider the declaration because Setzler has not filed a motion to produce additional evidence on appeal as is required by California Rules of Court, rule 23(b).

_____
Jones, P.J.

We concur:

_____
Haning, J.

_____
Stevens, J.

A085098