# EXHIBIT I

1    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

3    BEFORE THE HONORABLE DAVID A. GARCIA, JUDGE

4       LAW & MOTION DEPARTMENT

5         --oOo--

6 WILLIAM R. SETZLER,    )
              )
7     PLAINTIFF,   )
              )
8  VS.        )  NO.  979587
              )
9 RETIREMENT BOARD OF THE CITY)
 AND COUNTY OF SAN FRANCISCO,)
10            )
    DEFENDANTS.   )
11 _____)

12

13

14

15    REPORTER'S TRANSCRIPT OF PROCEEDINGS

16     THURSDAY, OCTOBER 22, 1998

17

18

19

20

21

22

23

24

25

26

27

28 REPORTED BY: JOSEPH HAYDEN VICKSTEIN, CSR #4780

1    A P P E A R A N C E S:

2    For the Plaintiff:

3    SAN FRANCISCO POLICE OFFICERS ASSOCIATION
     By: MICHAEL S. HEBEL, Attorney at Law
4    510 Seventh Street
     San Francisco, Ca   94103

5

6    For the Defendant CCSF:

7    LOUISE RENNE, City Attorney
     By: DAVID BENJAMIN, Deputy City Attorney
8    1390 Market Street, Suite 250
     San Francisco, Ca  94102

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THURSDAY, OCTOBER 22, 1998                    Morning Session

--oOo--

THE CLERK:  Line 20, Setzler versus Retirement Board.

MR. BENJAMIN:  Good morning, Your Honor.  David Benjamin for the Retirement Board.

MR. HEBEL:  Good morning, Your Honor.  Mike Hebel on behalf of the Moving Party, Petitioner William Setzler.

THE COURT:  Well, you know, a judge can be prejudiced by inappropriate comments by a lawyer?  Can't happen.  We are computers:  Put the information in, kick out the responses.  Can't make appeals to our emotion.  We don't have emotions.  Certainly you can't make an argument that is inappropriate and have that sway the Court.

MR. HEBEL:  Your Honor, I realize what you are talking about.  But the main gist of this motion --

THE COURT:  Other than that, where is the new evidence and the new law?

MR. HEBEL:  Under this motion, Your Honor, I am really asking you to reweigh the evidence because --

THE COURT:  I understand that.  You are saying the trial court -- which is the other premise of this.  We don't have new evidence.  We don't have new law.

MR. HEBEL:  We have new evidence, Your Honor.  We have the declarations by the Petitioner.  We have the declarations by the Counsel to the Sheriff who I have asked to be here and who is sitting in the courtroom,

4

1  Mr. Harrigan.

2           THE COURT:  But what do those establish for me?

3           MR. HEBEL:  What they establish is that --

4           THE COURT:  Because I am still dealing with a

5  record, aren't I.  This is not a trial de novo where I take

6  new evidence.  So we have a fixed record.  It's the

7  administrative hearing, is it not?

8           MR. HEBEL:  It is.

9           THE COURT:  Okay.  So you are asking me to look at

10  that record and determine whether or not -- and remind me,

11  what is the standard of review here?

12           MR. HEBEL:  Independent judgment.

13           THE COURT:  Independent judgment.  So I weigh the

14  evidence.  That's what I thought I was doing.  And determine

15  whether or not the evidence supports the decision made by

16  the hearing officer.  But the problem is, is you are asking

17  me on new trial.  See, so I think it's no longer an

18  independent evidence test.  The independent evidence test

19  would be if I were the original judge ruling on the Writ of

20  Mandate, right?

21           Unfortunately, you are now asking me -- and I know

22  it's an unfortunate circumstance because I wasn't that

23  judge.

24           MR. HEBEL:  That's right.

25           THE COURT:  For me to reconsider that, in effect,

26  that judge's decision.  Judge no longer being available.  I

27  guess I am per force the judge that has to make a decision

28  in this case.  You are asking me now to say that that judge

1   clearly erred as a matter of law, aren't you?

2           MR. HEBEL:  Your Honor, I believe I am asking you

3   for today to be Judge Williamson.  Even though you can't,

4   but to stand in his shoes.

5           THE COURT:  I understand.  You are asking me.  But

6   I guess my question to you is this:  On a Motion for New

7   Trial, is the standard that I have now to reweigh the

8   evidence for the second time?  Assumptively I have weighed

9   the evidence once and come up with the answer, "Petition for

10  Writ of Mandate denied," right?

11          MR. HEBEL:  Yes.

12          THE COURT:  And now the question is, having done

13  that, you are asking me to look at my prior decision and

14  assess whether or not that decision is wrong as a matter of

15  law, right?

16          And I guess I am struggling with, does that mean

17  that on a Motion for New Trial following the denial of Writ

18  of Mandate that the test is exactly the same as it was

19  before?

20          MR. HEBEL:  I believe on this motion, we are

21  requesting and you are required to reweigh the evidence that

22  supports --

23          THE COURT:  All right.

24          MR. HEBEL:  -- supports or does not support the

25  findings.

26          THE COURT:  Okay.  And it's important to

27  understand, because this is where the case is won or lost, I

28  think, on the test.  Do you agree that that's the test,

1    Counsel?

2          MR. BENJAMIN:  I agree that the test is

3    independent judgment when the Writ of Mandate was tried

4    before Judge Williamson, and I believe that now the

5    Petitioner is coming forward and asking in essence the trial

6    judge to change his mind and arguing that the evidence

7    doesn't justify what the trial court did.

8          THE COURT:  But what is the test?  What is the

9    test?  The substantial evidence test?  All right.  You

10   haven't really addressed that in your Points and Authorities

11   in opposition, have you?

12         MR. BENJAMIN:  You are right.  We did address the

13   evidence that supports it.

14         THE COURT:  So you in essence conceded for

15   purposes of this discussion that it's a weight of the

16   evidence test?

17         MR. BENJAMIN:  I'm sorry, Your Honor?

18         THE COURT:  I think you conceded that it was a

19   weight of the evidence test, not having addressed the issue.

20   I merely raise it on my own, because I am not sure that it

21   is.  But that's my struggle.  Go ahead.

22         MR. HEBEL:  Your Honor, I realize you are at

23   somewhat of a disadvantage in that this is a massive file

24   attached to it which Judge Williamson saw.

25         What we are really asking you to take another look

26   at it, this is a Deputy Sheriff who has now been off work

27   without a disability retirement and without reinstatement to

28   employment, exactly today, for 3,215 days.  He had an

1    admitted injury on January 2nd, 1990.

2              THE COURT:  Yes.

3              MR. HEBEL:  He's received all benefits legally

4    obligated to give him by law.  He ran out of everything in

5    May of 1996.

6              We have set forth -- the most disturbing part of

7    the judgment, has to do with the indication that first of

8    all, he's not credible.  And secondly, that he did not make

9    good faith efforts to return to work.

10             THE COURT:  I understand that.  That those

11   judgments were made by the hearing officer.  And of course

12   that is -- once we start talking about credibility, I think

13   we start running into some difficulty with the standard.

14   Because credibility, even on a Writ of Mandate, is something

15   that the courts generally look very closely at the record

16   and will accord some significant respect to the party that

17   is the judicial officer, if you will, and quasi-judicial

18   officer that heard the evidence, won't we?  They see the

19   demeanor of the witness.

20             MR. HEBEL:  It's a question as to whether he made

21   good faith efforts to return to work.

22             THE COURT:  I understand.

23             MR. HEBEL:  And we submitted significant numbers

24   of declarations indicating that he has.

25             THE COURT:  But you see, I don't think that I am

26   entitled to consider that.

27             MR. HEBEL:  All right.  Let me ask you if you are

28   entitled --

8

1      THE COURT: Am I? Am I entitled to now expand

2  this record, in essence to reopen the trial? I mean it is a

3  limited trial de novo. And I agree that there might be some

4  circumstances under which it is that a court might open the

5  case up. But isn't that extremely limited, and it's not one

6  of the circumstances that we have in this case?

7      MR. HEBEL: I believe you are entitled to take a

8  look at it. You are entitled to look at it.

9      THE COURT: I looked at it. But that doesn't mean

10  that I put it into that computer that I was talking about

11  before, when I spit out my answer.

12      MR. HEBEL: Let me ask you to put this into your

13  computer, Your Honor. The Court relied upon two doctors.

14      THE COURT: The Court?

15      MR. HEBEL: The first, Judge Williamson.

16      THE COURT: Yes, but the Court was not really

17  relying on the two doctors. The Court was looking at the

18  record that was presented to it. And those two doctors were

19  in that record and it made a determination.

20      MR. HEBEL: The Court said it relied upon those

21  two doctors to come up to a conclusion that Mr. Setzler,

22  Deputy Setzler was neither neurologically nor orthopedically

23  disabled from employment.

24      THE COURT: Okay.

25      MR. HEBEL: And this has been the enormous

26  difficulty in the case. Mr. Setzler goes back to those

27  doctors, especially Doctor Clifford, to get a medical

28  release. And the doctor refuses to see him or give it to

1   him.

2          The Sheriff's Department says, and continues to

3   say, "Without that medical release, we will not take you."

4   That's really the crux of the matter that brings about this

5   lack of good faith effort, lack of subjective symptoms.

6          This Deputy Sheriff, Your Honor, has been

7   evaluated by at least four orthopedics.  At least three

8   neurosurgeons and three psychiatrists.  None of whom find

9   that his complaints and subjective symptoms are not

10  credible.

11         The hearing officer, ALJ Stuart Judson, did not

12  find that.  Actually, he found that Mr. Setzler wanted to

13  return to work on a light duty.  Judge Cahill, when it was

14  before him, never said that this particular Deputy Sheriff

15  was not credible.

16         These two findings, which are the basis, in my

17  judgment, for the Court's ruling, simply do not have

18  anything supporting them.  And what they do is so far

19  overweigh what is in opposition to them.

20         MR. BENJAMIN:  This is a case with a long history.

21  It is a factual case.  The fundamental issue is whether the

22  Petitioner is disabled from working.  And that determination

23  of disability turns in large part on his credibility.

24         Three triers of fact have looked at it.

25  Administrative Law Judge, Judge Judson; Judge Cahill; Judge

26  Williamson.  All of them have found that Petitioner is not

27  disabled for the performance of his duties.

28         There is nothing new in the evidence that -- or in

1    the papers that Petitioner has submitted in support of his

2    Motion for New Trial.  He's made the same arguments before.

3    He made them to Judge Williamson.  He made them to Judge

4    Cahill.

5            The essence of the problem regarding Petitioner's

6    return to work is that Petitioner claims that the Court's

7    decision puts him in a Catch 22 situation.  But the only

8    Catch 22 is the one that Petitioner has created for himself.

9            He tells the Court that he can't return to work,

10   but at the same time since 1990 and continuing right up

11   until the present, he claims that he's disabled and that he

12   can't work.

13           THE COURT:  I understand that.  That was

14   consistent.  I think what you meant to say is he can return

15   to work and that he is also disabled.

16           MR. BENJAMIN:  I must have misspoke.  That's

17   right.  Those are inconsistent.  And we have set forth in

18   detail the evidence that supports the Court's judgment.

19           MR. HEBEL:  Your Honor, I really can do no more

20   than show you as he is.  And that's what he's done.  And

21   were Mr. Harrigan to step up next to me, he could verify

22   that.  Mr. Setzler cannot show up as he has multiple times

23   at the Sheriff's --

24           THE COURT:  Is the Sheriff ready to take him back?

25           MR. HEBEL:  The Sheriff is not ready to take him

26   back, Your Honor.

27           THE COURT:  Okay.

28           MR. HEBEL:  Why?  Because they have a light duty

1    policy.  And because the policy says that Mr.  Setzler must

2    obtain a medical release in order to report back to work.

3              THE COURT:  Why does he have to get it back --

4              MR. HEBEL:  Pardon me, Your Honor?

5              THE COURT:  Why did he have to go back to -- Well,

6    what you basically said to me is the doctor that he needed

7    to get the medical release from refused to even see him.

8              MR. HEBEL:  Your Honor, no doctor --

9              THE COURT:  But that doctor also found that he

10   wasn't disabled.  So I am not sure how that plays.

11             MR. HEBEL:  I must have misspoke.  No doctor has

12   given him a medical release.

13             THE COURT:  I understood that.  I understood that.

14             MR. HEBEL:  His treating doctors, also the

15   evaluating doctors.  Simply none have.

16             THE COURT:  All right.

17             MR. BENJAMIN:  Your Honor, it's up to -- the

18   release argument is not Petitioner's claiming not claiming

19   he can go back to work.  He is claiming that he's disabled

20   and can't work.

21             The argument that he won't be released to work is

22   a ploy to advance his disability pension claim.  It's the

23   disability pension claim that we are here on.  He claims

24   that he's disabled.  His argument that he can't return to

25   work is inconsistent with the very litigation that he's

26   maintaining.

27             THE COURT:  All right.  I will take it under

28   submission.  Thank you, very much.

1   MR. HARRIGAN:  Your Honor, would you, would it be

2 productive if the Sheriff's position would be advanced to

3 the Court?

4   THE COURT:  You can tell me what it is.  I guess

5 the record should be complete.

6   MR. HARRIGAN:  James Harrigan, attorney for the

7 Sheriff appearing.

8   Your Honor, I have seen most of the pleadings in

9 this case.  And I read Judge Williamson's decision.  The

10 only clarification I wish to state for the record is this:

11 The Sheriff's policy is that an injured deputy sheriff may

12 return to work and may be considered for a modified

13 assignment for a short period of time, provided that upon

14 presenting himself or herself for reemployment, they have a

15 physician's letter or document that says that they can

16 return to full duty within 90 days.

17   Mr.  Setzler has appeared with and without counsel

18 at the office of the Sheriff several times over the past few

19 years.  Without having the benefit of that letter, I have

20 been advised that he cannot obtain that due to his injury.

21 I have read the reports.  There are no doctors reports that

22 I have seen that say that he can fulfill the duties of a

23 deputy sheriff.

24   In fact the last letter, the last evaluation by

25 Doctor Coughlin, who was appointed by Judge Cahill,

26 specifically to do a medical analysis, found that

27 Mr. Setzler is disabled; cannot perform the functions and

28 the duties of deputy sheriff.

1   There's been some suggestion that he has refused
2   to abide by the policies of the Department.  And rather than
3   get into a discussion about form over substance, I think
4   it's clear from a medical perspective, as to everything I
5   have seen, this gentleman cannot perform the role of a
6   Deputy Sheriff and therefore cannot be considered for
7   reemployment.  And that's -- I'd be happy to answer any
8   other questions.
9   MR. BENJAMIN:  I'd like to address that, Your
10  Honor.
11  Judge, Petitioner has been relying on Doctor
12  Coughlin throughout this litigation.  He comes into Judge
13  Cahill two years ago and he tells Judge Cahill, "The Sheriff
14  won't let me return to work."
15  And so Judge Cahill said, "Why don't you go talk
16  to Doctor Coughlin.  That's your treating doctor."
17  And then the Petitioner went to Doctor Coughlin
18  and told Doctor Coughlin that he can't do the work.  He
19  comes into court and he tells the Court that the Sheriff
20  won't return him to work and then he brings the sheriff a
21  note from his doctor saying that he can't go back to work,
22  based on what the Petitioner himself told the doctor.
23  MR. HEBEL:  Your Honor, he is as he is.  And --
24  THE COURT:  What you are saying is that he's not,
25  that he's maintained a consistent position that he can't
26  return to work?
27  MR. HEBEL:  He has maintained --
28  THE COURT:  But don't you see, what that says to

1.

1    me is, is that if it's determined that he is not disabled,

2    if, there's -- if the weight of the evidence supports that

3    decision, then my response is a very simple response.

4         . If the weight of the evidence supports the

5    decision that he's not disabled, then categorically the.

6    weight of the evidence supports the decision that he's

7    malingering.  And that he has not done what was necessary to

8    get himself reinstated to the job.  Okay?

9         Because this is what this is about, isn't it?

10   .He's either disabled or he's a malingerer.  And as cold and

11   as cruel that may sound, that's what it's about.  And that's

12   where my analysis is.  And that's where it's going to rest.

13   It's on the simple question.

14        Because if he's not disabled, then he's not

15   entitled to judgment here.  If he is disabled, then I

16   suppose the review should be granted on the grounds that

17   he's disabled and he should be given his disability

18   retirement.  All right.

19        MR. HEBEL:  There's clarity to what you said.  The

20   difficulty is that the doctors who say, the doctor says he's

21   not disabled; won't give him the opportunity to go -- won't

22   give him the slip to give to Mr. Harrigan, so he can go back

23   whether he's disabled or not and do it.

24        THE COURT:  But that's not my problem.  That is

25   not my problem.  Okay?  You know, I am not going to question

26   that doctor at this point in time.  If he's going to another

27   doctor who says he can't go back to work, in essence because

28   he's relying on the patient's subjective complaints about

1  symptoms, so be it.

2         MR. HEBEL:  Your Honor, that other doctor, Doctor

3  Coughlin, is the City-appointed treating doctor.  It's not

4  as though Mr. --

5         THE COURT:  I don't know what it means to be a

6  "City-appointed treating doctor."

7         MR. HEBEL:  There are two kinds.  The employee

8  selects or the City selects.

9         THE COURT:  But it doesn't make a difference to

10  me, I think.

11         MR. HEBEL:  It should in terms of --

12         THE COURT:  A treating physician is a treating

13  physician.  I don't understand what you mean by -- I mean we

14  are not talking about an Independent Medical Examiner.

15         MR. HEBEL:  That, we do have one.  We do have an

16  Agreed Medical Examiner, who also found disability.  Doctor

17  Henry Eddington.

18         MR. HARRIGAN:  If I may point out one final point.

19  Doctor Coughlin was provided a written description of the

20  duties of the deputy sheriff, including all the physical

21  requirements of the job.

22         I am not able to recall exactly how he phrased it

23  in his letter, but my belief is that his assessment of

24  Setzler's disability and ability to return to work was based

25  in part, possibly largely in part, on his objective review

26  of what the job requires, vis-a-vis the injury that's been

27  documented.  So to say that this was -- that he dashed off a

28  letter only because the patient said "I can't go to work."

1    I don't think that's true.

2          MR. BENJAMIN:  Your Honor, may I please?  I'm

3    sorry.

4          THE COURT:  I said, "submitted," I think almost

5    ten minutes ago.  But that's all right.  Go ahead.

6          MR. BENJAMIN:  All of the doctors know what a

7    deputy sheriff does.  They all evaluated the Petitioner.  In

8    that respect, Doctor Coughlin is the doctor who said that

9    what he has is a mystery and he doesn't know what it is.

10   And all he's doing --

11         THE COURT:  The fact that he has a mystery doesn't

12   mean that he's not disabled.

13         MR. BENJAMIN:  But he's accepting Petitioner's own

14   statement that he can't work.

15         THE COURT:  Nothing wrong with that.  Sometimes

16   the only evidence of a person's ailment is the person's

17   complaint about his ailment.  But ultimately we have to

18   assess that.  All right.  Thank you, very much.

19         MR. BENJAMIN:  Thank you.

20         MR. HEBEL:  Thank you, Your Honor.  Not by way of

21   argument, but there are five videos presently in the Court's

22   possession, and I would request that they stay in your

23   possession until the parties have agreed to a disposition.

24   That is that they not be destroyed, Your Honor.

25         THE COURT:  I destroy nothing, personally.

26         MR. HEBEL:  Thank you.

27         THE COURT:  I am a packrat.

28         MR. BENJAMIN:  Thank you, Your Honor.

1          (Whereupon, the proceedings were adjourned.)

2                          --oOo--

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <u>REPORTER'S CERTIFICATE</u>

2

3

4        I, Joseph Hayden Vickstein, an official reporter

5    of the Superior Court of the State of California, in and for

6    the City and County of San Francisco, do hereby certify:

7        That the foregoing transcript, as reduced to

8    transcript by computer under my direction and control to the

9    best of my ability, is a full, true and correct computer

10   transcription of the shorthand notes taken as such reporter

11   of the proceedings in the above-entitled matter.

12

13

14

15        Joseph Hayden Vickstein, CSR #4780

16

17

18

19

20

21

22

23

24

25

26

27

28